Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
Caitlin J. Scott, Esq. (State Bar No. 310619)
**MANNING LAW, APC**
4667 MacArthur Blvd., Suite 150
Newport Beach, CA 92660
Office: (949) 200-8755
ADAPracticeGroup@manninglawoffice.com

Attorneys for Plaintiff GUILLERMO ROBLES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| GUILLERMO ROBLES,<br><br>       Plaintiff,<br><br>vs.<br><br>DOMINO'S PIZZA LLC,<br><br>       Defendant. | Case No.. 2:16-cv-06599<br><br>Hon. S. James Otero<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, DISMISSAL OR STAY**<br><br>[*Filed concurrently with Statement of Genuine Disputes of Material Fact; Objection to Request for Judicial Notice; Declaration of Caitlin J. Scott; Declaration of Guillermo Robles; Declaration of Rosemary Musachio*]<br><br>Date:      March 27, 2017<br>Time:      10:00 a.m.<br>Ctrm.:     10C<br><br>Action Filed:    September 1, 2016 |

       Plaintiff Guillermo Robles ("Plaintiff") hereby submits this Opposition to defendant Domino's Pizza LLC's ("Dominos" or "Defendant") Motion for Summary Judgment.

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION.................................................................1

II.   PROCEDURAL DEFECTS ASSOCIATED WITH THE MOTION........1

III.  FACTUAL BACKGROUND....................................................2

    A.    Defendant and Defendant's Website...............................2

    B.    Plaintiff and His Use of Screen Reading Software....................2

    C.    Plaintiff's Visit To Defendant's Website..............................3

    D.    Defendant's Website Violates Level AA Success Criteria Under
           Version 2.0 Of The Web Content Accessibility Guidelines and the
           Basic Effective Communication Mandate of the ADA.................3

IV.  ARGUMENT....................................................................4

    A.    Defendant's "Accessibility Banner And The Phone Number On The
           Banner Did Not Exist During Any Time Alleged In The Complaint
           And Even If They Had They Are Legally Insufficient To Establish
           Effective Communication Under The ADA.............................4

    B.    The Ninth Circuit Requires Websites To Be Accessible Under Title III
           If There Is A Nexus Between Defendant's Website And Physical
           Stores; Defendant Admits The Nexus Between The Website And
           Domino's Pizza Restaurants..........................................10

    C.    Defendant's "Accessibility Banner And The Phone Number On The
           Banner Did Not Exist During Any Time Alleged In The Complaint
           And Even If They Had They Are Legally Insufficient To Establish
           Effective Communication Under The ADA............................14

    D.    No Showing Of Intentional Discrimination Is Required Where The
           Unruh Act Violation Is Premised On An ADA Violation...............16

    E.    Defendant Should Be Estopped From "Fair Notice" And Stay
           Arguments Because Defendant's Website Has Communication Barriers

1        Relating To Plaintiff's Disability That Violate the ADA...............17

2 V.     CONCLUSION...................................................................20

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Now, Inc. v. Southwest Airlines*
    227 F. Supp. 2d 1312 (S.D. Fla. 2002)...............................................11

*Brown v. BPS Direct, LLC, et al.*
    LACV 14-04622 JAK (C.D. Cal. Oct. 6,2014) ......................................6

*Del Orden v. Domino's Pizza LLC*
    1:16-CV-03281 (S.D. NY 2016)..................................................18

*Dow Jones & Co. v. Kaye*
    256 F.3d 1251 (11th Cir. 2001)..................................................7

*City of Waco v. Envtl. Prot. Agency*
    620 F.2d 84 (5th Cir. 1980).......................................................7

*Coral Springs St. Sys., Inc. v. City of Sunrise*
    371 F.3d 1320 (11th Cir.2004) ...................................................7

*Davis v. Orlando Wilshire Investments Ltd., et al.*
    No. 5:15-cv-01738-MWF-KK (C.D. Cal. Nov. 2, 2015).........................13

*Earll v. Ebay, Inc.*
    599 Fed. Appx. 695 (9th Cir. Apr. 1, 2015) .....................................17

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*
    528 U.S. 167 (2000)...............................................................6

*Gomez v. Bang & Olufsen America, Inc.*
    Case No. 1:16-cv-23801-JAL (S.D. Fla. Feb 2, 2017)..........................13

*Iron Arrow Honor Soc'y v. Heckler*
    464 U.S. 67 (1983)................................................................7

*Jager v. Douglas County Sch. Dist.*
    862 F.2d 824 (11th Cir. 1989)....................................................7

*Lozano v. C.A. Martinez Family Ltd. Partnership*
    129 F. Supp. 3d 967, 971 (S.D. Cal. 2015)......................................7

*Munson v. Del Taco, Inc.*
    46 Cal. 4th 661 (Cal. 2009)..........................................................17

*Nat'l Adver. Co. v. City of Miami*
    402 F.3d 1329 (11th Cir. 2005)....................................................7

*Nat'l Adver. Co. v. City of Fort Lauderdale*
    934 F.2d 283 (11th Cir.1991)........................................................7

*National Ass 'n of the Deaf et al. v. Harvard University, et al.,*
    Civil Action No. 3:15-cv-30023-MGM (D. Mass. case filed 2/12/15)........10

*National A ss'n of the Deaf et al. v. Massachusetts Institute of Technology,* et al.,
    Civil Action No. 3:15-cv-30024-MGM (D. Mass. case filed 2/12/15).....10

*National Federation of the Blind v. Target Corp.,*
    452 F. Supp. 2d 946 (N.D. Cal. 2006)..........................................11

*National Federation of the Blind v. Scribd Inc.,*
    97 F. Supp. 3d 565, 569 (D. Vt. 2015)..........................................12

*National Federation of the Blind, et al. v. HRB Digital LLC, et al.,*
    No. 1:13-cv-10799-GAO (D. Mass. Mar. 24, 2014)..........................20

