**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DAVID NEW, individually and on behalf of all others similarly situated,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>LUCKY BRAND DUNGAREES STORES, INC., d/b/a LUCKY BRAND JEANS,<br><br>　　　Defendant. | No. 14-CV-20574<br><br>**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**<br><br>Honorable Ursula Ungaro |

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

In January 2014, Plaintiff David New, who is blind, tried to purchase some items using his debit card at a Lucky Brand Jeans store located in Miami, Florida. According to Mr. New's Complaint, this and many other Lucky Brand Jeans stores have point-of-sale ("POS") devices that allow customers to swipe a debit or credit card to complete a purchase. Mr. New alleges that the POS devices at most Lucky Brand Jeans stores, including the store he visited, have touch screen displays that customers must use to key in their personal identification numbers ("PIN") when making a debit card transaction. Because individuals who are blind are unable to independently use these devices, they must seek the assistance of a third party to whom they must divulge their confidential PIN, or forego using a debit card altogether. Mr. New alleges that Defendant Lucky Brand Dungarees Stores, Inc., d/b/a Lucky Brand Jeans ("Lucky Brand") has violated title III of the Americans with Disabilities Act ("ADA") by failing to provide him and a class of similarly situated individuals with the means to independently purchase items at

1

Lucky Brand Jeans stores using a debit card—such as by providing POS devices with tactile key pads.

Lucky Brand argues that its treatment of Mr. New and other blind customers complies with the ADA and that this case should be dismissed for failure to state a claim. In support of its motion, Lucky Brand makes two main arguments. First, Lucky Brand posits that because the title III regulation and the ADA Standards for Accessible Design ("ADA Standards") contain no specific requirement mandating that POS devices have tactile key pads, Lucky Brand has no obligation to ensure that customers who are blind can make purchases using Lucky Brand's debit payment option. Second, Lucky Brand argues that because Mr. New and other blind customers can purchase items using cash, credit, or by processing their debit card as a credit card, there was no discrimination under the ADA.

Lucky Brand is wrong on both counts, and its focus on the POS device itself misconstrues the allegations of the Complaint and the requirements of the ADA. The fact that POS devices are not specifically addressed in the current title III regulation and the ADA Standards does not change Lucky Brand's obligations under the ADA to ensure effective communication with individuals with disabilities. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303. And when, as alleged in this case, other methods exist that would allow blind customers to independently access the debit payment option, providing them only the opportunity to complete their purchase by either divulging their PIN to a third party or paying with another payment method does not meet Lucky Brand's effective communication

2

obligations. Mr. New has therefore alleged a valid claim of discrimination under title III of the ADA.[1]

Because Lucky Brand's position contravenes the Department of Justice's ("the Department") consistent interpretation of public accommodations' obligations under the law, the United States respectfully submits this Statement of Interest to reiterate the broad protections afforded by the ADA in this context.

## LEGAL AUTHORITY TO FILE STATEMENT OF INTEREST

The United States submits this Statement of Interest pursuant to 28 U.S.C. § 517,[2] in opposition to Defendant's Motion to Dismiss (ECF No. 13). This litigation implicates the proper interpretation and application of title III of the ADA, 42 U.S.C. §§ 12181-12189, the Department's regulation implementing title III, 28 C.F.R. pt. 36,[3] and potential forthcoming rulemaking concerning different types of equipment and electronic information technologies.[4]

---

[1] The Unites States is not addressing the arguments Lucky Brand sets forth in its Motion to Dismiss regarding Mr. New's standing or the class allegations.

[2] Under 28 U.S.C. § 517, the Attorney General is authorized to send an officer of the Department of Justice to any district in the United States "to attend to the interests of the United States in a suit pending in a court of the United States."

