Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
~~Caitlin J. Scott, Esq. (State Bar No. 310619)~~Michael J. Manning, Esq. (State Bar No. 286879)
Tristan P. Jankowski, Esq. (State Bar No. 290301)
Osman M. Taher, Esq. (State Bar No. 272441)
**MANNING LAW, APC**
~~4667 MacArthur Blvd., Suite 150~~20062 S.W. Birch Street, Suite 200
Newport Beach, CA 92660
Office: (949) 200-8755
Fax: (866) 843-8308
~~ADAPracticeGroup@manninglawoffice.com~~DisabilityRights@manninglawoffice.com

Attorneys for Plaintiff GUILLERMO ROBLES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

GUILLERMO ROBLES, an individual,

       Plaintiff,

v.

DOMINO'S PIZZA LLC, a limited liability corporation,

       Defendant.

Case No. 2:16-cv-06599-SJO-FFM

~~COMPLAINT~~FIRST AMENDED COMPLAINT **FOR DAMAGES AND INJUNCTIVE RELIEF:**

1. **VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. §12181** *et seq.* **[DOMINOS.COM]**
2. **VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. §12181** *et seq.* **[DOMINO'S MOBILE APP]**
3. **VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51** *et seq.* **[DOMINOS.COM]**
4. **VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA**

1

FIRST AMENDED COMPLAINT

**Formatted:** Font: 14 pt

**Formatted:** Body Text Continued

**Formatted:** Font: Not Bold, No underline

**CIVIL CODE § 51 *et seq*.**
[DOMINO'S MOBILE APP]

4.

Plaintiff, Guillermo Robles ("Plaintiff"), alleges the following upon information and belief based upon investigation of counsel, except as to his own acts, which he alleges upon personal knowledge:

**INTRODUCTION**

1. Plaintiff is a blind person who requires screen-reading software to read website content using his computer and to interact with mobile applications on his iPhone. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

2. Plaintiff brings this civil rights action against Defendant Domino's Pizza LLC, a Michigan limited liability company ("Defendant" or "Domino's") for its failure to design, construct, maintain, and operate its website (hereinafter the "Website" or "Defendant's Website" which shall refer to Dominos.com, and any other website operated by or controlled by Defendant as well as any third party content which is located on or used in connection with Dominos.com and any other website operated by or controlled by Defendant, for the purposes described herein) to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people. Defendant's denial of full and equal access to its website Website, and therefore denial of its products and services offered thereby and in conjunction with its physical brick-and-mortar locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("UCRA").

3. Plaintiff further brings this civil rights action against Defendant for

2
FIRST AMENDED COMPLAINT

failing to design, construct, maintain, and operate its mobile application ("Mobile App" or "~~Mobile Application~~App") to be fully accessible to, and independently usable by Plaintiff and other blind or visually-impaired individuals.  Defendant's denial of full and equal access to its Mobile App also denies Plaintiff products and services Defendant offers, which in conjunction with its physical locations is a violation of Plaintiff's rights under the ~~ADA and~~UCRA.

~~3.~~4.   The California Legislature provided a clear and statewide mandate for the elimination of discrimination against individuals with disabilities when it enacted the Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq.* Discrimination sought to be eliminated by the Unruh Civil Rights Act ("UCRA") includes barriers to full integration, independent living, and equal opportunity for individuals with disabilities, which then necessarily includes barriers created by websites and other places of public accommodation that are inaccessible to blind and visually-impaired individuals.

~~4.~~5.   Because Defendant's ~~w~~Website and Mobile App, ~~Dominos.com,~~ is ~~are~~ not equally, independently, or fully ~~–~~accessible to blind and visually-impaired consumers in violation of the ~~ADA~~UCRA, Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's ~~website~~ Website and Mobile App will become and remain accessible to blind and visually-impaired consumers.

~~5.   Defendant's Mobile App, a separate portal of access to Defendant's products and services, is also not equally accessible to blind and visually-impaired consumers in violation of the ADA.  Plaintiff therefore seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's Mobile App also becomes and remains accessible to blind and visually-impaired consumers.~~

## JURISDICTION AND VENUE

6.   This Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 128188, as Plaintiff's claims arise under Title III of

the ADA, 42 U.S.C. § 1281, *et seq*., and 28 U.S.C. § 1332.

7.     This court has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367, because Plaintiff's UCRA claims are so related to Plaintiff's federal ADA claims, they form part of the same case or controversy under Article III of the United States Constitution.

8.     This Court has personal jurisdiction over Defendant because it conducts and continues to conduct a substantial and significant amount of business in the State of California, County of Los Angeles, and because Defendant's offending ~~website~~ Website and Mobile App are available across California.

9.     Venue is proper in the Central District of California pursuant to 28 U.S.C. §1391 because Plaintiff resides in this District, Defendant is subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

## **PARTIES**

10.    Plaintiff, at all times relevant and as alleged herein, is a resident of California, County of Los Angeles. Plaintiff is legally blind and cannot use a computer without the assistance of screen-reading software (otherwise known as a "screen-reader").  However, Plaintiff is a proficient user of the JAWS screen-reader and uses it to access the ~~internet~~Internet. Plaintiff has visited the Website on separate occasions using the JAWS screen-reader. During Plaintiff's separate visits to Defendant's Website, Plaintiff encountered multiple access barriers which denied Plaintiff full and equal access to the facilities, goods, and services offered to the public and made available to the public on Defendant's Website. Due to the widespread access barriers Plaintiff encountered on Defendant's Website, Plaintiff has been deterred, on a regular basis, from accessing the Website.

11.    Plaintiff is a tester in this litigation seeking to ensure compliance with federal and state law. *See Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1096 (9th Cir. 2017).

FIRST AMENDED COMPLAINT

12.    Plaintiff is also a consumer who wishes to access Defendant's good and services.

13.    Plaintiff is being deterred from patronizing the Defendant's Website and brick-and-mortar locations on particular occasions.

10.    resides in Los Angeles County, California.  Plaintiff is a blind and handicapped person, and a member of a protected class of individuals under the ADA, pursuant to 42 U.S.C. § 12102(1) (2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*  Plaintiff uses a screen reader to access the internet and read internet content on his computer and iPhone.  Despite multiple attempts to navigate Dominos.com, Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered by Domino's as a result of accessibility barriers on the website Dominos.com.

14.    Plaintiff has also attempted several times to navigate Defendant's Mobile App on his with an iPhone.  However, on each occasion Plaintiff has been denied the equal, full use, and enjoyment of the facilities, goods, and services offered by Defendant as a result of accessibility barriers on its Mobile App.

11.15. If informed that the Website has been made accessible within the meaning of the UCRA and the ADA, Plaintiff will return to the Website and Mobile App to test its accessibility within 45 days to test such a claim of compliance with the law.

