SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
GREGORY F. HURLEY, Cal. Bar No. 126791
ghurley@sheppardmullin.com
MICHAEL J. CHILLEEN, Cal. Bar No. 210704
mchilleen@sheppardmullin.com
BRADLEY J. LEIMKUHLER, Cal. Bar No. 261024
bleimkuhler@sheppardmullin.com
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
Telephone:   714.513.5100
Facsimile:   714.513.5130

Attorneys for Defendant,
DOMINO'S PIZZA LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GUILLERMO ROBLES,<br><br>            Plaintiff,<br><br>      v.<br><br>DOMINO'S PIZZA LLC,<br><br>            Defendant. | Case No. 2:16-cv-06599<br>Hon. S. James Otero<br><br>**DEFENDANT DOMINO'S PIZZA LLC'S OPPOSITION TO PLAINTIFF GUILLERMO ROBLES' MOTION FOR LEAVE TO AMEND PLAINTIFF'S COMPLAINT**<br><br>Date:    June 17, 2019<br>Time:    10:00 a.m.<br>Ctrm.:   10C<br><br>Action Filed:   September 1, 2016<br>Trial Date:     March 24, 2020 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................... 1

    A.    ORIGINAL COMPLAINT .................................................................. 1

    B.    PROPOSED FIRST AMENDED COMPLAINT .................................... 2

    C.    PLAINTIFF'S FAILURE TO MEET AND CONFER. ......................... 3

III.  ARGUMENT ......................................................................................... 4

    A.    THE COURT SHOULD DENY PLAINTIFF'S MOTION
        BECAUSE HE VIOLATED LOCAL RULE 7-3 ............................... 4

    B.    THE COURT SHOULD DENY PLAINTIFF'S MOTION
        BECAUSE HE HAS FAILED TO SATISFY THE
        REQUIREMENTS FOR LEAVE TO AMEND ................................... 7

        1.    The Strict Rule 16(b) "Good Cause" Standard, Rather
            Than The More Lenient Rule 15(A) Standard, Should
            Govern This Motion. ................................................... 7

    C.    Plaintiff Has Not, and Cannot, Meet the "Good Cause" Standard. ........ 9

    D.    Plaintiff Has Not, and Cannot, Meet the Requirements of 15(a). ........ 12

IV.   CONCLUSION ..................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alcatel-Lucent USA, Inc. v. Dugdale Communications, Inc.*
   2009 WL 3346784 (C.D. Cal. 2009) ........................................................................ 5

*American Safety Indemnity Co. v. Penny Vision LLC*
   2015 WL 13048441 (C.D. Cal. 2015) ...................................................................... 5

*Bohn v. Pharmavite, LLC*
   2013 WL 4517173 (C.D. Cal. 2013) ........................................................................ 5

*Chapman v. Pier 1 Imports (U.S.), Inc.*
   631 F.3d 939 (9th Cir. 2011) ................................................................................. 13

*In re Circuit Breaker Litig.*
   175 F.R.D. 547 (C.D. Cal. 1997) ...................................................................... 7, 12

*Foman v. Davis*
   371 U.S. 178 (1962) .......................................................................................... 7, 12

*Garica v. Aurora Commercial Corp.*
   2013 WL 12146729 (C.D. Cal. 2013) ...................................................................... 6

*Gomez v. Bang & Olufsen America, Inc.*
   2017 WL 1957182 (S.D. Fla. Feb. 2, 2017) ........................................................... 15

*Jackson v. Bank of Hawaii*
   902 F.2d 1385 (9th Cir. 1990) ........................................................................... 7, 13

*Johnson v. Buckley*
   356 F.3d 1067 (9th Cir. 2003) ............................................................................... 12

*Johnson v. Mammoth Recreations, Inc.*
   975 F.2d. 604 (9th Cir. 1992) ........................................................................ 7, 8, 9

*Kidwell v. Florida Comm'n on Human Relations*
   2017 WL 176897 (M.D. Fla. Jan. 17, 2017) .......................................................... 15

*Maghen v. Macy's Corporate Services, Inc.*
   Case No. CV14-4874 MMM ................................................................................... 5

1
2
*O'Campo v. Chico Crossroads*
    2011 WL 5241351 (E.D. Cal. 2011) ............................................... 9, 10

3
4
*O'Connell v Hyatt Hotels of Puerto Rico*
    357 F.3d 152 (1st Cir. 2004) ............................................................. 8

5
6
*Oliver v. Ralph*s
    654 F.3d 903 (9th Cir. 2011) ..................................................... 8, 9, 10