*New v. Lucky Brands Dungarees Stores, Inc.*
    No. 14-CV-20574 (S.D. Fla. Apr. 10, 2014)......................................9

*Pereira v. Ralphs Grocery Co.,*
    No 08-55078 2009 WL 2039121 at *1 (9th Cir. July 7, 2009)...............6

*Penney v. Kohl's Dep't Stores, Inc., et al.,*
    No. 8:14-cv-01100-CJC-DFM (C.D. Cal. Sept. 23, 2014).....................13

*Rendon v. Valleycrest Productions, Ltd.,*
    294 F.3d 1279 (11th Cir. 2002).....................................................12

*Sheely v. MRI Radiology Network,*
    P.A. 505 F.3d 1173 (11th Cir. 2007)................................................6

*Secretary of Labor v. Burger King Corp.,*
    955 F.2d 681 (11th Cir. 1992)......................................................7

*Shields v. Walt Disney Parks and Resorts US, Inc.*,
   279 F.R.D. 529 (C.D. Cal. 2011).................................................................12

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998).............................................................................................7

*Troiano v. Supervisor of Elections*,
   382 F.3d 1276 (11th Cir. 2004).....7

*United States v. AMC Entm't, Inc.*,
   245 F. Supp. 2d 1094  (C.D. Cal. 2003)................................................20

*United States v. W.T. Grant Co.*
   345 U.S. 629 (1953)..........................................................................................7

*Vigil v. Leavitt*,
   381 F.3d 826 (9th Cir. 2004)...................................................................16

*Weyer v. Twentieth Century Fox Film Corp.*,
   198 F.3d 1104 (9th Cir. 2000)................................................................12

**Statutes**

42 U.S.C. § 12182(a)...................................................................................11, 12

42 U.S.C. § 12182(b)(1)(A).................................................................................12

42 U.S.C. § 12186(b)...........................................................................................20

42 U.S.C. § 12188(b)(1)(A)(i)............................................................................20

42 U.S.C. § 12188(b)(1)(A)(i)(B).......................................................................20


**Other Authorities**

28 C.F.R. § 36.201(a)............................................................................10, 11, 20

28 C.F.R. §§ 36.303(a)........................................................................................14

28 C.F.R. §§ 36.303(c)(1)....................................................................................14

## I.   <u>INTRODUCTION</u>

In its moving papers, Defendant seeks "summary judgment or, in the alternative, dismissal or stay." Docket 32. However, its motion is not supported by law or persuasive evidence and must therefore be denied in its entirety. Defendant's legal arguments are meritless and conflict with applicable authority. Further, the only evidence marshaled in support of those arguments is ambiguous, at best. For these reasons, this Court should reject them and deny Defendant's Motion for Summary Judgment (the "Motion" or "MSJ").

## II.   **PROCEDURAL DEFECTS ASSOCIATED WITH THE MOTION**

Defendant completely ignored the requirements of Local Rule 7-3 and paragraphs 23 and 24 of the Standing Order for Civil Cases Assigned to Judge Otero (the "Standing Order") in connection with the filing of this motion. Docket 10. The Standing Order at paragraph 23(a) reiterates the applicability of Local Rule 7-3 in motion practice in this court and admonishes the parties to take it seriously and literally. The Standing Order further requires a "declaration by counsel briefly describing the parties' discussion and attempt to eliminate the need for the motion and the date of such discussion." No such declaration is included with the moving papers here. This because no meet and confer regarding the motion and the potential for the elimination of the need for the motion, or any part of it, occurred at any time. Counsel for defendant includes in the Notice of Motion and Motion, and not in a declaration under oath, the terse statement that "This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 28, 2016." Docket 32. This statement is not accurate.[1] Counsel refers to the date of the Scheduling Conference in this matter as the date of the required meet and confer. As detailed in the attached Declaration of Caitlin J. Scott, counsel did

---

[1] In particular, it's not clear how the parties could have discussed the "substance of the contemplated motion" when the centerpiece of the motion, the purported "accessibility banner" now found on Defendant's website, was not posted until more than two months later.

not meet and confer as required by the Standing Order on that date.   Under the circumstances, this Motion should be denied for its failure to comply with L.R. 7-3 according to the express terms of the Standing Order.[2]

Had the parties met and conferred in an attempt to eliminate the motion, a substantial portion thereof could have been eliminated.   In particular, all aspects of the Motion that address the purported claims of Plaintiff that Defendant's "mobile website" is not accessible are surplus as Plaintiff makes no such claims in the Complaint.  Docket 1. The Motion also violates paragraph 24 of the Standing Order, which limits the length of the memorandum of points and authorities to twenty pages.   The memorandum of points and authorities in support of the Motion is twenty-five pages in length.  Plaintiff will move separately to strike the motion in its entirety, or alternatively, for an order limiting the total briefing by Defendant to twenty-five pages or permitting Plaintiff to file a five page sur-reply that will bring the pages allowed to brief the motion to an equal number on both sides.

## III.   FACTUAL BACKGROUND

### A.   Defendant and Defendant's Website

At all times relevant to this action, Defendant operated several restaurants in Los Angeles. Plaintiff's Statement of Additional Uncontroverted Facts No. 1 ("AUF").   Defendant admits that its website, www.dominos.com connects its customers to Domino's restaurants (MSJ at 4:6) and that the features on its website include a restaurant locator, permits users to order food for pick-up and deliver, and to purchase gift cards. Def. Answer at ¶13. [Docket 15].   Thus, the website is a heavily-integrated part of the operation of Defendant's restaurant locations. (AUF 7)

### B.   Plaintiff And His Use Of Screen Reading Software

---

[2] This would not be the first time in the recent past that Defendant's counsel have failed to adequately meet and confer leading to a court's refusal to consider a motion.  *See Cheryl Thurston v. Destination Hotels and Resorts, Inc.* 5:15-cv-01777-VAP-SP   Document 28, Order Directing the Parties to Further Meet and Confer as to Defendant's Motion to Compel and Request for Sanctions.