[3] Congress delegated to the Department the authority to promulgate regulations under, issue technical assistance for, and seek enforcement in federal court of title III, 42 U.S.C. §§ 12186(b), 12188(b), 12206. Accordingly, the Department's regulation is entitled to substantial deference. *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984); *Auer v. Robbins*, 519 U.S. 452, 463 (1997); *Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) ("As the agency directed by Congress to issue implementing regulations, . . . to render technical assistance explaining the responsibilities of covered individuals and institutions, . . . and to enforce Title III in court, . . . the Department [of Justice]'s views are entitled to deference.").

[4] In 2010, the Department issued an advance notice of proposed rulemaking (ANPRM) notifying the public that it was considering amendments to its current regulations and ADA Standards to

3

The use of these electronic information technologies is becoming increasingly more prevalent by entities covered by the ADA. Therefore, the United States has a strong interest in the resolution of this matter.

## RELEVANT FACTUAL BACKGROUND

Plaintiff David New, who is blind, alleges that in January 2014 he visited a Lucky Brand Jeans store in Miami, Florida, and attempted to purchase merchandise using a debit card (Class Action Compl. ¶¶ 20-21). Mr. New was unable to make the purchase independently because the store's POS device had only a visual touch screen and the numbers displayed on this type of screen are not discernible to him or to other individuals who are blind or visually impaired (*id.* ¶¶ 3-4, 20-21). Mr. New alleges that the only option for making his purchase using a debit card was to convey his secret PIN to another individual to complete the transaction (*id.* ¶¶ 4, 25). He further alleges that Lucky Brand Jeans stores throughout the United States have POS devices that are not accessible to individuals who are legally blind, and he brings this action on behalf of a class of similarly situated individuals with disabilities (*id.* ¶¶ 3, 8, 31).[5]

---

address the need for specific accessibility requirements for certain types of equipment and furniture. *See* Nondiscrimination on the Basis of Disability by State and Local Governments and Places of Public Accommodation; Equipment and Furniture, 75 Fed. Reg. 43,452 (July 26, 2010) ("Equipment and Furniture ANPRM"). Among the types of equipment discussed in this ANPRM are retail store self-checkout stations, machines used for ordering food at quick service restaurants, gas station pay-at-the-pump systems, kiosks, and POS devices—all of which are referred to as electronic and information technology equipment and furniture.

[5] Defendant notes that Mr. New has recently filed similar cases concerning the use of inaccessible POS devices at other retail stores (*see* Def.'s Mot. Dismiss at 14 n.11). The United States is also aware of numerous settlements by public accommodations with other complainants involving this issue. *See* Point of Sale Settlements, Law Office of Lainey Feingold, at lflegal.com/category/settlements/point-of-sale-settlements/. These lawsuits and settlements

**LEGAL STANDARD**

In reviewing the sufficiency of a complaint, all well-pleaded facts must be accepted as true and all reasonable inferences must be drawn in favor of the plaintiff. Fed. R. Civ. P. 12(b)(6); *Speaker v. U.S. Dep't of Health and Hum. Svcs. Ctrs. for Disease Cntrl. & Prev.*, 623 F.3d 1371, 1380 (11th Cir. 2010). The Federal Rules of Civil Procedure require only that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Furthermore, the Supreme Court has described this notice-pleading standard as requiring a complaint to "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

**ARGUMENT**

Title III of the ADA requires that public accommodations provide "appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c); *see also* 42 U.S.C. § 12182(b)(2)(A)(iii). Mr. New's complaint alleges a valid claim of discrimination under title III of the ADA—specifically, Lucky Brand discriminates on the basis of disability when it fails to afford individuals who are blind with the same ability to independently access the debit card payment option provided to others, thus failing to ensure effective communication with its blind customers during transactions for its goods and services. Contrary to Lucky Brand's assertions, neither the absence of specific

---

underscore the importance of being able to independently process secure debit card transactions by individuals who are blind or visually impaired.

technical requirements for POS devices nor the availability of other payment options defeats Mr. New's ADA claim. Mr. New's factual allegations—that he was unable to independently complete a debit card transaction because the POS device Lucky Brand provided was inaccessible and that Lucky Brand failed to provide an appropriate auxiliary aid or service to ensure effective communication during this transaction—fall squarely within title III's statutory and regulatory protections.