12.    The access barriers on both Defendant's Dominos.com website and its Mobile App have deterred Plaintiff from visiting Domino's brick-and-mortar restaurant locations.

16.    Plaintiff is informed and believes, and thereon alleges, Defendant Domino's is a Michigan limited liability company incorporated in Delaware and has its principal place of business in Michigan Ann Arbor, Michigan.  Defendant is registered to do business in the State of California and has been doing business in the State of California, including the Central District of California.  Defendant operates

brick-and-mortar locations in Los Angeles County, California.  Defendant's brick-and-mortar locations constitute places of public accommodation.  Both Defendant's Website and Mobile App provide consumers with access to an array of goods, services, and information related to Defendant's brick-and-mortar locations including menu item and sale information, coupons and specials, rewards accounts, online ordering, and order tracking, as well as access to various other goods, services, and privileges Defendant offers.

The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend this ComplaintFirst Amended Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

13.17.At all relevant times as alleged herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants (Defendant, together with any DOE Defendants, are collectively referred to hereinafter as "Defendant" or "Defendants").Defendant operates thousands of pizzerias across the nation.  Many of these pizzerias are in the State of California, and a number of these pizzerias are located in the Central District of California.  These Domino's pizzerias constitute places of public accommodation.  Defendant's pizzerias provide to the public important goods and services.  Defendant also provides the public the Dominos.com website and the Domino's Mobile App.  Defendant's website and Mobile App provide consumers with access to an array of goods and services including restaurant locators, product descriptions, product sales, special pricing offers, customizable orders, pick-up and delivery services, and many other benefits

6

FIRST AMENDED COMPLAINT

related to these goods and services.

14.   Defendant's pizzerias are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Dominos.com is a service, privilege, or advantage of Domino's pizzerias. Domino's Mobile App is a service, privilege, or advantage of Domino's pizzerias.

15.   Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Central District of California that caused injury, and violated rights prescribed by the ADA and UCRA, to Plaintiff and to other blind and other visually impaired consumers. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in the Central District of California. Specifically, on several separate occasions, Plaintiff attempted to purchase customized pizzas using Defendant's website Dominos.com and with Domino's Mobile App in Los Angeles County.

**THE AMERICAN WITH DISABILITIES ACT AND VISUALLY-IMPAIRED PERSONS' ACCESS TO THE INTERNET**

16.18. The Internet has become a significant source of information, a portal, and a tool for conducting business, as well as a means for doing everyday activities such as shopping, learning, banking, etc.researching, as well as many other activities for sighted, blind, and visually-impaired persons alike. As an essential tool for many Americans, when accessible, the Internet provides individuals with disabilities great independence. Blind persons are able to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen. This technology is known as screen-reading software. Except for legally blind individuals whose residual vision allows them to use magnification, screen-reading software is currently the only method a blind person can fully and independently access the internet.

17.   In today's tech-savvy world, blind and visually-impaired people have the

7
FIRST AMENDED COMPLAINT

1  ability to access websites and mobile applications using keyboards in conjunction with

2  screen access software that vocalizes the visual information found on a computer

3  screen or displays the content on a refreshable Braille display.  This technology is

4  known as screen reading software.  Screen reading software is currently the only

5  method a blind or visually impaired person may independently access the internet.

6  Unless websites and mobile apps are designed to be read by screen reading software,

7  blind and visually impaired persons are unable to fully access websites or mobile

8  apps, and the information, products, and services contained thereon.

9      19.    Blind and visually-impaired users of Windows operating system-enabled

10  computers and devices have several screen reading software programs available to

11  them.

12      18.20.  Some of these programs are available for purchase and other programs

13  are available without the user having to purchase the program separately. Job Access

14  With Speech, otherwise known as "JAWS," is currently the most popular, separately

15  purchased and downloaded screen-reading software program available for a Windows

16  computer.

17      19.21. For blind and visually-impaired users of Apple operating system-enabled

18  computers and devices, the screen-reading  access software available, pre-installed,

19  and built into all Apple products is VoiceOver.  Apple's devices, including the iPhone,

20  have the VoiceOver program integrated into their iOS operating system for use by

21  blind and visually-impaired users.

22      22.    For screen-reading software to function, the information on a website or

23  on a mobile application must be capable of being rendered into text.  If the website or

24  mobile app content is not capable of being rendered into text, the blind or visually-

25  impaired user is unable to access the same content available to sighted users using

26  their keyboards because they are unable to see the screen or manipulate a mouse.

27      23.    Screen-reading software is currently the only method a blind or visually-

28  impaired person may independently access the internet, websites, and other digital

Formatted Table

content.

24.    If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access and navigate the same content on a website or mobile app that is available to sighted users.

~~20.~~25.There are well-established industry adopted guidelines for making websites accessible to visually-impaired people who require screen-reading software programs. These guidelines have existed for at least several years and are successfully followed by large business entities who want to ensure their websites are accessible to all persons. The Web Accessibility Initiative ("WAI"), an initiative of the World Wide Web Consortium developed guidelines on website accessibility. Through Section 508 of the Rehabilitation Act, the federal government also promulgated website accessibility standards. These guidelines, easily found on the Internet, recommend several basic components for making websites accessible, including, but not limited to: adding invisible Alt-text to graphics; ensuring all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible; and adding headings so blind and visually-impaired people can navigate websites and mobile applications just as sighted people do. Without these basic components, websites and mobile applications are inaccessible to a blind person using screen-reading software.

~~21.    The international website standards organization known throughout the world as W3C, published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0" hereinafter).  WCAG 2.0 are well established guidelines for making websites accessible to blind and visually impaired people.  These guidelines are universally followed by most large business entities to ensure their websites and mobile apps are accessible.~~

~~22.    Apple also provides iOS accessibility guidelines for its mobile devices like the iPhone, which assist iOS developers to make mobile applications accessible to blind and visually impaired individuals.  Apple's guidelines are available online at:~~

Formatted: Font: 14 pt

Formatted: Font: 14 pt

Formatted Table

1  https://developer.apple.com/library/ios/documentation/UserExperience/Conceptual/i
2  PhoneAccessibility/Introduction/Introduction.html.