7
*Paulick v. Starwood Hotels & Resorts Worldwide, Inc.*
    2012 WL 2990760 (N.D. Cal. 2012) .................................................. 10

8
9
10
*Peoples v. Discover Fin'l Services, Inc.*
    2009 WL 3030217 (E.D. Pa. 2009), aff'd 387 Fed. Appx. 179 (3d
    Cir. 2010) ...................................................................................... 16

11
12
*Price v. AFT Mgmt., Corp.*
    2018 U.S. Dist. LEXIS 25896 (S.D. Fla. Feb. 14, 2018) ...................... 15

13
14
*Singer v. Live Nation*
    2012 WL 123146 (C.D. Cal. 2012) ..................................................... 6

15
*U.S.A. v. Kan-Di-Ki LLC*
    2013 WL 12147597 (C.D. Cal. 2013) .................................................. 5

16
17
*Young v. Facebook, Inc.*
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ............................................... 2

18
19
*Zand v. Mandarich Law Group, LLP*
    Case No. SACV-13-684 JVS ............................................................. 6

20
21
*Zivkovic v. Southern California Edison Company*
    302 F.3d 1080 (9th Cir. 2002) .................................................. 8, 9, 12

22
Statutes

23
Americans with Disabilities Act ("ADA") ........................................... *passim*

24
California's Unruh Act ("Unruh") ......................................................... 1

25
26
Other Authorities

27
Fed. R. Civ. P. 15(a) ......................................................... 1, 7, 8, 9, 12, 16

28
Fed. R. Civ. P. 16(b) ......................................................... 1, 7, 8, 9, 12, 16

http://www.dominos.com ............................................................................................... 2

L.R. 7.3 ................................................................................................................*passim*

Defendant Domino's Pizza LLC ("Defendant") hereby opposes Plaintiff Guillermo Robles' ("Plaintiff") Motion for Leave To Amend Plaintiff's Complaint.

## I.   INTRODUCTION

Plaintiff's Motion should be denied.  First, Plaintiff's motion for leave to amend should be denied because he failed to meet and confer as required by Local Rule 7-3.  Second, Plaintiff's motion is dilatory and he cannot demonstrate the "good cause" requirement of Fed. R. Civ. P. 16(b) to amend his complaint.  Third, Plaintiff's motion is futile and brought with undue delay and, as a result, fails to satisfy the requirements of Fed. R. Civ. P. 15(a).  Therefore, Plaintiff's motion should be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   ORIGINAL COMPLAINT

Plaintiff filed his original complaint in this case on September 1, 2016.  (Dkt. 1).[1]  Plaintiff alleged that Defendant's website, http://www.dominos.com  (the "Website"), and its Mobile Application ("Mobile App") contained "accessibility barriers" in alleged violation of the Americans with Disabilities Act ("ADA") and California's Unruh Act.  On November 28, 2016, the Court set the deadline for Plaintiff to amend his complaint as December 26, 2016.  (Dkt. 26).  Plaintiff did not seek to amend his complaint.

On February 22, 2017, Defendant filed a motion for summary judgment or, in the alternative to dismiss, on the grounds that the ADA does not apply to the Domino's Website or Mobile App, the lack of official accessibility standards violated Defendant's right to due process, and the Court should dismiss this action pursuant to the primary jurisdiction doctrine.  (Dkt. 32).  On March 20, 2017, the Court granted Defendant's motion.  (Dkt. 42).

---

[1] Plaintiff misleadingly and incorrectly states that he filed his complaint on September 24, 2018.  (Dkt. 60-1 at 2).

Plaintiff appealed.  On January 15, 2019, the Ninth Circuit issued an opinion reversing and remanding this Court's order granting Defendant's motion.  (Dkt. 49).  On March 6, 2019, the Supreme Court of the United States granted Defendant an extension of time by which to file a petition for a writ of certiorari.  (App. Dkt. 68).  Defendant has until June 14, 2019 to file a petition for review and intends to do so.

On April 15, 2019, this Court held a status conference.  At the status conference, the Court reset the deadline for Plaintiff to file an amended pleading, even though the original deadline had passed, to May 15, 2019.  (Dkt. 56).  This prejudices Defendant given the extensive amount of work, including Ninth Circuit review and upcoming petition to the Supreme Court, that was undertaken upon the belief that the deadline for Plaintiff to amend his complaint had passed.