Plaintiff is a permanently blind individual who uses a screen reader in order to access the internet and read website content. (AUF 8) Screen reading software vocalizes visual information on a computer screen, and provides the only method by which a blind person may independently access the internet. Thus, unless websites are designed to be read by screen reading software, something that can be done rather easily, blind persons cannot fully access websites and the information, products and services contained there. (AUF 9)

### C.   Plaintiff Visits Defendant's Website

Beginning in July 2015, Plaintiff attempted to access the Domino's website, www.dominos.com to customize and order a pizza from a Domino's physical location closest to him in Los Angeles County for pick-up at that location. (AUF 10) Plaintiff was unable to independently order any pizza for pick-up at a Domino's location due to the access barriers he encountered. (AUF 11) Plaintiff found that the website was cluttered and difficult to understand. Specifically, he experienced difficulty locating the "Delivery" and "Carryout" buttons on the website. (AUF 12) Plaintiff understood there was a carousel on the home page but he could not identify the information there because it was unlabeled. (AUF 12) Additionally, he was unable to customize the toppings on the "Pizza Builder" feature because that information was not labeled or readable by his screen-reader. (AUF 14) He additionally discovered that he could not activate the "Add to Cart" button. (AUF 15) He was further unable to locate a specific store where he could pick up a pizza because he could not sort through the results. (AUF 16) Finally, he was unable to independently create a "Pizza Profile" and privately enter his personal and credit card information because he could not identify what the fields were associated with (e.g. street address, apartment number, credit card number, etc.). (AUF 17)  All of this caused Plaintiff to experience difficulty, discomfort, embarrassment, distress, discouragement, and frustration that a sighted individual does not experience when using Defendant's website. (AUF 18)

### D.   Defendant's Website Violates Level AA Success Criteria Under

**Version 2.0 Of The Web Content Accessibility Guidelines and the Basic Effective Communication Mandate of the ADA.**

As detailed more fully below, the Level AA Success Criteria under version 2.0 of the Web Content Accessibility Guidelines ("WCAG"), published by W3C, which is the main international standards organization for the World Wide Web and has been widely adopted as an appropriate measure to evaluate and ensure the accessibility of commercial websites for visually-impaired disabled persons by the United States Department of Justice ("DOJ") and by courts in connection with consent decrees for ADA actions based on inaccessible websites. *(See Section III-C&E, infra.)* Under the WCAG 2.0 AA Guidelines, Defendant's website falls short in a number of critical respects, confirming the difficulties that Plaintiff has had in accessing that website. Among other things:  1) a skip-over links do not exist, reference to "Categories" that head the side links are not structured, and screen reader users cannot tab pass the browser buttons; 2) The ad carousel has no pause button, are not labeled, and do not have alternative text to convey information to screen reader users, 3) On product pages, the "Qty" edit box is not labeled, tabs do not convey information, the keyboard is not accessible, and the "Add to Cart" button cannot be activated. (AUF 19-27)

Indeed, as explicitly set forth in the concurrently-filed expert declaration of Rosemary Musachio, after a high-level audit of Defendant's website Ms. Musachio determined **"the website is not equally accessible to persons that are blind** or have significant vision loss." (AUF 28) (emphasis added). Independent of WCAG, the website violates the basic effective communication mandate of the ADA.

IV.   **ARGUMENT**

    A.   **Defendant's "Accessibility Banner And The Phone Number On The Banner Did Not Exist During Any Time Alleged In The Complaint And Even If They Had They Are Legally Insufficient To Establish Effective Communication Under The ADA**

The **only evidence** offered to support this motion relates to the claim by

Defendant that it is entitled to judgment because it complies with the effective communications mandate of the Americans with Disabilities Act ("ADA") by communicating "through a phone number" with blind customers.  MSJ at 6.

This claim fails completely for several reasons.  First, Defendant explains the "phone number" is found on www.dominos.com as part of an accessibility banner stating, "If you are using a screen reader and are having problems using the website, please call 800-252-4031 for assistance".  MSJ at 7; Defendant's UMF ("Def. UMJ") 1-2. Defendant also argues that the accessibility banner rendered the website accessible to Plaintiff because it provides "24/7 support" and that "if a blind individual calls that number, the person can provide assistance with Domino's websites."  MSJ at 7 and Def. UMF 3-4.  Defendant argues that Plaintiff could not have experienced actionable barriers to access at www.Dominos.com (no "evidence" is offered in relation to Plaintiff's Mobile App claims) as alleged in the Complaint, "most recently "in 2016" because Defendant complies with the "effective communications" mandate of the ADA by providing this phone number and banner.  MSJ at 2:20.  This claim is demonstrably false.

The "accessibility banner" referenced in the complaint appeared on the www.dominos.com homepage, at the earliest, on January 30, 2017, the last date publicly available archived images of the site show the page up, WITHOUT THE BANNER.   The First date publicly available archived images show www.dominos.com up with the banner is February 6, 2017, **sixteen days before this motion was filed**.   Declaration of Caitlin J. Scott, Exhibits 1 and 2. Consistent with the facts revealed by the archived images, the Declaration of Domino's employee Mandi Galluchi offered in support of the motion states only that the Exhibit A to her Declaration dated February 20, 2017, showing the www.dominos.com website with the "accessibility banner" is a true and correct screenshot of the site "as it currently exists" (on February 20, 2017) and is silent on when the purported "accessibility banner" was added to the site.  Declaration of

Mandi Galluchi, line 3. This alleged "accessibility banner" added to www.dominos.com just sixteen to twenty-four days before this motion was filed[3] does not support Defendant's claim of "effective communication" in 2016 when Plaintiff alleged he was denied access to the public accommodation of Domino's Pizza restaurants because the services of those public accommodations, the website and mobile app, did not offer digital content accessible to him via his screen reader, the auxiliary aid best suited for him to access digital content. (AUF 30)

Now that it is clear that Defendant's "accessibility banner" did not exist at any relevant time in this case, Defendant may attempt to recast this argument in terms of mootness via a voluntary cessation theory. That argument would fail.