A. **The Absence of Specific Technical Requirements For POS Devices Does Not Mean That Lucky Brand Has No Obligations Under The ADA With Respect To The Provision Of Debit Payment Options**

In arguing that Mr. New fails to state a claim for relief under the ADA, Lucky Brand relies heavily on the fact that the ADA Standards do not specifically address POS devices (Mot. Dismiss at 5-8). Lucky Brand asserts that its obligations under the ADA are limited only to those requirements specifically identified in the ADA Standards; that nothing in the ADA Standards requires a POS device to have a "tactilely-sensitive keypad;" and that, therefore, Lucky Brand owes no obligation to ensure that individuals who are blind can independently and effectively access the debit payment options currently offered through its POS devices (Mot. Dismiss at 6-8). Lucky Brand's interpretation improperly restricts the scope of the ADA, and its suggestion that the ADA Standards alone establish a public accommodation's obligations under title III is incorrect. The ADA Standards are only one component of title III and do not govern the ADA claim in this case. Rather, title III's general prohibition against discrimination on the basis of disability and its requirements to provide appropriate auxiliary aids and services where necessary to ensure effective communication establish obligations under the ADA with respect to

6

Lucky Brand's use of POS devices to provide payment services to its customers (*see infra*, pp. 8-12).

Indeed, there are many instances where the Department has found physical and communication barriers not specifically identified in its regulation or the ADA Standards to be covered under title III.  For example, the Department has long considered websites to be covered by title III despite the fact that there are no specific technical requirements for websites currently in the regulation or ADA Standards.  *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind, et al., United States of America v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website).[6]  The Department has also considered specific types of equipment or technology—such as medical equipment, e-readers, and interactive multimedia—to be covered by title III even though these types of equipment or

---

[6] To the extent Lucky Brand seeks to analogize to *Access Now v. Southwest Airlines*, 227 F. Supp. 2d 1312 (S.D. Fla. 2002), to establish that technological barriers are not covered by the ADA (Mot. Dismiss at 5), the instant case is materially different because it does not concern Lucky Brand's website or any issues addressed in *Access Now*.  In addition, the decision in *Access Now* takes a position that is inconsistent with the Department's interpretation and the positions taken by various courts throughout the United States, including courts in the First, Seventh, and Ninth Circuits.  *See Carparts Distrib. Ctr., Inc. v. Automotive Wholesaler's Assoc. of New England, Inc.*, 37 F.3d 12 (1st Cir. 1994) (finding coverage of websites under Title III); *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (same); *National Fed. of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953-55 (N.D. Cal. 2006) (same); *cf. Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (finding title III coverage of websites in dicta).

7

technologies are not explicitly addressed in the regulation or the ADA Standards. *See, e.g.*, Settlement Agreement Between the United States of America and the Beth Israel Deaconess Medical Center Under Title III of the Americans with Disabilities Act (2009) (requiring, among other things, the acquisition of medical equipment that is accessible to and usable by persons with disabilities), available at http://www.ada.gov/bidmsa.htm; Letter of Resolution Between the Department of Justice and Princeton University (2010) (requiring the provision of e-readers that are fully accessible to individuals with vision impairments), available at http://www.ada.gov/princeton.htm; Settlement Agreement Between the United States and The Newseum, Inc. Under Title III of the Americans with Disabilities Act (2013) (requiring the provision of auxiliary aids or services that allow persons with vision impairments to fully access interactive multimedia), available at http://www.ada.gov/newseum/newseum-sa.htm.