3      23.26. Non-compliant websites and apps pose common access barriers to blind
4  and visually impaired persons. Common barriers encountered by blind and visually
5  impaired persons include, but are not limited to, the following:

**Formatted:** Justified

    a.   A text equivalent for every non-text element is not provided;

    b.   Title frames with text are not provided for identification and navigation;

    c.   Equivalent text is not provided when using scripts;

    d.   Forms with the same information and functionality as for sighted persons are not provided;

    e.   Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

    f.   Text cannot be resized without assistive technology up to 200 percent without loss of content or functionality;

    g.   If the content enforces a time limit, the user is not able to extend, adjust or disable it;

    h.   Web pages do not have titles that describe the topic or purpose;

    i.   The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

    j.   One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

    k.   The default human language of each web page cannot be programmatically determined;

    l.   When a component receives focus, it may initiate a change in context;

    m.   Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

    n.   Labels or instructions are not provided when content requires user

**Formatted Table**

input;

o.  In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

o.p. Inaccessible Portable Document Format (PDFs); and, and,

q.  The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technologyscreen-reading software.

27.   In California and the Ninth Circuit controlling law recognizes the viability of Unruh and Americans with Disabilities Act (hereinafter "ADA") claims against commercial website and mobile application owners and operators with regard to the accessibility of such websites and mobile applications.  *Robles v. Domino's Pizza, LLC* , 17-55504, 2019 WL 190134 (9th Cir. January 15, 2019) (Holding the ADA and UCRA apply to websites and mobile applications, that imposing liability under Title III of the ADA and Unruh Act would not violate Fourteenth Amendment rights to due process, that the ADA is not impermissibly vague in this context, that regulated parties have received fair notice of their obligations since 1996, that it was error to invoke the doctrine of primary jurisdiction and finally that an order requiring compliance with WCAG 2.0 is a possible equitable remedy); *Long v. Live Nation Worldwide, Inc.*, No. C16-1961 TSZ 2018 WL 3533338 (W.D. Wash. July 23, 2018) (denying Defendant's summary judgment motion based on voluntary cessation and mootness and finding that defendant's website is subject to the accessibility regulations under the ADA as a matter of law); *Carroll v. Fedfinancial Fed. Credit Union*, 2018 WL 3212023 (E.D. Va. June 25, 2018) (denying Defendant's Motion to Dismissed based on jurisdiction, Title III applicability, and due process arguments);

Formatted: Font: 14 pt

Formatted: Font: 14 pt

Formatted Table

*Haynes v. Hooters of Am., LLC*, 17-13170, 2018 WL 3030840 (11th Cir. June 19, 2018) (holding that a private settlement agreement does not moot a new web access claim by a different plaintiff); *Gil v. SMG Holdings*, No. 1:18-cv-20107 (S.D. Fl. May 28, 2018) (denying a motion to dismiss and holding that mootness and voluntary cessation defenses did not apply when defendant claimed it was already in the process of correcting the barriers on its website); *Thurston v. Midvale Corporation, et al.*, Los Angeles Superior Court, Case No. BC663214 (Judge Samantha P. Jessner) (May 17, 2018) (granting plaintiff's summary judgment motion finding "a plain reading of the statute, as well as the [DOJ's] treatment of websites under the ADA, indicate that Defendant's website falls within the categories of 'services, … privileges, advantages, or accommodations of' a restaurant, which is a place of public accommodation under the ADA."); *Castillo v. Jo-Ann Stores, LLC*, No. 5:17-cv-20110-KBB (N.D. Ohio February 13, 2018) (denying motion to dismiss finding plaintiff has stated a cognizable website ADA claim and has standing, plaintiff successfully alleged a nexus between defendant's website and its brick and mortar stores, and the injunctive relief sought does not violate due process rights); *Gathers v. 1-800-FLOWERS.com*, No. 1:17-cv-10273 (Mass. February 12, 2018) (denying a motion to dismiss sought against ADA claims); *Robles v. Yum! Brands, Inc. d/b/a Pizza Hut*, No. 2:16-cv-08211-ODW(SS) at *15. (C.D. Cal. Jan. 25, 2018) (Wright) (denying a motion for summary judgment sought against ADA and California's Unruh Civil Rights Act claims) ("Pizza Hut cannot simply post a customer service phone number on its website and claim that it is in compliance with the ADA unless it shows that a visually-impaired customer 'will not be excluded, denied services, segregated or otherwise treated differently' from non-visually impaired customers who are able to enjoy full access to Pizza Hut's website" [citations omitted]); *Andrews v. Blick Art Materials, LLC*, No. 1:17-cv-00767-JBW-RLM (E.D.N.Y. Dec. 21, 2017) (Weinstein, J.) (Memorandum and Order approving settlement of website accessibility case in the form of judgment); *Brooke v. A-Ventures, LLC*, No. 2:17-cv-2868-HRH at 19. (A.Z. Nov. 22, 2017)

(granting declaratory judgment that defendant's website did not comply with ADA; defendant enjoined to ensure equal access) ("[D]efendant was in violation of the Americans with Disability Act because its hotel reservations website did not afford disabled persons equal access to defendant's public accommodation"); *Rios v. New York & Company, Inc.*, No. 2:17-cv-04676-ODW (AGr) (C.D. Cal. Nov. 16, 2017) (Wright) (denying a motion for judgment on the pleadings sought against Unruh Act claims) ("[T]he Court finds that this case is not unique, 'as federal courts have resolved effective communication claims under the ADA in a variety of contexts—including cases involving allegations of unequal access to goods, benefits, and services provided through websites.' Hobby Lobby, 2017 WL 2957736, at *7"); *Access Now, Inc. v. Blue Apron, LLC*, No. 17-cv-116-JL at 21. (C.D. N.H. November 8, 2017) (denying a motion to dismiss sought against ADA claims) ("[Plaintiffs] rely on Title III of the ADA as governing the defendant's potential liability and invoke compliance with the WCAG 2.0 AA standards as a sufficient condition, but not a necessary condition, for such compliance, and therefore as a potential remedy."); *Gorecki v. Dave & Buster's, Inc.*, No. 2:17-cv-01138-PSG-AGR (C.D. Cal. October 10, 2017) (Gutierrez, P.) (denying a motion for summary judgment sought against ADA and California's Unruh Civil Rights Act claims) ("a finding of liability regarding the Website's compliance with the ADA does not require sophisticated technical expertise beyond the ability of the Court"); *Kayla Reed v. CVS Pharmacy, Inc.*, Case No. 2:17-cv-03877-MWF-SK, at *9. (C.D. Cal. Oct. 3, 2017) (Fitzgerald) (denying a motion to dismiss sought against ADA and California's Unruh Civil Rights Act claims) ("The DOJ's position that the ADA applies to websites being clear, it is no matter that the ADA and the DOJ fail to describe exactly how any given website must be made accessible to people with visual impairments. Indeed, this is often the case with the ADA's requirements, because the ADA and its implementing regulations are intended to give public accommodations maximum flexibility in meeting the statute's requirements. This flexibility is a feature, not a bug, and certainly