### B.    PROPOSED FIRST AMENDED COMPLAINT

Plaintiff's proposed first amended complaint significantly expands the scope of Plaintiff's lawsuit.  First, Plaintiff redefines the term "Website" from encompassing not just http://www.dominos.com, but expands to include "any other website operated or controlled by Defendant as well as any third party content which is located on or used in connection with Dominos.com and any other website operated by or controlled by Defendant, for the purposes described herein").  Plaintiff does not specify what other websites these are or what other third parties Plaintiff wants to join to the lawsuit because he contends their content is also inaccessible.  For instance, a brief glance at http://www.dominos.com reveals content from advertisers such as Coca Cola and the National Dairy Counsel, as well as links to Facebook,[2] Instagram, Twitter, and Tumblr.

In addition, Plaintiff claims to have visited http://www.dominos.com again (presumably at the direction of his counsel) and on unspecified occasions, claims to

---

[2] District Courts in California have held that Facebook is not subject to the requirements of the ADA.  *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110 (N.D. Cal. 2011).

have encountered additional "barriers" to access.  (Dkt 60-4).  Plaintiff's claim used to be that he was unable to order a pizza and now his claim has evolved to add a host of miscellaneous alleged concerns.  Defendant denies that any of these specific changes constitutes an unlawful "barrier" or that Plaintiff was denied access to Defendant's goods and/or services in any way.

## C.   PLAINTIFF'S FAILURE TO MEET AND CONFER.

On May 14, 2019 – the day before Plaintiff's new deadline to amend his complaint – Plaintiff's counsel sent an email at 2:30 p.m. asking Defendant's counsel if he would stipulate to an amended complaint.  (Declaration of Bradley J. Leimkuhler at ¶ 2, Exh. A).  Plaintiff's email did not indicate he wished to meet and confer on any potential motion.  (*Id.*).

On May 14, 2019, Defendant's counsel was in a mandatory settlement conference all-day in Ventura County Superior Court and did not have a chance to review Plaintiff's proposed first amended complaint.  (*Id.* at ¶ 3).  On May 15, 2019, Plaintiff's counsel telephoned Defendant's counsel again asking if they would stipulate.  (*Id.* at ¶ 4).  Defendant's counsel indicated that he had not yet had a chance to review the proposed amended complaint or discuss with his client.  (*Id.*)  Defendant's counsel also stated that it was unlikely he would have a chance to do so due to his imminent departure for a required attendance at a court ordered site inspection.  (*Id.*).  This site inspection happened to be in another lawsuit filed by Plaintiff's counsel.  (*Id.* at ¶ 5).  The inspection took place in Rancho Bernardo, California.  (*Id.*).  Therefore, Plaintiff's counsel knew that Defendant's counsel would be travelling to the inspection from his office in Costa Mesa, California and unable to ever have a chance to meaningfully review, respond, or confer with counsel for Plaintiff before the May 15, 2019 deadline.

At the site inspection, Plaintiff's counsel again asked Defendant's counsel if they would stipulate to filing this proposed amended complaint.  (*Id.* at ¶ 6).  Defendant's counsel indicated that he had not yet had a chance to review the

proposed first amended complaint or discuss with his client and, therefore, would be unable to stipulate by May 15, 2019. (*Id.*).  Plaintiff then rushed to file this motion by the May 15, 2019 deadline.[3]

## III.   <u>ARGUMENT</u>

### A.   <u>THE COURT SHOULD DENY PLAINTIFF'S MOTION BECAUSE HE VIOLATED LOCAL RULE 7-3.</u>

Local Rule 7-3 requires parties to meet and confer in good faith regarding the substance of any contemplated motion at least seven days before the filing of the motion.  In addition, the moving party must certify compliance with L.R. 7-3 in its notice of motion.  L.R. 7-3 reads in pertinent part as follows:

> [C]ounsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution.  The conference shall take place at least seven (7) days prior to the filing of the motion.  If the parties are unable to reach a resolution which eliminates the necessity for a hearing, counsel for the moving party shall include in the notice of motion a statement to the following effect: 'This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date).'

L.R. 7-3 (emphasis in original); (*see also* Dkt. 10 (2016-09-07 Standing Order) ("The Court construes this requirement strictly. Half−hearted attempts at compliance with this rule will not satisfy counsel's obligation. . .Filings not in compliance with L.R. 7-3 will be denied.")).

---

[3] Defendant notes that this Court deems any filing after 4:00 p.m. to be filed on the next Court day so Plaintiff had until 4:00 p.m. on May 15, 2019 to file his motion. (Dkt. 10).