The voluntary cessation of illegal conduct does not moot a case. *Pereira v. Ralphs Grocery Co.*, No 08-55078 2009 WL 2039121 at *1 (9th Cir. July 7, 2009). The U.S. Supreme Court has explained the voluntary cessation doctrine as follows:

> "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is <u>stringent</u>: A case <u>might</u> become moot if subsequent events made it <u>absolutely clear</u> that the allegedly wrongful behavior <u>could not reasonably be expected to recur.</u>"
> *Friends of the Earth Inc., 528 U.S. at 189* (2000) (emphasis added).

Federal courts have found relevant the following three factors: "(1) whether the challenged conduct was isolated or unintentional as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether in ceasing the conduct the defendant has acknowledged liability." *Sheely v. MRI Radiology Network*, P.A. 505 F.3d 1173, 1184 (11th Cir.

---

[3] Defendant's discovery responses dated January 26 do not identify the "accessibility banner" referenced in the motion. (AUF 31)

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

2007).   "[W]hether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit is relevant to the voluntary cessation analysis." *Lozano v. C.A. Martinez Family Ltd. Partnership*, l29 F. Supp. 3d 967, 971 (S.D. Cal. 2015) (citing *Sheely*).   In *Lozano*, the federal district court rejected the ADA defendant's mootness argument because the defendant had failed to meet its "heavy burden" of showing that the ADA violations at issue were not likely to recur again in the future.   In particular, the court noted that the "Defendants implemented new policies regarding inspecting and repainting the accessible parking spaces after Plaintiff filed this lawsuit" Id. at 971.   "Furthermore there is no guarantee that Defendants won't just fail to follow through with their new policy of vigilantly inspecting the accessible parking spaces." Id. The court added, "Defendants could run afoul of the ADA in the future by mere inaction." Id.   Here, where Defendant added its "accessibility banner" for the sole purpose of supporting a motion for summary judgment, the doctrine of voluntary cessation will not help them.[4]

Even if the "accessibility banner" and phone number were present on the Dominos site in 2016, they are not adequate measures to fulfill the mandate of the

---

[4]   *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("presumption" of future injury when cessation occurs in response to suit);  Iron Arrow *Honor Soc'y v. Heckler*, 464 U.S. 67, 71-72, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983);  *W.T. Grant, 345 U.S.* at 632 n. 5, 73 S.Ct. 894 ("It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit .");  *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir.2005) (per curiam) ("[V]oluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction.");  *Troiano*, 382 F.3d at 1285 (in moot case, cessation occurred prior to suit);  *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1331-32 (11th Cir.2004) (same);  *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1255 n. 4 (11th Cir.2001) (same);  *Burger King Corp.*, 955 F.2d at 684 (in non-moot case, cessation came "on the eve of trial");  *Nat'l Adver. Co. v. City of Fort Lauderdale*, 934 F.2d 283, 286 (11th Cir.1991) (in non-moot case, cessation came six weeks after suit followed the next day by motion to dismiss);  *Jager v. Douglas County Sch. Dist.*, 862 F.2d 824, 833-34 (11th Cir.1989) (in non-moot case, cessation came only "[u]nder the imminent threat of the [plaintiffs'] lawsuit");  *City of Waco v. Envtl. Prot. Agency*, 620 F.2d 84, 86-87 & n. 10 (5th Cir.1980) (in non-moot case, cessation came "only six days before oral argument").

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

ADA to effectively communicate with persons with disabilities, including by providing "auxiliary aids and services" such as accessible electronic and information technology.  See below Article I §36.303(b)(2). The ADA regulation concerning effective communication is found in the section that discusses Auxiliary Aids and services, which provides:

**Article I.     §36.303   Auxiliary aids and services.**

(a) *General.* A public accommodation **shall take those steps** that may be necessary to ensure that **no individual with a disability** is excluded, denied services, segregated or otherwise **treated differently** than other individuals **because of the absence of auxiliary aids and services**, unless the public accommodation **can demonstrate** that taking those steps would **fundamentally alter** the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered **or would result in an undue burden**, i.e., significant difficulty or expense.

                    *        *        *

(c) *Effective communication.* (1) A public accommodation **shall furnish appropriate auxiliary aids and services** where necessary to ensure effective communication with individuals with disabilities. This includes an obligation to provide effective communication to companions who are individuals with disabilities.

                    *        *        *

(ii) The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. **A public accommodation should consult with individuals with disabilities whenever possible** to determine what type of auxiliary aid is needed to ensure effective communication, but the ultimate decision as to what measures to take rests with the public accommodation, provided that the method chosen results in effective communication. **In order to be *effective*, *auxiliary aids and services* must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.** (emphasis added)

As set forth above, the  ADA requires that Defendant provide accessible electronic and information technology as an auxiliary aid or service absent a

showing of undue burden and further that any auxiliary aid be provided in a manner that protects the privacy and independence of the individual with a disability. **§36.303(a) and (c)(ii)**. Defendant presents no evidence to establish that it would be unduly burdensome to make the information on its website accessible – or that it has even considered this question. The only evidence before the court is that offered by Rosemary Musachio that it is not an undue burden for Defendant to render the website accessible to persons using screen-readers. (AUF 29)

Also, how does the toll free phone number allow Plaintiff to act *independently?* How does it allow Plaintiff to act in a manner that preserves his *privacy?* For example, such phone service would force Plaintiff to disclose private information including his credit card or debit card payment information *unlike customers who are not blind*. As noted by the DOJ, "the ADA prohibits not only outright exclusion but also unnecessary differential treatment." Statement of Interest of the United States of America in *New v. Lucky Brands Dungarees Stores, Inc.* No. 14-CV-20574 [ECF No. 19 at 6] (S.D. Fla. Apr. 10, 2014),[5] at pg. 11.