Similarly, the absence of specific technical standards or regulatory provisions that directly address a public accommodation's obligation to provide accessible POS devices in no way establishes that the accessibility of POS devices is outside the scope of title III, especially where current regulations incorporate specific obligations for effective communication. *See* 28 C.F.R. § 36.303(a). Until the process of establishing specific technical requirements for POS devices is complete,[7] public accommodations have a degree of flexibility in complying with title III's more general requirements of nondiscrimination and effective communication—but they

---

[7] As Lucky Brand recognizes (Mot. Dismiss at 8), the Department is currently considering revisions to its title III regulation to set forth specific technical requirements for POS devices, among other types of equipment and furniture. *See* Equipment and Furniture ANPRM, 75 Fed. Reg. 43,452 (July 26, 2010). The fact that the regulatory process is not yet complete in no way supports Lucky Brand's claim that its use of POS devices in the provision of its goods and services is not currently covered by title III's effective communication requirements (*see infra*, pp. 8-12).

still must comply.  As described below, those requirements include, absent a fundamental alteration or undue burden defense, providing auxiliary aids and services in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.  28 C.F.R. §§ 36.303(a), (c)(1)(ii).  The options that Lucky Brand has offered to Mr. New and other similarly situated customers with visual disabilities do not meet these requirements.

B.  **The Requirement to Provide Auxiliary Aids and Services Under Title III Obligates Lucky Brand Generally To Provide Customers Who Are Blind A Means By Which They Can Independently And Privately Complete A Debit Card Purchase**

Mr. New's allegation that Lucky Brand violates the ADA when it denies him and other blind patrons a service, privilege, or advantage offered as a matter of course to others—the option to securely and independently conduct debit transactions—falls squarely within the ADA's ambit.  Under title III, Lucky Brand may not discriminate against any individual "on the basis of disability in the full and equal enjoyment of [its] goods, services, facilities, privileges, advantages, or accommodations."  42 U.S.C. § 12182(a).  In addition to this general nondiscrimination mandate, title III prohibits public accommodations from engaging in specific types of discrimination, including the

> failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, services, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(iii); *see also* 28 C.F.R. § 36.303(a).  The title III regulation requires that "[a] public accommodation shall furnish appropriate auxiliary aids and services where

9

necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). The regulation sets forth numerous examples of "auxiliary aids and services,"[8] including "Brailled materials and displays; screen reader software; . . . accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b). The term "auxiliary aids and services" also includes the "[a]cquisition or modification of equipment or devices; and [o]ther similar services and actions." *Id.* And, particularly significant here, the title III regulation further requires that "[i]n order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and *in such a way as to protect the privacy and independence of the individual with a disability*." *Id.* (emphasis added).

In this case, Lucky Brand provides its customers the opportunity to pay for purchases with a debit card. A commercial transaction between a customer and a public accommodation requires communication between the two, and in this case, Lucky Brand has chosen to use POS devices as a means by which it communicates with its customers to complete these transactions. Because Lucky Brand chooses to use a POS device that is not independently usable by customers who are blind or have low vision, Lucky Brand must furnish auxiliary aids or services that enable such individuals to equally and independently benefit from this payment option unless doing so would result in a fundamental alteration or undue burden. *See* 28 C.F.R. §§ 36.303(a), (c)(1). Inherent in POS transactions are customer concerns about the confidentiality and security

---

[8] The Department, in promulgating the rule implementing title III in 1991, explained that it was "not possible to provide an exhaustive list [of auxiliary aids and services], and such an attempt would omit new devices that will become available with emerging technology." 28 C.F.R. pt. 36, App. C, p. 912 (discussion of § 36.303).

10

of private financial information, and in his Complaint, Mr. New cites to the legitimate threat to his or another blind customer's financial security by having to provide a PIN to a Lucky Brand employee to process a debit card transaction (Class Action Cmpl. ¶¶ 4, 25).[9] Thus, considerations such as the security of otherwise confidential banking or financial information are important in determining what auxiliary aid or service would be appropriate. *See* 28 C.F.R. § 36.303(c)(1)(ii). Based on the allegations in Mr. New's complaint and the arguments set forth in Lucky Brand's motion to dismiss, it does not appear that Lucky Brand considered customer confidentiality in the instant case.