not a violation of due process."); *Andrews v. Blick Art Materials, LLC*, -- F. Supp. 3d --, 2017 WL 3278898, at *12, *15-*18 (E.D.N.Y. Aug. 1, 2017) (Weinstein, J.); *Gomez v. Lego Systems, Inc.*, Case 1:17-cv-21628-CMA (S.D. Fla. July 31, 2017) (denying a motion to dismiss an ADA claim alleging an inaccessible commercial website) [ECF #40]; *Thurston v. Chino Commercial Bank, N.A.*, No. CV 17-01078 BRO (JCx), 2017 WL 3224681, at *5 (C.D. Cal. July 27, 2017) (citing *Gorecki*); *Markett v. Five Guys Enterprises LLC*, No. 1:17-cv-00788-KBF, slip op. at 4-6 [ECF #33] (S.D.N.Y. July 21, 2017); *Gorecki v. Hobby Lobby Stores, Inc.*, No. 2:17-cv-01131-JFW-SK, 2017 WL 2957736 (C.D. Cal. June 15, 2017) (Walter, J.) (denying a motion to dismiss sought against ADA and California's Unruh Civil Rights Act claims) ("[T]his is a relatively straightforward claim that Hobby Lobby failed to provide disabled individuals full and equal enjoyment of goods and services . . . by not maintaining a fully accessible website. There is nothing unique about this case, as federal courts have resolved effective communication claims under the ADA in a wide variety of contexts-- including cases involving allegations of unequal access to goods, benefits and services provided through websites."); *Gil v. Winn-Dixie Stores, Inc.*, No. 16-23020-Civ-Scola, -- F. Supp. 3d --, 2017 WL 2547242, at *7 (S.D. Fla. June 13, 2017) (finding that the defendant, a large supermarket chain, had violated the plaintiff's rights under the ADA by failing to maintain an accessible website after a non-jury trial); *Frazier v. Ameriserv Financial Bank*, Nos. 2:16-cv-01898-AJS (Lead Case), 17cv0031 [ECF #107], slip op. at 20 (W.D. Pa. Apr. 21, 2017) (denying a motion to dismiss an ADA claim alleging an inaccessible commercial website); *Frazier v. Churchill Downs Inc.*, Nos. 2:16-cv-01898-AJS (Lead Case), 2:16-cv-0007 (Member Case) [ECF #107] slip op. at 20 (W.D. Pa. Apr. 21, 2017) (same); *OmahaSteaks.com, Inc. v. Access Now, Inc., et al.*, No. 8:17-cv-00060-LSC-CRZ [ECF #9-1] (D. Neb. Apr. 17, 2017) (consent decree); *Access Now, Inc., et al. v. Omahasteaks.com, Inc.*, Nos. 2:16-cv-01898-AJS (Lead Case), 2:17-cv-00269-AJS (Member Case) [ECF #99] (W.D. Pa. Apr. 11, 2017) (same); *Gil v. Winn-Dixie Stores,*

*Inc.*, -- F. Supp. 3d --, No. 16-23020-Civ-Scola, 2017 WL 2609330 (S.D. Fla. Mar. 15, 2017) (denying a motion for judgment on the pleadings sought against an ADA claim alleging an inaccessible commercial website); *Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 3561622, at *12-*20 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) (recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 6540446, at *1-*3 (D. Mass. Nov. 3, 2016) (Mastroianni, J.); *Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15- cv-30024-MGM, 2016 WL 3561631, at *1 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) (recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15-cv-30024-MGM, 2016 WL 6652471, at *1 (D. Mass. Nov. 4, 2016) (Mastroianni, J.); *Edward Davis v. Orlando Wilshire Investments Ltd., et al.*, No. 5:15-cv-01738-MWF-KK, slip op. at 10 [ECF #17] (C.D. Cal. Nov. 2, 2015) (Fitzgerald, J.) (denying motion to dismiss in a website accessibility case) ("the Court concludes that the Complaint sufficiently alleges that the inaccessibility of the Website impedes the full and equal enjoyment of the Hotel."); *Sipe v. Huntington National Bank*, 15-CV-1083, Doc No. 21 (W.D. Pa. Nov. 18, 2015) (denying motion to dismiss based on claims the DOJ had not yet issued regulations governing website accessibility); *Nat'l Fed'n of the Blind v. Scribd, Inc.*, 98 F. Supp.3d 565, 576 (D. Vt. 2015) (denying a motion to dismiss an ADA claim against a commercial website operator); *James Patrick Brown v. BPS Direct, LLC, et al.*, Case No. LACV 14-04622 JAK (JEMx) slip op. at 4-7 [ECF #30] (C.D. Cal. Oct. 6, 2014) (Kronstadt, J.) (denying the defendant's motion to dismiss while relying on the *Target* decision as "persuasive", and holding "the Complaint does allege that Bass Pro Shops is a chain of brick-and-mortar stores and that BassPro.com is a website providing information about Bass Pro Shops products, offers, and locations…. [and that] a nexus could be established here through discovery."); *Penney v. Kohl's Dep't*

*Stores, Inc., et al.*, No. 8:14-cv-01100-CJC-DFM [ECF #12] slip op. at 3 (C.D. Cal. Sept. 23, 2014) (Carney, J.) (denying a motion to dismiss and stating, "Thus, the Complaint states plausible facts that establish the requisite nexus between the challenged service and the place of public accommodation."); *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public"); *id.* at 200-01 ("[T]he legislative history of the ADA makes clear that Congress intended the ADA to adapt to changes in technology.") (quoting H.R. Rep. 101-485(II), at 108 (1990)) ("[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times."); *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011) (rejecting as "unpersuasive" Disney's argument that "there is no accepted accessibility standard" and the argument that the DOJ has yet to determine what standards to apply to websites and stating, "The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually-impaired."); *Nat'l Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute."); *id.* at 953-54 ("consistent with the plain language of the statute, no court has held that under the nexus theory a plaintiff has a cognizable claim only if the challenged service prevents physical access to a public accommodation. Further, it is clear that the purpose of the statute is broader than mere physical access—seeking to bar actions or omissions which impair a disabled person's "full enjoyment" of services or goods of a covered accommodation. 42 U.S.C. § 12182(a). Indeed, the statute expressly states that the

denial of equal "participation" or the provision of "separate benefit[s]" are actionable under Title III. *See* 42 U.S.C. § 12182(b)(1)(A)."); *c.f. Hindel v. Husted*, No. 2017 WL 432839, at *7 (S.D. Ohio Feb. 1, 2017) (granting a permanent injunction against the Ohio Secretary of State based on the accessibility of the state's website under Title II of the ADA and requiring accessibility); *Hindel v. Husted*, No. 17-3207 (6th Cir., Nov. 13, 2017) (defendant bears the burden of production and persuasion as to affirmative defenses such as fundamental alteration and subject matter of state election laws do not relieve defendant of these burdens); *Davis v. BMI/BNB Travelware company* No. CIVDS1504682 WL2935482 (Cal.Super. March 21, 2016) (granting motion for summary judgment for plaintiff and ordering that defendant's website be made WCAG 2.0 compliant and awarding Unruh damages in favor of plaintiff).

p.28.  Each of Defendant's violations of the ADA is likewise a violation of the UCRA.  Indeed, the UCRA provides that any violation of the ADA constitutes a violation of the UCRA.  Cal. Civ. Code § 51(f).