"Local Rule 7-3 is not a mere technicality…The Rule 7-3 process conserves limited judicial resources and allows the Court to focus its attention on material disputed issues.  It increases the likelihood that the parties will thoroughly address each other's arguments and present the Court with the relevant facts and law…although some counsel seem to view Rule 7-3 as a trivial procedural hurdle – a speed bump delaying their motions, which they can disregard without any real consequence…the Court will not excuse non-compliance unless the moving party shows that it made a good faith effort to engage in a substantive and timely conference with opposing counsel…." *Mortgage Electronic Registration Systems, Inc.*, 2014 WL 12628458, *1-2 (C.D. Cal. 2014).

Courts routinely deny motions when the moving party failed to meet and confer pursuant to Local Rule 7-3.  *See, e.g., Alcatel-Lucent USA, Inc. v. Dugdale Communications, Inc.*, 2009 WL 3346784, *4 (C.D. Cal. 2009) ("The meet and confer requirements of Local Rule 7-3 are in place for a reason, and counsel is warned that nothing short of strict compliance with the local rules will be expected in this Court.  Thus, the motion is…denied for failure to comply with Local Rule 7-3); *Maghen v. Macy's Corporate Services, Inc.*, Case No. CV14-4874 MMM (PLAx), *1 (C.D. Cal. 2014) ("The court strikes the motion to dismiss and directs the defendant to comply with Local Rule 7-3 before the filing of any motion"); *Bohn v. Pharmavite, LLC*, 2013 WL 4517173 (C.D. Cal. 2013) (denying motion for class certification for failure to comply with L.R. 7-3); *American Safety Indemnity Co. v. Penny Vision LLC*, 2015 WL 13048441 (C.D. Cal. 2015) (denying motion to dismiss for failure to comply with L.R. 7-3); *BWP Media USA, Inc.*, 2016 WL 7626445 (C.D. Cal. 2016) (denying motion for partial summary judgment for failure to comply with L.R. 7-3).

Similarly, courts reject parties' attempts to treat the substantive meet-and-confer requirement of L.R. 7-3 as a mere notification process. *See, e.g., U.S.A. v. Kan-Di-Ki LLC*, 2013 WL 12147597 (C.D. Cal. 2013) ("the moving party's mere

1  notification that it intends to file a motion is insufficient [to satisfy L.R. 7-3]…the

2  Court denies Defendant's motion for summary judgment"); *Singer v. Live Nation*,

3  2012 WL 123146, *2 (C.D. Cal. 2012) ("The Court cannot conclude that

4  correspondence sent three days before the filing of the motion constitutes substantial

5  compliance with Local Rule 7-3…The fact that both counsel have dealt with each

6  other in prior ADA litigation, which led Defendant to assume what Plaintiff's

7  response to the contemplated motion would be, does not excuse Defendant from

8  complying with Local Rule 7-3.  Accordingly, the motion [for summary judgment]

9  is denied for failure to comply with Local Rule 7.-3").

10       Likewise, courts reject last-minute attempts to confer before a filing deadline

11  that does not satisfy the seven-day waiting period for filing motions after the meet-

12  and-confer is concluded.  *See, e.g., Zand v. Mandarich Law Group, LLP*, Case No.

13  SACV-13-684 JVS (JCGx), *1 (C.D. Cal. July 16, 2013) ("The parties met and

14  conferred on June 18, 2013, only one day before Defendant filed the motion.

15  Accordingly, because the parties failed to properly meet and confer at least seven

16  days before Defendant filed the motion, the motion is ordered off the July 22, 2013

17  calendar"); *Garica v. Aurora Commercial Corp.*, 2013 WL 12146729 (C.D. Cal.

18  2013) (counsel's "attempt to confer with counsel by making a phone call, and then

19  sending an email…is not sufficient to discharge its duty to meet and confer.  And in

20  any case, Defendants' attempt to meet and confer was woefully late: they made their

21  attempt…the very day they filed their motion").

22       In this case, Plaintiff utterly failed to satisfy L.R. 7.3.  Indeed, Plaintiff

23  concedes as much as his notice of motion certification concedes that the "meet and

24  confer" allegedly occurred on May 14 and 15, 2019.  There was no meaningful

25  conversation whatsoever regarding Plaintiff's proposed amendments.  Instead,

26  Plaintiff merely sent an email the day before the day his motion was due notifying

27  Defendant that he intended to seek leave to file an amended complaint and

28  demanding a response by the next day.  To make matters worse, Plaintiff's counsel

*knew* that Defendant's counsel would not be in a position to meaningfully review or discuss the proposed first amended complaint due to other conflicts.  Moreover, Plaintiff failed to wait the required seven days after the conclusion of the parties' "meet-and-confer efforts" to file his motion.  Instead, Plaintiff flouted L.R. 7-3 and rushed to file his motion before the May 15, 2019 deadline to amend pleadings.