Defendant's website provides coupons and special offers only offered by or through Defendant's online portals, thereby divesting Plaintiff and other sight-impaired individuals who encounter barriers on Defendant's website from "full and equal enjoyment of the goods, services, privileges, and accommodations offered by

---

[5] The DOJ's Statement of Interest in the *Lucky Brands* federal district court action is particularly illustrative of the DOJ's position that the effective communication obligation of public accommodations toward blind or low vision individuals requires that they ensure appropriate auxiliary aids or services that would allow such individuals to complete a debit card point-of-sale ("POS") purchase with the same level *of privacy* and *independence* as customers who are not sight-impaired via a tactile keypad or some other technology. "Mr. New's complaint alleges a valid claim of discrimination under title III of the ADA—specifically, Lucky Brand discriminates on the basis of disability when it fails to afford individuals who are blind with the same ability to ***independently*** access the debit card payment option provided to others, thus failing to ensure effective communication with its blind customers during transactions for its goods and services." DOJ's Statement of Interest in *Lucky Brands* at pg. 5 (emphasis added). "Because Lucky Brand chooses to use a POS device that is not ***independently*** usable by customers who are blind or have low vision, Lucky Brand must furnish auxiliary aids or services that enable such individuals to equally and independently benefits from this payment option unless doing so would result in a fundamental alteration or undue burden.'" *Id:* at 10 (emphasis added). [RJN 1];

---

9

defendant because of his disability." 28 C.F.R. § 36.201(a); *National Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 1196 (N.D. Cal. 2006).

Defendant's claim that "[t]his approach [the phone line] has been endorsed by the DOJ" is also misleading. (MSJ at 7:15). Defendant cites an Advanced Notice of Proposed Rulemaking, 75 Fed. Reg. 43460-1 (July 26, 2010) (2010 WL 2888003) ("2010 ANPRM"), and represents that the DOJ promulgated a rule that a customer service telephone line is an "accessible alternative" that complies with the requirements of Title III website accessibility. (MSJ at 7:15-21) This is misleading because the DOJ made the point by stating that when it issued the 2010 ANPRM, it was seeking "to explore whether rulemaking would be helpful in providing guidance as to how covered entities could meet their ***pre-existing obligations*** to make their websites accessible." See DOJ Statement of Interest in *National Ass 'n of the Deaf et al. v. Harvard University, et al,* Civil Action No. 3:15-cv-30023-MGM [ECF #33] (D. Mass. case filed 2/12/15) (emphasis added) at p. 4 [RJN 2]; *National A ss'n of the Deaf et al. v. Massachusetts Institute of Technology*, et al., Civil Action No. 3:15-cv-30024-MGM [ECF #34] (D. Mass. case filed 2/12/15) at p. 4. [RJN 3]

In these filings, the DOJ stated that the obligation to make websites accessible exists right now, even in the absence of any new regulations. This position departs significantly from the DOJ's statement in the 2010 ANPRM that public accommodations with inaccessible websites <u>might</u> still comply with the ADA by providing an equal degree of access through alternative means (e.g., the telephone). Thus, despite Defendant's assertions to the contrary, providing a telephone number is not an accessible alternative for its inaccessible website. In addition, since the 2010 ANPRM, Defendant has failed to cite to a single court decision whereby a court has recognized telephone service as an appropriate auxiliary aid or service in the Title III context in lieu of providing a fully accessible website to a sight-impaired user. Such omission speaks volumes.

**B. The Ninth Circuit Requires Websites To Be Accessible Under Title III If There Is A Nexus Between Defendant's Website And Physical**

**Stores; Defendant Admits The Nexus Between The Website And Domino's Pizza Restaurants**

Defendant's claim that the existing ADA does not cover the Internet, as it pertains to commercial websites is wrong. Defendant disingenuously cites cases **_only_** from the Eleventh Circuit (MSJ at 4:6-5:13),[6] that are incompatible with well-settled law in the Ninth Circuit and California State Courts, the Department of Justice in the form of enforcement actions and statements of interest, and, of course, the statute itself. Also significant, the Motion clearly states that "Defendant does not dispute that the websites connect its customers to Pizza Franchises". (MSJ at 4:6) Defendant thus acknowledges the nexus between its website and its places of public accommodation, its restaurants.

The ADA specifically provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of _the goods, services, facilities, privileges, advantages, or accommodations of_ any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added); 28 C.F.R. § 36.201(a); _see National Federation of the Blind v. Target Corp._, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("Target") ("The statute applies to the **_services of_** a place of public accommodation, not services in a place of public accommodation. To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute.") (emphasis added) While some circuits have determined that a website

---

[6] In Defendant's seminal case, _Access Now, Inc. v. Southwest Airlines_ (MSJ at 4:11-13), which spawned the other Florida cases on which Defendant relies, the court concluded that Southwest.com was not a place of public accommodation under Title III. Plaintiffs appealed the dismissal to the Eleventh Circuit, arguing that the violation was a result of the nexus between the inaccessible website and the travel service provided by the airline, but the court declined to consider the merits of the theory because the argument depended on facts and theories not presented to the district court. _Access Now, Inc v. Southwest Airlines_, 385 F.3d 1324, 1329-30 (11th Cir. 2004).

alone, independent of whether or not it is affiliated with a brick-and-mortar location, is a "public place of accommodation," the Ninth Circuit has held that a simple nexus must exist between the brick-and-mortar location and the associated website. In *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000), the Ninth Circuit interpreted the ADA statute as indicating that "some connection between the good or service complained of and an actual physical place is required." 198 F.3d at 1114. The Ninth Circuit's interpretation "has been read to require a 'nexus' between the challenged service and the premises of the public accommodation." *National Federation of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 569 (D. Vt. 2015) (citing *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279, 1284 n.8 (11th Cir. 2002)).  Defendant concedes this nexus. (MSJ at 4:6)In *Target supra*, just as here, Target was denying equal enjoyment of its website to visually-impaired individuals by failing to provide alternative text. 452 F. Supp. 2d at 949-50. The federal district court refused to dismiss the plaintiffs' complaint at the motion to dismiss stage of that case because Target failed to provide an equally accessible service and privilege of its public accommodations: "[I]t is clear that the purpose of the statute is broader than mere physical access—seeking to bar actions or omissions which impair a disabled person's "full enjoyment" of services or goods of a covered accommodation. 42 U.S.C. § 12182(a). Indeed, the statute expressly states that the denial of equal "participation" or the provision of 'separate benefit[s]' are actionable under Title III." 452 F. Supp. 2d at 954 (citing 42 U.S.C. § 12182(b)(1)(A)).