      Furthermore, contrary to Lucky Brand's assertions (Def.'s Mot. Dismiss at 10-11), the fact that Mr. New or other customers who are blind can complete their purchases through means other than a debit card does not support dismissal, as the ADA prohibits not only outright exclusion but also unnecessary differential treatment. *See* 42 U.S.C. §§ 12182(a), (b)(1)(A), (b)(2)(A)(iii). In his Complaint, Mr. New seeks to exercise the same choice other customers are given to pay for Lucky Brand's goods using a debit card without needing to divulge his private PIN to a third party (Class Action Cmpl. ¶¶ 2-6, 21-24). There may be a number of reasons why an individual, blind or otherwise, would prefer to purchase goods using a debit card. For example, some individuals may choose to use a debit card transaction because such transactions do not require photo identification (*see* Plt.'s Resp. to Mot. Dismiss at 6 n1). Others may choose to use a debit card transaction because it allows funds to be debited from your bank account

---

[9] The Department noted in its Equipment and Furniture ANPRM that "[i]ndividuals with disabilities who engage in financial or other transactions should be able to do so independently and not have to provide third parties with private financial information, such as a personal identification number (PIN)." 75 Fed. Reg. 43452, 43458 (July 26, 2010).

11

immediately (*see id.*).  Some individuals may prefer a debit transaction because their bank may charge a fee when processing your debit card as a credit.  And others may choose to use a debit transaction because it allows the consumer the option of getting cash back (*see id.*).  Thus, contrary to Lucky Brand's arguments (Mot. Dismiss at 2 n.1, 11), whether there are no practical differences between a debit and credit transaction is an inherently factual question not appropriate for resolution through a motion to dismiss.

In order to take advantage of this benefit, Mr. New is seeking an auxiliary aid or service that would allow him and other individuals who are blind to complete a purchase with the same level of privacy and independence as customers who are not blind (Class Action Cmpl. ¶¶ 6, 8, 23).  Absent a showing by Lucky Brand that furnishing such an aid or service would result in a fundamental alteration or undue burden—a factual determination not appropriate for disposition at this stage—Lucky Brand must provide appropriate auxiliary aids or services that comply with its effective communication obligations.  42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(a), (c)(1).  Thus, accepting Mr. New's factual allegations as true, he has alleged facts that support a claim that Lucky Brand discriminated against him and other blind individuals in violation of title III by failing to ensure that its blind customers are not "treated differently than other individuals because of the absence of auxiliary aids or services." 28 C.F.R. § 36.303(a).

To be clear, the United States does not contend that a particular auxiliary aid or service be used by Lucky Brand in this case to ensure effective communication with individuals who are blind or have low vision.  Although Mr. New stated in his Complaint that POS devices with tactile key pads would allow him and similarly situated blind customers to equally and independently complete debit card transactions (Class Action Cmpl. 6), the United States

12

recognizes that there may be other types of auxiliary aids or services that would ensure effective communication—including the requisite privacy and independence—when Lucky Brand customers make debit card transactions.[10]  In enacting the ADA, Congress intended to include the use of new and evolving technologies by public accommodations and other covered entities in meeting their ADA obligations.[11]  And while the choice of the auxiliary aid or service provided rests ultimately with the public accommodation, the determination of what is effective should take into consideration the individual's requested or preferred form of aid or service. 28 C.F.R. § 36.303(c)(1)(ii).  Whichever auxiliary aid or service the public accommodation ultimately provides, it must be effective as measured by the regulatory standards.  *See id.*

Taking the allegations in Mr. New's complaint as true, he has alleged that Lucky Brand has failed to provide him and other similarly situated individuals with the auxiliary aids or