## FACTUAL BACKGROUND

29.  Defendant offers its commercial Website and Mobile App to the public.

30.  Defendant offers the commercial website, Dominos.com, to the public. The website Website and Mobile app offers a feature features which should allow all consumers to access the good and services offered in connection with its brick-and-mortar locations restaurants.

24.31. The Website provides consumers with access to an array of goods, services, and information related to Defendant's brick-and-mortar locations which include but are limited to, the following: customize their pizzas, order other food and finalize their orders for home delivery or pick up at Defendant's pizzerias menu item descriptions and sale information, coupons and specials, rewards accounts, online ordering, and order tracking., as well as access to various other goods, services, and privileges Defendant offers on the Mobile App.  Dominos.com offers access to a variety of goods and services which are offered and available to the public, including

1   special pricing options, store locator tools, and other services.

2       25.   Defendant also operates an online ordering portal through its iPhone
3   Mobile App which, like Dominos.com, offers a feature that should allow all
4   consumers to create accounts, login to their accounts, customize pizzas, order food,
5   and finalize orders for home delivery or pick up at Defendant's pizzerias.  Similar to
6   Dominos.com, Defendant's Mobile App offers access goods and services offered and
7   available to the public.

8       32.   Based on information and belief, it is Defendant's policy and practice to
9   deny Plaintiff, along with other blind or visually-impaired users, access to Defendant's
10  ~~Dominos.com~~Website and Mobile App, and to therefore specifically deny the goods
11  and services that are offered and integrated with Defendant's ~~restaurants~~brick-and-
12  mortar locations and otherwise.

13      ~~26.~~33.  Due to Defendant's failure and refusal to remove access barriers to
14  ~~Dominos.com~~its Website and ~~the Domino's~~ Mobile App, Plaintiff and visually-
15  impaired persons have been and are still being denied equal access to ~~Domino's~~
16  ~~pizzerias and the~~ Defendant's brick-and-mortar locations and the numerous goods,
17  services, privileges, and benefits offered to the public through ~~Dominos.com and the~~
18  ~~Domino's~~Defendant's Website and Mobile App.

19  **~~Defendant's Barriers on Dominos.com Deny Plaintiff Access~~**

20      34.   Plaintiff ~~, as a blind person,~~ cannot use a computer without the assistance
21  of screen-reading software.

22      35.   However, Plaintiff is a proficient user of the JAWS screen-reader to
23  access the ~~internet~~Internet.

24      ~~27.~~36.  Plaintiff has visited ~~Dominos.com~~ Defendant's Website ~~several times~~
25  ~~on several separate occasions~~ using the JAWS screen-reader ~~to try to order a~~
26  ~~customized pizza.  But due to the widespread accessibility barriers on Dominos.com,~~
27  ~~Plaintiff has been denied the full enjoyment of the facilities, goods, and services of~~
28  ~~Dominos.com, as well as to the facilities, goods, and services of Domino's locations~~

18

FIRST AMENDED COMPLAINT

in California..

37.  While attempting to navigate Dominos.com the Website, Plaintiff encountered multiple accessibility barriers for blind or visually-impaired people that include, but are not limited to, the following:

a.  The home page has graphics, links, and buttons that are not labeled or are incorrectly labeled, or lack alternative text ("Alt-text"). Alt-text is invisible code embedded beneath a graphical image on a website.  Web accessibility requires that Alt-text be coded with each picture so that screen-reading software can speak the Alt-text where a sighted user sees pictures.  Alt-text does not change the visual presentation, but instead a text box shows when the cursor moves over the picture.  The lack of Alt-text on these graphics prevents screen-readers from accurately vocalizing a description of the graphics.

b.  Plaintiff encounteredThere are multiple unlabeled or mislabeled buttons and links.  Without descriptive alternate text, Plaintiffs, and other screen-reader users, have no clue about the purpose or function of the button or link;

c.  Plaintiff encounteredThere is an image carousel on the home page that could cannot be paused by screen-reading technology, which barred Plaintiff's screen reader from reading the changing content;

d.  Plaintiff was unable to navigate past the "Choose Any 2 or More" banner, preventing him from navigating elsewhere;

28. The "Pizza" sub-link under the Menu heading contains an excessive amount of "Order" links.  As Plaintiff navigated When navigating through each order link, Plaintiff blind and visually-impaired users was are unable to use heading commands to associate which listed pizza option belonged to which "Order" link;

19

e.   On the "How Do You Want Your Domino's?" link, Plaintiffblind users encountered excessive "Order Carryout" links that did do not contain heading commands to determine which "Order Carryout" link belonged to which listed brick-and-mortar location. Furthermore, when PlaintiffWhen activesthe "More Info" link is activated listed for each location, the screen readers does do not read the expanded content;

f.   Plaintiff encountered Eerror messages listed on the "Tracker" link that are inaccessible to screen-readersing technology;

g.   Plaintiff and other blind or visually-impaired users are was unable to build histheir own pizzas because the crust, size, sauce, and topping options wereare inaccessible to screen-readersing technology;

h.   Plaintiff and other blind or visually-impaired users are was unable to make an online order because of the additional following barriers.

i.   For example, : Plaintiff's swhile trying to order, screen readers reads content on the main ordering page, which confusesing Plaintiff users by into thinking that the content is on the ordering system dialog box that pops out that must be used to make an order.;

j.   Tthe "Special Instructions "+" links to expand options listed throughout the ordering system only reads "plus".;

k.   Tthe various selectable button options do not activate messages listed on associated list boxes.;

l.   Oorder headings are inaccessible to screen readers.;

m.   Oother Plaintiff cannot utilize the "Choose A Sauce" Bbutton options cannot be accessed with arrow keys after a selection is made.;

n.   LList boxes that indicate quantity do not associate read in tandem with the their associatedparticular products desired for purchase.; inaccessible pop up dialogue pop up windows;

o.   v and (6 )Vvarious button options containing associated list boxes that

1  are~~are~~ inaccessible to screen-reading technology.~~;~~

2  p.  M~~m~~islabeled and/~~or~~ unlabeled links, buttons, and headings are on

3  Defendant's checkout system.~~; and~~

4  q.  The contents in the "Step 1: Confirm Your Selections" section is not

5  accessible for screen-reading technology;

6  r.  ~~Plaintiff~~Blind and visually-impaired users are ~~was~~ unable to select a

7  brick-and-mortar location because of the inaccessible structure on

8  various pages of the Defendant's Website.