Thus, the Court should deny Plaintiff's motion outright for failure to comply with L.R. 7-3.

## B.   THE COURT SHOULD DENY PLAINTIFF'S MOTION BECAUSE HE HAS FAILED TO SATISFY THE REQUIREMENTS FOR LEAVE TO AMEND.

### 1.   The Strict Rule 16(b) "Good Cause" Standard, Rather Than The More Lenient Rule 15(A) Standard, Should Govern This Motion.

Under Federal Rule of Civil Procedure 15(a), once a defendant has answered, plaintiff may amend the complaint "only by leave of the court or by written consent of the adverse party."  Fed R. Civ. P. 15(a).  Courts have recognized that a party's right to amend its pleading is "by no means automatic."  *In re Circuit Breaker Litig.*, 175 F.R.D. 547, 550 (C.D. Cal. 1997) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).  Rather, denying a request for leave to amend "lies within the sound discretion of the trial court."  *Id*. at 550 (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1390 (9th Cir. 1985)).

Leave to amend is inappropriate where there is alone, or in combination, "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); Jackson v. Bank of Haw., 902 F.2d 1385, 1387 (9th Cir. 1990).

Once the deadline to amend pleadings has passed, then a plaintiff must also satisfy the "good cause" requirement of Rule 16(b) before being permitted to amend his complaint.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d. 604, 608 (9th Cir.

1992).  "In an era of burgeoning case loads and thronged dockets, effective case
management has become an essential tool for handling civil litigation.  Rule 16
provides the district courts with many of the devices necessary to manage its docket.
For Rule 16(b) to operate effectively, litigants cannot be permitted to treat a
scheduling order as a frivolous piece of paper idly entered which can be cavalierly
disregarded without peril.  Unlike Rule 15(a)'s 'freely given' standard, which
focuses mostly on the bad faith of the moving party and the prejudice to the
opposing party, Rule 16(b)'s 'good cause' standard emphasizes the diligence of the
party seeking the amendment.  Prejudice to the opposing party remains relevant but
is not the determinative criterion."  *O'Connell v Hyatt Hotels of Puerto Rico*, 357
F.3d 152, 155 (1st Cir. 2004).

Rather, good cause means that a party cannot meet the scheduling deadline
despite exercising due diligence.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d.
604, 608 (9th Cir. 1992).  A party's carelessness or inadvertent errors are
incompatible with an affirmative finding of diligence and do not amount to good
cause.  *Id*.  In other words, if the moving party "was not diligent, the inquiry should
end and the motion…should not be granted."  *Zivkovic v. Southern California
Edison Company*, 302 F.3d 1080, 1088 (9th Cir. 2002).  "Indifference by the
moving party seals off the avenue of relieve irrespective of prejudice because such
conduct is incompatible with the showing of diligence necessary to establish good
cause."  *O'Connell v Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004).
"Attorneys represent clients, and, as a general rule, an attorney's blunder binds her
client."  *Id*.

The following case illustrates the "good cause" standard in ADA lawsuits.  In
*Oliver v. Ralph*s, 654 F.3d 903 (9th Cir. 2011), plaintiff filed a disability access
lawsuit on December 7, 2007, alleging that eighteen architectural barriers existed at
a Food 4 Less store in violation of the ADA.  *Id*. at 905.  On May 14, 2008, at the
pretrial scheduling conference, plaintiff's counsel indicated that he intended to

amend the complaint to allege additional barriers.  The district court set June 13, 2008, as the deadline to amend pleadings.  *Id.* at 906.  On June 30, 2008, a little over two weeks after the deadline, plaintiff filed a motion to modify the scheduling order and amend his complaint.  *Id*.  The district court denied the motion because plaintiff had not been diligent and waited until after the deadline to seek to modify the scheduling order.  *Id*.

In this case, Plaintiff should be required to meet both the requirements of Rule 15 *and* Rule 16 because it was only by violating L.R. 7-3 that Plaintiff was able to file his motion before the May 15, 2019 amendment deadline.  Indeed, even assuming *arguendo* that Plaintiff had satisfied his meet and confer requirements on May 15, 2019, then Plaintiff was required to wait until May 22, 2019 (or seven days after the amendment deadline) to file his motion.