Five years later, in *Shields v. Walt Disney Parks and Resorts US, Inc.,* 279 F.R.D. 529 (C.D. Cal. 2011), the U.S. District Court for the Central District of California certified a website class of visually-impaired persons who used screen-reader software to use the defendants' commercial websites including www.disney.go.com based on the websites' inaccessibility. 279 F.R.D. at 560. The website class was defined to state a nexus between the websites and the defendants'

theme parks, hotels, restaurants, and stores. 279 F.R.D. at 542. Other California district courts have reached the same conclusion.[7]

The Eleventh Circuit, apparently the only circuit where Defendant finds its cases, "has not directly addressed [the] issue" of whether websites are covered by the ADA. *Gomez v. Bang & Olufsen America, Inc.*, Case No. 1:16-cv-23801-JAL (S.D. Fla. Feb 2, 2017) at p. 7. ("Bang") In *Bang*, Defendant claims that since Plaintiff "wished to order goods through Defendant's website and/or mobile website and have the delivered to his home" he "has not alleged that he was impeded in the full use and enjoyment of the brick-and-mortar store." (MSJ at 5:14-17.)

There are a several problems with Defendant's reliance on *Bang*. Foremost, it ignores the Ninth Circuit's well-established adoption of the nexus theory and the *Target*. Second, adopting *Bang* results in intent test of whether a plaintiff intends to visit the physical place of public accommodation – not whether there is a sufficient nexus between the challenged service and the place of public accommodation – incompatible with Ninth Circuit precedent. 97 F. Supp. 3d at 569; 452 F. Supp. 2d at 955. Third, Defendant has not established that there is no triable issue that the services offered at Defendant's website are equally accessible at physical locations (e.g. Defendant's website provides exclusive online coupons and special pricing offers, restaurant locators, and other services not offered at physical locations). Fourth, even if *Bang* was binding authority on this Court (it is not) and did not contradict Ninth Circuit precedent (it does), Defendant has not established that

---

[7] *See also Penney v. Kohl's Dep't Stores, Inc., et al.,* No. 8:14-cv-01100-CJC-DFM (C.D. Cal. Sept. 23, 2014); *James Patrick Brown v. BPS Direct, LLC, et al.,* Case No. LACV 1404622 JAK (JEMx) slip op. at 4-7 [ECF #30] (C.D. Cal. Oct. 6, 2014) (Kronstadt, J.) (denying the defendant's motion to dismiss while relying on the *Target*, holding "the Complaint does allege that Bass Pro Shops is a chain of brick-and-mortar stores and that BassPro.com is a website providing information about Bass Pro Shops products, offers, and locations .... [and] a nexus could be established here through discovery."); *Edward Davis v. Orlando Wilshire Investments Ltd., et al.,* No. 5:15-cv-01738-MWF-KK, slip op. at 10 [ECF #17] (C.D. Cal. Nov. 2, 2015) ("... the Court concludes that the Complaint sufficiently alleges that the inaccessibility of the Website impedes the full and equal enjoyment of the Hotel.").

1   Plaintiff never intends to personally visit Defendant's physical locations.

2       Defendant misrepresents the allegations of the Complaint referring to

3   paragraphs 15 and 27 in an effort to align the instant case factually with *Bang*.

4   Neither of these paragraphs state that Plaintiff wished to have Defendant's goods

5   delivered "to his home" (as in *Bang*) or that access to home delivery is the only

6   intended use of Defendant's website's services and privileges. Not only does the

7   *Bang* rule differ materially from the Ninth Circuit rule, the facts are NOT in

8   alignment.

9       Based on the Ninth Circuit's simple nexus test (and Defendant's admission),

10  there is no credible argument that Defendant's website is not connected to

11  Defendant's physical locations. Defendant's website offers a feature that allows

12  customers to customize their pizzas, order other food, and finalize their orders for

13  home delivery or pick-up at Defendant's pizzerias. (AUF 7) Defendant's website is

14  a heavily-integrated part of its Pizza business; consequently, the nexus between

15  Defendant's physical location and its website is apparent on its face. (AUF 7)

**C.   The Fact That The DOJ Has Not Promulgated Specific Technical Requirements For Websites Currently In Its Regulations Or The ADA Standards Does Not Preclude This Court From Determining Whether Plaintiff Was Treated Differently Than Sighted Individuals Due To Barriers On Defendant's Website**

19   Defendant next argues that Domino's is not required to operate and maintain its

20  commercial website accessible for sight-impaired users because the DOJ has not

21  established technical standards and rules for website accessibility. (MSJ at 12:7-12.)

22  The fact that the DOJ has not promulgated specific technical requirements for

23  commercial websites currently in its regulations or the ADA Standards does not

24  preclude this Court from determining whether Plaintiff was "treated differently"

25  than sighted individuals due to the absence of appropriate auxiliary aids and

26  services that are necessary to provide Plaintiff, who is sight-impaired, with

27  effective communication. 28 C.F.R. §§ 36.303(a), (c)(1). Here, the appropriate

28  auxiliary aids and services that were necessary to ensure effective communication

14

between Plaintiff and Defendant would be a version of Defendant's website that is free of barriers when read by screen reading software.