---

[10] In addition to POS devices that include a tactile key pad, there are a variety of other technologies that allow individuals who are blind or visually impaired to complete a debit transaction.  For example, the acquisition of screen reader software running on a tablet or mobile device to conduct a debit card transaction with headphones, such as Apple devices using the built-in VoiceOver screen access software or Google Android devices using the built-in TalkBack screen access software, along with a software application that permits debit card transactions.  *See, e.g.*, Settlement Agreement Between the National Federation of the Blind of Massachusetts, Inc., et al., and Square, Inc. (July 22, 2013), available at www.trelegal.com/wp-content/uploads/2013/07/Final-Public-Accessibility-Agreement-Accessible.pdf (regarding the accessibility of Square's card payment applications); Settlement Agreement between the National Federation of the Blind of Massachusetts and SCVNGR, Inc. (Jan. 8, 2013), available at nfb.org/levelup-now-fully-accessible-blind-smartphone-users (regarding the accessibility of the LevelUp smartphone payment application).

[11] The House Committee on Education and Labor stated that it intended "that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times," and that technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities." H.R. Rep. No. 101-485, pt. 2, at 108 (1990).

13

services necessary to complete private and independent debit card transactions in violation of the statutory and regulatory provisions of title III of the ADA.  42 U.S.C. 12182(b)(2)(a)(iii); 28 C.F.R. § 36.303(c)(1)(ii).  In so doing, Lucky Brand has denied Mr. New and other individuals with disabilities effective communication, and ultimately an equal opportunity to enjoy all of the "services, . . . privileges, [or] advantages" Lucky Brand offers.  28 C.F.R. §§ 36.201(a), 36.303.  Therefore, this Court should find that Mr. New has alleged a valid claim of discrimination under title III of the ADA.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court consider this Statement of Interest in this litigation and find that Mr. New has alleged a valid claim of discrimination under title III of the ADA.

Dated: April 10, 2014

| | |
|---|---|
| WIFREDO A. FERRER<br>United States Attorney<br>Southern District of Florida | JOCELYN SAMUELS<br>Acting Assistant Attorney General<br><br>EVE L. HILL<br>Deputy Assistant Attorney General<br><br>REBECCA B. BOND<br>Chief<br>KATHLEEN P. WOLFE<br>Special Litigation Counsel<br>JANA ERICKSON<br>Deputy Chief |
| /s/ Veronica Harrell-James<br>VERONICA HARRELL-JAMES<br>Assistant United States Attorney<br>Fla. Bar No. 644791<br>99 N.E. 4th Street<br>Miami, FL 33132<br>Telephone:   (305) 961-9327<br>Facsimile:   (305) 530-7139<br>Veronica.Harrell-James@usdoj.gov | /s/ Brandy L. Wagstaff<br>BRANDY L. WAGSTAFF, Bar ID A5501964<br>Attorney Advisor<br>Disability Rights Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W. - NYA<br>Washington, DC 20530<br>Telephone:   (202) 307-0663<br>Facsimile:   (202) 307-1197<br>Brandy.Wagstaff@usdoj.gov<br>*Counsel for the United States of America* |

15

## CERTIFICATE OF SERVICE

I hereby certify that, on April 10, 2014, I electronically filed the **Statement of Interest of the United States of America in Opposition to Defendant's Motion to Dismiss** with the Clerk of the Court using the CM/ECF system, which will send Notices of Electronic Filing (NEF) to all registered participants and that paper copies will be sent to those counsel listed as non-registered participants on this same date.

*/s/ Veronica Harrell-James*
VERONICA HARRELL-JAMES
Assistant United States Attorney
Fla. Bar No. 644791
99 N.E. 4th Street
Miami, FL 33132
Telephone: (305) 961-9327
Facsimile: (305) 530-7139
Veronica.Harrell-James@usdoj.gov

Counsel for United States of America

16