9  s.  Blind users cannot tab out of the "Deals" banner, preventing them from

10  tabbing anywhere else on the page.

11  t.  When users navigate to a radio button (e.g. "Delivery", "Now"), screen

12  readers do not say the heading that is associated with them (i.e. "Service

13  Method" or "Order Timing").

14  u.  Screen reader do not read dynamic error messages.

15  v.  When users select an item, screen readers do not say it's added to the

16  cart.

17  w.  Screen reader do not say "Build Your Own Pizza" when users tab

18  through its options.

19  x.  Although screen readers say "Quantity" for the list boxes, they do not

20  say the product item associated with each form field. This issue also

21  applies to the "Edit" and "Remove" links.

22  y.  Screen readers cannot select a date from the dropdown calendar, and if

23  dropped down with a mouse, screen readers do not say the selection.

24  z.  When users activate the "Checkout" link, screen readers do not read the

25  "You Might Also Enjoy" dialog window.

26  aa.  After screen reader users select a side, drink, or desert, screen readers

27  do not say a dialogue window appears.  Users also cannot access any of

28  the controls on it.

21

bb.  Radio buttons on all of the "Drinks" popup dialogs are unlabeled.

cc.  In the check-out section of the Website, the "Order Summary" data table is not coded correctly so screen reader users cannot associate column headers with the information.

dd.  In the check-out section of the Website, although the placeholder for the "Ext." edit box acts as its name, screen readers cannot read it if users delete it.

ee.  When users activate the "?" links, screen readers do not say that a tooltip appears or read its contents.

ff.  The "Pay at Store" radio button is coded as "Cash".  Screen readers also cannot read the note associated with the radio button.

gg.  The first options for the "Month" and "Year" list boxes act as temporary labels.  When users select other options, the form fields become unlabeled.

hh.  When users navigate to the "Confirm Password" edit box, screen readers do not say instructions below the edit field.

Although "Piece of The Pie Rewards", "Easy Order and Recent Order", "Payment and Personal Info" are visual headings, they are not coded as such for users to navigate to them and associate them with content.

29.

a.  *Lack of Alternative Text* ("alt text"), or a text equivalent.  Alt text is invisible code embedded beneath a graphical image on a website.  Web accessibility requires that alt text be coded with each picture so that screen-reading software can speak the alt text where a sighted user sees pictures.  Alt text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture.  The lack of alt text on these graphics prevents screen readers from accurately

22

FIRST AMENDED COMPLAINT

vocalizing a description of the graphics.  As a result, visually impaired Domino's customers are unable to determine what is on the website, browse, look for store locations, check out Defendant's programs and specials, or make any purchases (including but not limited to, customizing their own pizza using the "Pizza Builder" feature);

b.  *Empty Links That Contain No Text* causing the function or purpose of the link to not be presented to the user.  This can introduce confusion for keyboard and screen reader users;

c.  *Redundant Links* where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen reader users; and

d.  *Linked Images Missing Alt text,* which causes problems if an image within a link contains no text and that image does not provide alt text. A screen reader then has no content to present the user as to the function of the link.

38.   In 2015, Plaintiff attempted to do business with Defendant on the Website and dDue to the unlabeled buttons, lack of Alt-text, the structure of the headings and Website, cursor traps, and other barriers, Plaintiff was unable to fully and independently access the Website when visiting for the dual purpose of testing for compliance with the UCRA and ADA and to purpose of visit (must include a purpose involving  the  brick and mortar  location)ordering  a  customized  pizza  online  for delivery from his preferred brick-and-mortar location.Most recently, in 2016, Plaintiff again attempted to do business with Domino's on Dominos.com.  Plaintiff again encountered barriers to access on Dominos.com when it came to choosing, adding, or removing the toppings on the pizza he wanted to order.  He was unable to add the pizza to checkout and complete a transaction due to the inaccessibility of Domino's website.

23

30.

**Defendant's Barriers on Its Mobile App Deny Plaintiff Access**

31.   Since Plaintiff has also experienced accessibility problems when he attempted to use Domino's Mobile App on his iPhone with VoiceOver, Apple's talking software program that allows Plaintiff to access the menus and applications on his iPhone.

Aas early as 2015, and until the current date, during Plaintiff's separate visits to the Website attempted to access, do business with, and place a customized pizza order from Domino's using the Domino's iOS Mobile App.  Plaintiff was unable to place his order due to accessibility barriers of unlabeled buttons that do not conform to Apple's iOS accessibility guidelines.  While trying to navigate Defendant's Mobile App, Plaintiff encountered similar multiple access barriers as Defendant's website, similar to the lack of alt-text on graphics, inaccessible forms, inaccessible image maps, and the lack of adequate prompting and labeling.which denied Plaintiff full and equal access to the facilities, goods, and services offered to the public and made available to the public on the Website.

39.   Further, iIn the course of several separate attempts to utilize Defendant's Mobile App, Plaintiff- encountered multiple access barriers which denied Plaintiff full and equal access to the facilities, goods, and services offered to the public and made available to the public on Defendant's Mobile App.

40.   Plaintiff also cannot use a mobile device without assistance of screen-reading software.

41.   In addition to using screen reader software to access websites on his computer, Plaintiff is also a proficient Voice-Over user and regularly uses an iPhone to access online content found on websites and mobile applications.

42.   Plaintiff also attempted to use the Mobile App with an iPhone on several separate occasions using theits built-in Voice-Over screen reader.

32.   In the course of several separate attempts to utilize Defendant's Mobile

24

FIRST AMENDED COMPLAINT

App, Plaintiff encountered multiple access barriers which denied Plaintiff full and equal access to the facilities, goods, and services offered to the public and made available to the public on Defendant's Mobile App.

43.    Since at least as early as 2015, and until the current date, Plaintiff attempted to access Defendant's Mobile App, sought additional information about Defendant's goods and services offered, and attempted to do business with Defendant using Defendant's iOS Mobile App.   Plaintiff was unable to access information contained on the Mobile App or browse the Mobile App due to accessibility barriers that made the Mobile App inaccessible.

44.    Plaintiff was unable to do business with Defendant because of the accessibility barriers contained on the Mobile App and was unable browse Defendant's offerings using the Mobile App due to barriers to access on , the inaccessibility of the Mobile App that prevent its use by blind or visually impaired persons.