### C.   Plaintiff Has Not, and Cannot, Meet the "Good Cause" Standard.

Meeting the "good cause" standard "primarily considers the diligence of the party seeking the amendment.  *Johnson*, 975 F.2d at 609.  In other words, if the moving party "was not diligent, the inquiry should end and the motion…should not be granted."  *Zivkovic v. Southern California Edison Company*, 302 F.3d 1080, 1088 (9th Cir. 2002).  The following cases are illustrative.

In *O'Campo v. Chico Crossroads*, 2011 WL 5241351 (E.D. Cal. 2011), the plaintiff brought a motion to compel a site inspection to identify new barriers at the end of the discovery period.  The district court found no good cause to amend because the plaintiff could have sought leave to amend earlier in the discovery process:

> Thus, if plaintiff was to conduct an inspection of the entire
> facility and determine that other barriers were in existence at
> the time he encountered the other barriers, he would be faced
> with having to file an amended complaint in order to properly
> present those additional barriers.  Discovering such additional

1
2
3
4
5
6

> barriers at the end of the discovery period then attempting to
> amend a complaint…would place the defendant in the position
> of having to defend against new claims without proper notice or
> time to investigate.  Allowing the occurrence of such event
> would require modification of the court's scheduling order
> where not good cause has been shown.

7   *Id.* at *3.

8   In *Paulick v. Starwood Hotels & Resorts Worldwide, Inc.*, 2012 WL 2990760
9   (N.D. Cal. 2012), plaintiff filed a disability access lawsuit on May 4, 2010, alleging
10  that architectural barriers existed at defendant's resort.  The district court set
11  December 19, 2011, as the last day to amend pleadings.  *Id.* at *2.  On March 23,
12  2012, plaintiff's expert inspected the resort and identified a number of new barriers.
13  *Id.*  Plaintiff later attempted to assert these new claims, even though he never
14  formally moved to amend his complaint, claiming that his expert report provided
15  defendants with fair notice.  The court rejected plaintiff's argument out-of-hand,
16  noting that *Oliver v. Ralphs*—which held that barriers must be identified in the
17  operative complaint to provide fair notice—was decided in August 2011 and thus
18  plaintiff had no excuse for not seeking leave to amend earlier:

19
20
21
22
23
24
25

> The law was clear by August 2011 that specific barriers had to
> be identified in the complaint (and not just an expert report),
> Defendants were entitled to rely on the operative complaint in
> defending against Plaintiff's ADA claim…were the Court to
> reach a contrary result it would, in essence, be forcing
> Defendants to defend against an ever-changing claim, with no
> apparent cut-off point.

26  *Id.* at *13.

27  Here, Plaintiff has had ample time to investigate his claims and pursue
28  amendment if he so chose.  Plaintiff originally filed his complaint over 2 years ago

1 | (on September 1, 2016).  (*See* Dkt. 1).  During the pendency of this litigation,
2 | Defendant's Website and/or Mobile App has always been available to him, his
3 | attorneys, and his alleged experts for inspection.  All of the proposed amendments
4 | that Plaintiff wishes to make were changes that he could have made at any time
5 | before the deadline passed.

6 |     *Moreover*, Plaintiff already let one deadline set by this Court to amend his
7 | pleadings pass without attempting to amend his complaint.  (*See* Dkt. 26).  The
8 | Court then reset the deadline for him to amend his pleading following Plaintiff's
9 | appeal to May 15, 2019.  (*See* Dkt. 56).  Given that the deadline had already passed
10 | for Plaintiff to amend his complaint before Plaintiff filed his appeal, this effectively
11 | constituted the granting of a motion to amend the scheduling order.

12 |     Yet despite having been afforded this very generous amount of time to seek
13 | leave to amend, Plaintiff failed to notify Defendant of his intention to seek leave to
14 | amend his Complaint *until the last day before his motion was due* – and leaving him
15 | with no choice but to violate Local Rule 7-3 in order to file his motion before the
16 | deadline set by the Court.