First, the DOJ has consistently "taken the position that the ADA applies to the Internet and web-based goods and services providers." *Scribd, supra,* 97 F. Supp. 3d at 574 (citing Letter from Deval L. Patrick, Assistant Att'y Gen., to Senator Tom Harkin (Sept. 9, 1996) ("Covered entities under the ADA are required to provide effective communication, regardless of whether they generally communicate through print media, audio media, or computerized media such as the Internet"); *Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sites: Hearing Before the House Subcommittee on the Constitution of the House Committee on the Judiciary,* 106th Cong., 2d Sess. 65-010 (2000) ("It is the opinion of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services."); 75 Fed. Reg. 43460-01 (July 26, 2010) ("The Department believes that title III reaches the Web sites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations.").) The *Scribd* court noted further that "[t]he DOJ is currently in the process of promulgating regulations that would codify the position it has taken in order to establish requirements for making websites accessible. *See* 75 Fed. Reg. 43460-01." (97 F. Supp. 3d at 574-75.) The DOJ has expressly stated that "the Department has been clear that the ADA applies to Web sites of private entities that meet the definition of 'public accommodations.' 75 Fed. Register 43460, 43464 (July 26, 2010).

The DOJ has also filed Statement of Interest briefs in several federal court actions continuing to make its position clear that the ADA <u>currently</u> obligates operators of websites to provide effective communication to disabled individuals to ensure equal access to commercial websites. For example, on June 25, 2015, the DOJ filed a Statement of Interest in a case against Harvard University regarding the

15

inaccessibility of Harvard's website in *Harvard University, et al,* [ECF #33] *supra*; The DOJ opposed Harvard's motion to dismiss for failure to state a claim and motion to dismiss on jurisdictional grounds. In particular, the DOJ noted that the ADA *"currently* obligate[s] Harvard to provide effective communication to ensure equal access to its online programming services, and resolution of Plaintiffs' claim involves a straightforward application of longstanding statutory and regulatory requirements. For more than two decades, federal courts have resolved effective communication claims brought under the ADA . . . in a wide range of contexts, including claims alleging unequal access to goods, benefits and services provided through websites or other electronic media." (Statement of Interest at 2) (emphasis in original). **The DOJ described "the heart of this case" as "a straightforward claim that Harvard failed to provide auxiliary aids or services necessary to ensure effective communication and equal access to Harvard's online programming."** *Id.* **at 8 (emphasis added).** The DOJ urged the court to "reject Harvard's attempt to convert a clear-cut ADA claim into something dependent on future rulemaking." *Id.* at 11. See also the DOJ's involvement in *New v. Lucky Brand,* at fn 4 *supra*; *Massachusetts Institute of Technology supra.*

The DOJ's views "are entitled to so-called *Skidmore* deference insofar as they 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Vigil v. Leavitt,* 381 F.3d 826, 835 (9th Cir. 2004) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944)). The Central District of California has previously found the DOJ's interpretation of the ADA on this precise issue to be "persuasive" in *Brown v. BPS Direct, LLC, et al.,* Case No. LACV 14-04622 JAK (JEMx), slip op. at 5 n.1 [ECF #30] (C.D. Cal. Oct. 6, 2014) (Kronstadt, J.) ("The Court also finds persuasive the Department of Justice ("DOJ")'s stance that Title III covers the websites of public accommodations."). *See aslo Scribd, supra,* 98 F.Supp.3d at 575.

**D.     No Showing Of Intentional Discrimination Is Required Where The Unruh Act Violation Is Premised On An ADA Violation**

Defendant states that "in order for Plaintiff to succeed on his disability access claim, he must plead and prove that Defendant intentionally discriminated against him personally." (MSJ at 19:18-22).  But the intentional discrimination standard on which Defendant relies only applies if the Unruh Act claim is not premised on an ADA violation. *See Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 678 (2009) (Holding that a plaintiff need not prove intentional discrimination to recover for an ADA violation under the Unruh Act).

Defendant also cites *Earll v. Ebay, Inc.*, 599 Fed. Appx. 695 (9th Cir. Apr. 1, 2015) (MSJ at 20:6-9) where the court found that "[b]ecause the ADA does not apply to the eBay services at issue here, Earll failed to allege violation of any separate, applicable accessibility standard" Id. at 696. ("Because eBay's services are not connected to any 'actual, physical place[],' eBay is not subject to the ADA." (citing *Weyer supra* 198 F.3d at 1114)).  Unlike Ebay legally blind individuals like Plaintiff who attempted to access www.dominos.com have as a result been denied access to the enjoyment of goods and services offered at Defendant's Pizzerias. *See Target, supra* 582 F. Supp. at 1196.

### E.   Defendant Should Be Estopped From "Fair Notice" And Stay Arguments Because Defendant's Website Has Communication Barriers Relating To Plaintiff's Disability That Violate the ADA

Defendant points to a list of the many kinds of barriers Plaintiff encountered that were alleged in the Complaint (e.g. (1) Lack of Alternative Text, (2) Empty Links That Contain No Text, (3) Redundant Links, and (4) Linked Images Missing Alt-Text), among others, and argues that those are "vague allegations" that do not afford Defendant "fair notice." (MSJ at 21:1-8).[8]  Defendant ignores other paragraphs of the Complaint that specifically provide in part: "Plaintiff visited Dominos.com several times using the JAWS screen-reader to try to order a

---

[8] Defendant elected to file the Motion without completing any discovery.  To the extent Defendant lacks certain information about the well pled allegations set forth in the Complaint, that is the obvious remedy.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

customized pizza" and he "encountered barriers to access on Dominos.com when it came to choosing, adding, or removing the toppings on the pizza he wanted to order. He was unable to add the pizza to checkout and complete a transaction due to the inaccessibility of Domino's website." Complaint ¶¶ 27, 29.