45.    While trying to navigate Defendants' Mobile App, Plaintiff encountered access barriers similar to those encountered on Defendants' Website. The accessibility barriers included, but were not limited to encountering a lack of Alt-text for images and graphics, inaccessible forms, unlabeled or mislabeled buttons, inaccessible image maps, and a lack of any adequate prompting and labeling. In addition to similar issues of non-descriptive and uninformative link text, which made it impossible to effectively and efficiently navigate the Mobile App, the Mobile App lacked adequate navigational headings.   Headings are essential for screen reader users to easily understand the page structure and to navigate.  Without headings, screen reader users are forced to painstakingly read the entire page from beginning to end, rather than jump between headings to streamline navigation.

46.    While this case has been pending since September 2016, Plaintiff has visited the Website and the Mobile App on several more occasions to determine if Defendant has made any improvements to the accessibility of the Website or Mobile

App. On each occasion, up to the date of this First Amended Complaint in May 2019, the same barriers to access still exist and Defendants have made no improvement in the Website or Mobile App's accessibility. Plaintiff has been and continues to be denied from full and equal access to the facilities, goods, and services offered to the public and made available to the public on the Website.

33.   Plaintiff alleges on information and belief that Defendant updated its Mobile Application in 2016.  Thereafter, Plaintiff again attempted to place an order using the most updated version of Defendant's Mobile App to order a pizza with customized toppings.  Again due to barriers to access, Plaintiff was unable to place any order for a customized pizza using Defendant's Mobile App.

34.   Defendant denies visually impaired people access to its goods, services, and information because it prevents free navigation with screen reading software to Dominos.com and the Mobile App.  These barriers to blind and visually impaired people can and must be removed, by simple compliance with WCAG 2.0.

**Defendant Must Remove Barriers To Its Website And Mobile App**

47.   Due to the inaccessibility of Dominos.com and itswidespread and continued access barriers that Plaintiff encountered on the Website and Mobile App, blind and visually impaired customers such as Plaintiff, who need screen readers, cannot customize the toppings on their pizzas, browse, shop, or complete a purchase online.  As a result, Plaintiff is has been deterred, on a regular basis, from accessing the Website and Mobile App. altogether from placing any sort of order for delivery or visiting the physical location to pick up his order.  If Dominos.com and the Dominos Mobile App were equally accessible to all, Plaintiff could independently choose the toppings on his customized pizza, investigate other products available for purchase, and complete his transaction as sighted individuals do.Similarly, tThe access barriers Plaintiff encountered on the Website and Mobile App have further deterred Plaintiff from visiting Defendant's brick-and-mortar locations.

48.   If the Website and Mobile App were equally accessible to all, Plaintiff

26

Formatted: Font: 14 pt

Formatted: Justified

Formatted: Justified, Indent: Left:  0", First line:  0.5"

Formatted: Font: 14 pt, Not Italic

Formatted Table

could independently navigate the Website and Mobile App as sighted individuals do.

35.49. Having attempted to use the Website and Mobile App, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

36.   Through his many attempts to use Defendant's website and Mobile App, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually impaired people.

37.50.Because There are readily available, well established guidelines, available to Defendant on the Internet, for designing, constructing, and maintaining websites to be accessible to blind and visually-impaired persons. Other large business entities have used these guidelines, or have otherwise been able, to make their websites accessible, including but not limited to: adding Alt-text to graphics and ensuring that all functions can be performed using a keyboard. In addition, incorporating these basic changes and adding certain elements to Defendant's Website and Mobile App would not fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant. Because maintaining and providing a website where all functions can be performed using a keyboard would provide full, independent and equal access to all consumers to the Website and Mobile App, simple compliance with the WCAG 2.0 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to Dominos.com and the Domino's Mobile App, Plaintiff alleges that Domino's Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

      a.  Construction and maintenance of a website and a mobile applications that are inaccessible to visually-impaired individuals, including Plaintiff;

      b.  Failure to construct and maintain a website and a mobile applications that are sufficiently intuitive so as to be equally accessible to visually-

impaired individuals, including Plaintiff; and,

c.   Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

51.   Although Defendant may currently have centralized policies for maintenance and operation of the Website and Mobile App, Defendant lacks a plan and policy reasonably calculated to make its website fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers, including Plaintiff.

52.   Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use Defendant's Website and Mobile App in violation of their rights.

38.   Domino's therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

39.   The ADA expressly contemplates the type of injunctive relief that Plaintiff seeks in this action.  In relevant part, the ADA requires:

"In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities....Where appropriate, injunctive relief shall also include requiring the . . . . modification of a policy. . ."

42 .S.C. § 12188(a)(2).

43.   Because Defendant's website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its website and Mobile App to become and remain accessible, Plaintiff invokes the provisions of 42 U.S.C. § 12188(a)(2), and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.0 guidelines for its website

28

FIRST AMENDED COMPLAINT

and Mobile App.  Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

a. Train Defendant's employees and agents who develop the Dominos.com website and Mobile App on accessibility compliance under the WCAG 2.0 guidelines;

b. Regularly check the accessibility of Defendant's website and Mobile App under the WCAG 2.0 guidelines;

c. Regularly test user accessibility by blind or vision impaired persons to ensure that Defendant's website and Mobile App complies under the WCAG 2.0 guidelines; and

d. Develop an accessibility policy that is clearly disclosed on its websites and Mobile Apps, with contact information for users to report accessibility related problems.

44 If Dominos.com and the Mobile App were accessible, Plaintiff and similarly situated blind and visually impaired people could independently view menu items, customize menu items for purchase, shop for and otherwise research related products available via Defendant's website and Mobile App.

45 Although Defendant may currently have centralized policies regarding the maintenance and operation of its website and Mobile App, Defendant lacks a plan and policy reasonably calculated to make its websites fully and equally accessible to, and independently usable by, blind and other visually impaired consumers.

46 Without injunctive relief, Plaintiff and other visually impaired consumers will continue to be unable to independently use the Defendant's websites in violation of their rights.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181 *et seq*. [DOMINOS.COM]

### (By Plaintiff Against All Defendants)

4742   Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this ComplaintFirst Amended Complaint necessary or helpful to state this cause of action as though fully set forth herein.

4843   Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

42 U.S.C. § 12182(a).

4944   Domino's pizzerias are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).  Dominos.com is a service, privilege, or advantage of Domino's pizzerias.  Dominos.com is a service that is integrated with these locations.

5045   Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.  (42 U.S.C. § 12182(b)(1)(A)(i).)

5146   Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.  (42 U.S.C. § 12182(b)(1)(A)(ii).)

5247   Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> "[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such

30

goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

5348  The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder.  Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to Dominos.com, has not been provided services which are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.  Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

5449  Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

**SECOND CAUSE OF ACTION**

**VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990,**

**42 U.S.C. § 12181** *et seq.* [DOMINO'S MOBILE APP]

5550  Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this ComplaintFirst Amended Complaint necessary or helpful to state this cause of action as though fully set forth herein.

5651  Domino's Mobile App is a service, privilege, or advantage of Domino's pizzerias.  Domino's Mobile App is a service that is integrated with these locations.

5752  The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder.  Plaintiff, who is a member of a protected

31

1  class of persons under the ADA, has a physical disability that substantially limits the

2  major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A).

3  Plaintiff has been denied full and equal access to Domino's Mobile App, has not been

4  provided services which are provided to other patrons who are not disabled, and has

5  been provided services that are inferior to the services provided to non-disabled

6  persons.  Defendant has failed to take any prompt and equitable steps to remedy its

7  discriminatory conduct.  These violations are ongoing.

8  5853  Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights

9  set forth and incorporated therein, Plaintiff, requests relief as set forth below.

10  **THIRD CAUSE OF ACTION**

11  **VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL**

12  **CODE § 51** *et seq.* **[DOMINOS.COM]**

13  5954  Plaintiff re-alleges and incorporates by reference all paragraphs alleged

14  above and each and every other paragraph in this ComplaintFirst Amended Complaint

15  necessary or helpful to state this cause of action as though fully set forth herein.

16  6055  California Civil Code § 51 *et seq.* guarantees equal access for people with

17  disabilities to the accommodations, advantages, facilities, privileges, and services of

18  all business establishments of any kind whatsoever.  Defendant is systematically

19  violating the UCRA, Civil Code § 51 *et seq.*

20  6156  Defendant's pizzerias are "business establishments" within the meaning

21  of the Civil Code § 51 *et seq.*  Defendant generates millions of dollars in revenue from

22  the sale of goods through its Dominos.com website.  Defendant's website is a service

23  provided by Defendant that is inaccessible to patrons who are blind or visually-

24  impaired like Plaintiff.  This inaccessibility denies blind and visually-impaired patrons

25  full and equal access to the facilities, goods, and services that Defendant makes

26  available to the non-disabled public.  Defendant is violating the UCRA, Civil Code §

27  51 et seq., by denying visually-impaired customers the goods and services provided

28  on its website.  These violations are ongoing.

Formatted: Justified, Indent: Left: 0", First line: 0.5"

Formatted Table

6257   Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq.*, because Defendant has constructed a website that is inaccessible to Plaintiff, Defendant maintains the website in an inaccessible form, and Defendant has failed to take actions to correct these barriers.

6358   Defendant is also violating the UCRA, Civil Code § 51 *et seq*. because the conduct alleged herein violates various provisions of the ADA, 42 U.S.C. § 12101 *et seq.*, as set forth above.  Section 51(f) of the Civil Code provides that a violation of the right of any individual under the ADA also constitutes a violation of the UCRA.

6459   The actions of Defendants violate UCRA, Civil Code § 51 *et seq.*, and Plaintiff is therefore entitled to injunctive relief remedying the discrimination.

6560   Plaintiff is entitled to statutory minimum damages pursuant to Civil Code § 52 for each and every offense.

6661   Plaintiff is also entitled to reasonable attorneys' fees and costs.

### FOURTH CAUSE OF ACTION

### VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq.* [DOMINO'S MOBILE APP]

42   Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this ComplaintFirst Amended Complaint necessary or helpful to state this cause of action as though fully set forth herein.

43   Defendant generates millions of dollars in revenue from the sale of goods through its Mobile App.  Defendant's Mobile App is a service provided by Defendant that is inaccessible to patrons who are blind or visually-impaired like Plaintiff.  This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.  Defendant is violating the UCRA, Civil Code § 51 et seq., by denying visually-impaired customers the goods and services provided on its Mobile App.  These violations are ongoing.

44 Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq.*, because Defendant has constructed a Mobile App that is inaccessible to Plaintiff, Defendant maintains the Mobile App an inaccessible form, and Defendant has failed to take actions to correct these barriers.

45 Defendant is also violating the UCRA, Civil Code § 51 *et seq.* because the conduct alleged herein violates various provisions of the ADA, 42 U.S.C. § 12101 *et seq.*, as set forth above. Section 51(f) of the Civil Code provides that a violation of the right of any individual under the ADA also constitutes a violation of the UCRA.

46 The actions of Defendants violate UCRA, Civil Code § 51 *et seq.*, and Plaintiff is therefore entitled to injunctive relief remedying the discrimination.

47 Plaintiff is entitled to statutory minimum damages pursuant to Civil Code § 52 for each and every offense.

48 Plaintiff is also entitled to reasonable attorneys' fees and costs.

## **PRAYER**

**WHEREFORE, Plaintiff prays for judgment against Defendant, as follows:**

1. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA 42 U.S.C. § 12181 *et seq.*, and the relevant implementing regulations of the ADA, for Defendant's failure to take action that was reasonably calculated to ensure that its websites and mobile applications are fully accessible to, and independently usable by, blind and visually-impaired individuals;

2. A preliminary and permanent injunction enjoining Defendant from violating the ADA, 42 U.S.C. § 12181 *et seq.*, and/or the UCRA, Civil Code § 51 *et seq.* with respect to its website Dominos.com;

3. A preliminary and permanent injunction enjoining Defendant from violating the ADA, 42 U.S.C. § 12181 *et seq.*, and/or the UCRA, Civil Code § 51 *et seq.* with respect to its Mobile Application;

FIRST AMENDED COMPLAINT

4.      A preliminary and permanent injunction requiring Defendant to take the steps necessary to make Dominos.com readily accessible to and usable by blind and visually-impaired individuals;

5.      A preliminary and permanent injunction requiring Defendant to take the steps necessary to make Domino's Mobile Application readily accessible to and usable by blind and visually-impaired individuals;

6.      An award of statutory minimum damages of $4,000 per violation pursuant to § 52(a) of the California Civil Code;

7.      For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1), and California Civil Code § 52(a);

8.      For pre-judgment interest to the extent permitted by law;

9.      For costs of suit; and

10.     For such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this ~~Complaint~~First Amended Complaint.


Dated: ~~September 1~~May 15~~3~~, 201~~6~~9          **MANNING LAW, APC**


By: /s/ Joseph R. Manning Jr., Esq.
Joseph R. Manning Jr., Esq.
Michael J. Manning, Esq.
Tristan P. Jankowski, Esq.
Osman M. Taher, Esq.

~~Caitlin J. Scott, Esq.~~
Attorneys for Plaintiff


35
FIRST AMENDED COMPLAINT