17 |     This does not demonstrate good cause.  As further evidence of his lack of
18 | diligence, Plaintiff alleges that his "expert" inspected Defendant's Website and
19 | Mobile App on May 3, 2019 to assess the website.  (Dkt. 60-1 at 2).  First, Plaintiff
20 | does not explain why he could not have timely notified Defendant following that
21 | inspection because, presumably, his expert would have been aware of any alleged
22 | barriers by at least that date.  Second, Plaintiff's expert submitted a declaration in
23 | support of his opposition to Defendant's motion for summary judgment back in
24 | March 2017 (*see* Dkt. 34).  Therefore, Plaintiff was aware of certain of these alleged
25 | issues for over 2 years before he filed this motion.  Plaintiff does not explain why he
26 | did not attempt to add this detail to his proposed First Amended Complaint in a
27 | timely fashion.

28 |

1    Lastly, Plaintiff alleges in his motion that he returned to the Website and

2 Mobile App on May 10, 2019 to "further assess" the Website since 2015.  Plaintiff's

3 FAC claims that he is an ADA "tester."  (Dkt. 60-4 at ¶ 11).  His status as an ADA

4 tester and professional litigant makes it all the more imperative that he follow the

5 Court's rules in bringing his many lawsuits.  Therefore, Plaintiff has been dilatory

6 since he knew, at least as of April 15, that the Court had afforded him with a month

7 to amend his complaint.  Plaintiff provides no explanation as to why he failed to

8 visit Defendant's Website – surely not an onerous task – between April 15 and May

9 10, 2019.

10    As a result, Plaintiff cannot hope to meet the "good cause" standard under

11 Rule 16(b).  Given Plaintiff's lack of diligence, his motion must be denied.  *Zivkovic*

12 *v. Southern California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) (if the

13 moving party "was not diligent, the inquiry should end and the motion to [amend]

14 should not be granted.").

15    **D.    Plaintiff Has Not, and Cannot, Meet the Requirements of 15(a).**

16    Under F.R.C.P. 15(a), once a defendant has answered, plaintiff may amend

17 the complaint "only by leave of the court or by written consent of the adverse

18 party."  F.R.C.P. 15(a).  Courts have recognized that a party's right to amend its

19 pleading is "by no means automatic."  *In re Circuit Breaker Litg.*, 175 F.R.D. 547,

20 550 (C.D. Cal. 1997) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).  Rather,

21 denying a request for leave to amend "lies within the sound discretion of the trial

22 court."  *Id.* at 175 F.R.D. at 550 (citing *Int'l Ass'n of Machinists & Aerospace*

23 *Workers v. Republic Airlines*, 761 F.2d 1386, 1390 (9th Cir. 1985)).

24    Leave to amend is inappropriate where there is alone, or in combination,

25 "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure

26 to cure deficiencies by amendments previously allowed, undue prejudice to the

27 opposing party by virtue of the allowance of the amendment, futility of the

28 amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Johnson v. Buckley*,

356 F.3d 1067 (9th Cir. 2003); *Jackson v. Bank of Hawaii*, 902 F.2d 1385 (9th Cir. 1990).

In *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 944, 954 (9th Cir. 2011), the Ninth Circuit clarified that an ADA plaintiff's standing to sue is limited to "barriers related to his disability" and that a complaint must allege "how his disability was affected by them" so as to deny him "full and equal" access.  Here, the proposed pleading does not explain how any of these additional barriers are connected to Plaintiff's disability or interfered with his "equal use and enjoyment" of Defendant's brick and mortar restaurant locations.  In *Chapman*, the Circuit rejected a similar proposed amendment:

> This list of alleged CBC and ADAAG violations cannot substitute for the factual allegations required in the complaint to satisfy Article III's requirement of an injury-in-fact. Chapman does not even attempt to relate the alleged violations to his disability.

*Chapman*, 631 F.3d at 954-55.

Here, Plaintiff's undue delay prejudices Defendant because it adds a number of allegations that would force Defendant to address a number of unactionable allegations.

The ADA does not cover "websites" as places of public accommodation.  Indeed, numerous courts that have addressed and considered this issue in Circuits governed by the "nexus" test (including this one) have explained that, even if the ADA covers a website in some form, the only thing the ADA requires is that a "website" cannot impede a disabled persons access to a physical brick and mortar store.  The following cases are illustrative:

In *Price v. Everglades College, Inc.*, the District Court explained:

> In clarifying the nexus requirement, district courts in the Eleventh Circuit have distinguished between an inability to use

1       a website to gain information about a physical location and an

2       inability to use a website that impedes access to enjoy a

3       physical location, holding that the former "is insufficient to

4       state a claim." **One rationale underlying this holding is that a**

5       **contrary finding would require all websites with *any* nexus**

6       **to a physical public accommodation to be formatted in such**

7       **a way that they are accessible to screen reader software.**

8       **District courts in the Eleventh Circuit have been unwilling**

9       **to take a leap with such far-reaching implications, and this**

10      **Court is no exception.** Here, the Defendant correctly argues

11      that "an inability to gain information about the physical location

12      does not adequately allege that his inability to access the

13      Website impedes his access to enjoy the physical university.

14  2018 WL 3428156, *2 (M.D. Fla. July 16, 2018) (internal citations omitted and

15  emphasis added).

16      In *Gomez v. La Carretta Enterprises*, the Southern District of Florida further

17  explained:

18      **Courts in this district require the website to provide more**

19      **than information about a defendant's business in order to**

20      **state a claim under the ADA for website inaccessibility.** []

21      Businesses are not required to have websites. If a business has a

22      website, it cannot impede a disabled person's full use and

23      enjoyment of the physical space the business occupies. Nearly

24      all websites associated with a physical business location

25      provide information about location, hours, and goods and

26      services provided by the business. Some of these websites do

27      not interface with screen readers. **If the Court allows ADA**

28      **accessibility claims to proceed for these websites under a**

1    **theory that a visually impaired plaintiff was denied access**

2    **to *information* about the physical business location, then this**

3    **Court would be saying, in effect, that *all* websites must**

4    **interface with screen readers. The Court is not willing to**

5    **take that leap because it would eviscerate the framework**

6    **established by district courts within the Eleventh Circuit**

7    **construing *Rendon.***

8    2017 U.S. Dist. LEXIS 202662, at *9 (S.D. Fla. Dec. 6, 2017) (internal citations

9    omitted and emphasis added).

10   Numerous other District Courts are in accord.  *See, e.g., Price v. AFT Mgmt.,*

11   *Corp.*, 2018 U.S. Dist. LEXIS 25896, at *9 (S.D. Fla. Feb. 14, 2018) ("For those

12   same reasons, the Court finds Plaintiff's allegations in the Amended Complaint that

13   he was unable to use the website to educate himself about Ocean Manor hotel

14   amenities and goods and services available and/or to learn about the room options,

15   dining options, and spa services at the Resort insufficient to state a claim. [] Further,

16   while Plaintiff alleges that he attempted to educate himself about the amenities

17   available at the Resort with the intent of then patronizing the Resort, he does not

18   specifically allege that he attempted to make any room or dining reservations on

19   oceanmanor.com and was precluded from doing so because of the website's

20   incompatibility with his screen reader."); *Gomez v. Bang & Olufsen America, Inc.*,

21   2017 WL 1957182, *3 (S.D. Fla. Feb. 2, 2017) ("it appears that the majority of

22   courts agree that websites are not covered by the ADA unless some function on the

23   website hinders the full use and enjoyment of a physical space."); *Kidwell v. Florida*

24   *Comm'n on Human Relations*, 2017 WL 176897, *5 (M.D. Fla. Jan. 17, 2017)

25   ("Plaintiff is unable to demonstrate that either Busch Gardens' or SeaWorld's online

26   website prevents his access to 'a specific, physical, concrete space such as a

27   particular airline ticket counter or travel agency.'  As a result, Plaintiff may not

28   plead a claim based on accessibility of an online website under Title III of the

ADA."); *Peoples v. Discover Fin'l Services, Inc.*, 2009 WL 3030217, *2 (E.D. Pa. 2009) (services available on internet website must have some connection to a physical place of accommodation to fall within ADA's 'place of public accommodation' requirement), aff'd 387 Fed. Appx. 179 (3d Cir. 2010).

Here, Plaintiff's proposed first amended complaint does not explain how the alleged "barriers" he claims to have encountered denies him access to a physical brick and mortar Domino's Pizza location.  As a result, his proposed first amended complaint is futile and would drastically increase the scope of this lawsuit and force Defendant to litigate claims for which Plaintiff cannot maintain.

Moreover, as demonstrated above, Plaintiff was dilatory as he was only able to file his motion before the amendment deadline by violating L.R. 7-3.  In short, Plaintiff has failed to satisfy the requirements of Rule 15, and Plaintiff has not even attempted, much less satisfied, the stricter requirements of Rule 16.

## IV.   CONCLUSION

For the above reasons, Defendant respectfully requests that Plaintiff's motion be denied in its entirety.

Dated:  May 24, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By _____
          /s/ *Gregory F. Hurley*
          GREGORY F. HURLEY

          Attorneys for Defendant,
          DOMINO'S PIZZA LLC