Plaintiff provided fair notice to Defendant that he tried to purchase a pizza on both Defendant's website and app and was unable to do so because of numerous barriers, identifiable by WCAG 2.0 Guidelines, and identified as such in the Complaint. Complaint ¶¶ 27-34. Plaintiff should not be punished because he identified barriers in the context of WCAG 2.0 Guidelines that prevented him from independently ordering a pizza on Defendant's website and app. This is notwithstanding that to-date Defendant has refused to provide any substantive discovery that would identify each barrier in the context of the practical WCAG 2.0 Guidelines, or by any standard, prior to filing its hastily drafted Motion. Defendant is also on notice of these issues because it has been sued before for the same reason and defended by the same counsel. *See Del Orden v. Domino's Pizza LLC*, Case No. 1:16-CV-03281 (Southern District of New York) (filed May 3, 2016) (dismissed June 27, 2016). [RJN 4].

Defendant's argument further ignores the fact that the DOJ and courts have sanctioned the use of the WCAG 2.0 Guidelines in evaluating website accessibility, and it is therefore appropriate as a reference for pleading. Although this Court need not apply those Guidelines to deny Defendant's motion, as a matter of precedence and practicality, as expanded below, it should.

Similarly, there is no basis whatsoever to grant Defendant's request to stay this case under the primary jurisdiction doctrine, since courts have allowed website claims under the ADA to go forward, the DOJ has for some time recognized the applicability of the ADA to website accessibility cases and have sanctioned the use of WCAG 2.0 Guidelines in evaluating website accessibility.

Federal and state courts have not seen the lack of specific standards as an

impediment to website-related ADA cases. Indeed, in granting the plaintiffs' motion for class certification, the federal district court in *Shields, supra,* stated:

> "Defendants assert that "there is no accepted accessibility standard" and points out that the Department of Justice "is yet to determine which standards would apply to websites." [Citation]. . . . The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually impaired. Indeed, nearly three years ago—presumably when website accessibility standards were even less settled—Target certified a class of "[a]ll legally blind individuals in the United States who have attempted to access Target.com and as a result have been denied access to the enjoyment of goods and services offered in Target stores."

279 F.R.D. at 559 (citing *Target Corp., supra*) (emphasis added). Similarly, in March 2016, the Superior Court of San Bernardino County held:

> "Plaintiff [] has presented sufficient evidence and legal argument to conclude *Title III of the ADA applies to plaintiff's use of a website where plaintiff has demonstrated he sought goods and services from a place of public accommodation because he demonstrated a sufficient nexus exists between defendant's retail store and its website that directly affects plaintiff's ability to access good and services.* Plaintiff also presented sufficient evidence that he was denied full and equal enjoyment of the goods, services, privileges, and accommodations offered by defendant because of his disability."

*Davis v. BMI/BNB Travelware Company dba Colorado Bag'n Baggage,* San Bernardino Superior Case No. CIVDS1504682 (Hon. Bryan F. Foster) (March 21, 2016) (emphasis added). The court also ruled that the defendant in *BMI/BNB Travelware* must conform its website to WCAG 2.0 AA Guidelines. [RJN 5].

Defendant's stay/dismissal request is particularly curious because it is based, essentially, on the DOJ's proposed rules, set forth at 75 Fed. Reg. 43460-1, et seq., issued on July 26, 2010. The DOJ obviously did not believe that it should delay any ADA website accessibility cases while it was considering those rule changes. Indeed, in its Statements of Interest, filed on June 25, 2015 in *Harvard University, supra,* and *Massachusetts Institute of Technology, supra.* The DOJ specifically asked the courts not to apply the primary jurisdiction doctrine and not to dismiss those cases despite the fact that there currently are no established standards.

Simply because the DOJ has not expressly adopted <u>specific</u> website guidelines

does not negate the decades-old implementing regulation promulgated by the DOJ,[9] which is precisely why the DOJ has been filing Statements of Interest briefs (including requests that the courts <u>not</u> apply the primary jurisdiction doctrine) and entering into consent decrees with commercial website owners whereby such owners have been obligated to conform their respective websites to be accessible as measured against the WCAG 2.0 Guidelines.[10] Regardless of whether any website-specific implementing regulations have been promulgated or not by the DOJ, which is the relevant enforcement agency, *see* 42 U.S.C. § 12188(b)(1)(A)(i) & (B), and the agency charged with promulgating regulations under Title III of the ADA, 42 U.S.C. § 12186(b), that does not negate the enforceability of the ADA.

## VI.   **CONCLUSION**

For the reasons set forth above, this Court should deny Defendant's motion.

DATED: March 6, 2017                    Respectfully submitted,
                                        MANNING LAW APC


                                        By:   */s/ Joseph R. Manning, Jr.*
                                              Joseph R. Manning, Jr.

                                        Attorneys for Plaintiff
                                        GUILLERMO ROBLES

---

[9]   The DOJ has affirmatively issued general regulations expressly prohibiting the unequal enjoyment of the "goods, services, privileges, advantages, or accommodations" offered by public accommodations.  28 C.F.R. § 36.201(a); *United States v. AMC Entm't, Inc.,* 245 F. Supp. 2d 1094, 1100 (C.D. Cal. 2003) ("After a notice-and-comment period, in July 1991, the DOJ promulgated regulations implementing Title III of the ADA. *See generally* 28 C.F.R., Pt. 36; 56 F.R. 35544 (July 26, 1991)").

[10] The DOJ adopted conformance with WCAG 2.0 Level AA Success Criteria in the form of consent decrees and settlement agreements. *See National Federation of the Blind, et al. v. HRB Digital LLC, et al.*, No. 1:13-cv-10799-GAO [ECF #60 at 5] (D. Mass. Mar. 24, 2014); *See also* a settlement agreement with Internet www.peapod.com dated November 17, 2014 and available at: https://www.justice.gov/opa/pr/justice-department-enters-settlement-agreement-peapod-ensure-peapod-grocery-delivery-website.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT