SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
GREGORY F. HURLEY, Cal. Bar No. 126791
ghurley@sheppardmullin.com
MICHAEL J. CHILLEEN, Cal. Bar No. 210704
mchilleen@sheppardmullin.com
BRADLEY J. LEIMKUHLER, Cal. Bar No. 261024
bleimkuhler@sheppardmullin.com
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
Telephone: 714.513.5100
Facsimile: 714.513.5130

Attorneys for Defendant,
DOMINO'S PIZZA LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GUILLERMO ROBLES,<br><br>             Plaintiff,<br><br>     v.<br><br>DOMINO'S PIZZA LLC,<br><br>             Defendant. | Case No. 2:16-cv-06599<br>Hon. S. James Otero<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DOMINO'S PIZZA LLC'S MOTION FOR STAY**<br><br>Date:   July 15, 2019<br>Time:  10:00 a.m.<br>Ctrm.: 10C<br><br>Action Filed:  September 1, 2016<br>Trial Date:     March 24, 2020 |

## TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..................................... 2

III. ARGUMENT ..................................................................................................... 4

    A. Legal Standard. ....................................................................................... 4

    B. A Limited Stay Is Appropriate While Domino's Petitions The United States Supreme Court For A Writ Of Certiorari. ....................... 6

        1. Domino's Will Suffer Undue Hardship And Inequity. ................ 6

        2. Plaintiff Will Not Be Prejudiced By A Stay. .............................. 10

        3. The Orderly Course of Justice Is Best Served Waiting On The Supreme Court's Decision On Domino's Petition For Writ Of Certiorari. ........................................................................ 11

IV. CONCLUSION ............................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

Cases

*Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.*
37 F.3d 12 (1st Cir. 1994) ................................................................................. 11

*Doe v. Mutual of Omaha Ins. Co.*
179 F.3d 557 (7th Cir. 1999) ............................................................................. 11

*Ford v. Schering-Plough Corp.*
145 F.3d 601 (3d Cir. 1998) .............................................................................. 11

*Gil v. Winn Dixie Stores, Inc.*
257 F. Supp. 3d 1340 (S.D. Fla. 2017) ............................................................... 9

*Gomez v. Bang & Olufsen America, Inc.*
2017 WL 1957182 (S.D. Fla. Feb. 2, 2017) ....................................................... 9

*Gomez v. La Carretta Enterprises*
2017 U.S. Dist. LEXIS 202662 (S.D. Fla. Dec. 6, 2017) .................................. 8

*Kidwell v. Florida Comm'n on Human Relations*
2017 WL 176897 (M.D. Fla. Jan. 17, 2017) ...................................................... 9

*Landis v. N. Am. Co.*
299 U.S. 248 (1936) ................................................................................. 4, 5, 6

*Lockyer v. Mirant Corp.*
398 F.3d 1098 (9th Cir. 2005) ............................................................................ 5

*Nat'l Assoc. of the Deaf v. MIT*
15-300024 (D. Mass. Jun. 3, 2015) .................................................................... 7

*Nat'l Assoc. of the Deaf v. Netflix*
No. 11-30168 (D. Mass. May 15, 2012) ............................................................ 7

*Pallozzi v. Allstate Life Ins. Co.*
198 F.3d 28 (2d Cir. 1999) ............................................................................... 11

*Parker v. Metropolitan Life Ins. Co.*
121 F.3d 1006 (6th Cir. 1997) (en banc) .......................................................... 11

*Pate v. DePuy Orthopaedics, Inc.*
  2012 WL 3532780 (D. Nev. Aug. 14, 2012) ......................................................... 4

*Peoples v. Discover Fin'l Services, Inc.*
  2009 WL 3030217 (E.D. Pa. 2009), aff'd 387 Fed. Appx. 179 (3d Cir. 2010) ........................................................................................................... 9

*Price v. AFT Mgmt., Corp.*
  2018 U.S. Dist. LEXIS 25896 .............................................................................. 8

*Price v. Everglades College, Inc.*
  2018 WL 3428156 (M.D. Fla. July 16, 2018) ...................................................... 8

*Rendon v. Valleycrest Productions, Ltd.*
  294 F.3d 1279 (11th Cir. 2002) .......................................................................... 11

*Robles v. Domino's Pizza LLC*
  913 F.3d 898 (9th Cir. 2019) .............................................................. 1, 5, 11, 12

*Rutman Wine Co. v. E. & J. Gallo Winery*
  829 F.2d 729 (9th Cir. 1987) ................................................................................ 5

*Weyer v. Twentieth Century Fox Film Corp.*
  198 F.3d 1104 (9th Cir. 2000) ............................................................................ 11

*Young v. Facebook, Inc.*
  790 F. Supp. 2d 1110 (N.D. Cal. 2011) ............................................................... 4

Statutes

28 U.S.C.A. § 2101(f) ................................................................................................ 5

Fed. R. App. P. 8(a) .................................................................................................. 4

Fed. R. Civ. Proc. 62(c) ............................................................................................ 4

Defendant Domino's Pizza LLC ("Defendant" or "Domino's") hereby submits is memorandum of points and authorities in support of its motion to stay this action pending the Supreme Court's consideration of Domino's forthcoming petition for a writ of certiorari.

## I. INTRODUCTION

Domino's moves for stay of the proceedings in this matter in the interest of justice and judicial efficiency. This case has been remanded to this Court following the Ninth Circuit's reversal on Domino's Motion to Dismiss in *Robles v. Domino's Pizza LLC*, 913 F.3d 898 (9th Cir. 2019). The Ninth Circuit's holding in *Robles* massively expands the reach of Title III of the Americans with Disabilities Act ("ADA") into the online world and deepens a circuit split with other courts of appeals. These inconsistent rulings affect virtually every business in America that offers goods and services to the public via an online means. Approximately 2,250 federal lawsuits asserting ADA violations based on website accessibility were filed in 2018 alone, along with an untold number in state courts.

To that end, and in an effort to resolve the circuit split that exists as a result of the holding in *Robles*, Domino's intends to petition the Supreme Court of the United States for a writ of certiorari. Domino's has retained the law firm of Williams & Connolly LLP to assist with the petition, which will be filed on or before June 14, 2019.[1] It is anticipated that the Supreme Court will make a decision on whether to grant the petition within six months of the date of the filing of this motion.

Moreover, while the ADA's applicability to websites is unsettled, the propriety of a stay in the instant case is multiplied by the new allegations set forth in Plaintiff's proposed First Amended Complaint ("FAC"). The FAC adds a number of new allegations concerning the alleged "inaccessibility" of Defendant's Website

---

[1] On March 6, 2019, Justice Elena Kagan granted an extension of time for which to file a petition for a writ of certiorari until June 14, 2019.

and Mobile App and further expands the scope of Plaintiff's lawsuit. Accordingly, there is a substantial risk that the parties will be forced to litigate over alleged issues that may not be actionable under the ADA.

As such, a limited stay will serve the Court's interest in judicial economy and will allow the parties to delay incurring potentially burdensome discovery costs, legal fees, and expert fees until the legal landscape is more settled. Specifically, the Supreme Court may add clarity to whether the ADA applies to websites, and if so, what the ADA requires. Moreover, the Supreme Court's decision may be dispositive of this case in its entirety.

To proceed with discovery at this time, given the unsettled nature of the law with respect to Plaintiff's sole theory of liability, is therefore inequitable to Domino's as it would be required to participate in unnecessary and wasteful discovery in a matter that could be moot in a matter of months. As discussed below, Plaintiff has refused to stipulate to this stay, thereby making the imposition of additional costs/fees associated with discovery highly likely.

Therefore, Domino's respectfully requests that the Court grant this motion for a brief stay of this case until the Supreme Court makes a determination of its petition for a writ of certiorari, and should certiorari be granted, until such time as the Supreme Court finally disposes of the appeal on the merits.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Guillermo Robles ("Plaintiff") is a serial filer who has filed at least twenty-two (22) lawsuits against businesses alleging that their websites and/or mobile applications are "inaccessible" to him. Plaintiff's law firm has filed hundreds more. This lawsuit is no different.

On September 1, 2016, Plaintiff filed his original complaint in this case. (Dkt. 1). Plaintiff alleged that Domino's website, http://www.dominos.com (the "Website"), and its Mobile Application ("Mobile App") contained "accessibility barriers" in alleged violation of the ADA and California's Unruh Act.

1  On February 22, 2017, Domino's filed a motion for summary judgment or, in
2 the alternative to dismiss, on the grounds that the ADA does not apply to the
3 Domino's Website or Mobile App, the lack of official accessibility standards
4 violated Defendant's right to due process, and the Court should dismiss this action
5 pursuant to the primary jurisdiction doctrine. (Dkt. 32). On March 20, 2017, the
6 Court granted Domino's motion. (Dkt. 42). Plaintiff appealed.
7  On January 15, 2019, the Ninth Circuit issued an opinion reversing and
8 remanding this Court's order granting Domino's motion. (Dkt. 49). On March 6,
9 2019, the Supreme Court of the United States granted Domino's an extension of
10 time by which to file a petition for a writ of certiorari. (App. Dkt. 68). Domino's
11 has until June 14, 2019 to file a petition for review and intends to do so.
12  On April 15, 2019, the Court held a status conference wherein it reset trial in
13 this matter for March 24, 2020. (Dkt. 56).
14  On May 15, 2019, Plaintiff filed a motion for leave to file his proposed FAC.
15 Plaintiff's proposed FAC significantly expands the scope of Plaintiff's lawsuit.
16 First, Plaintiff redefines the term "Website" from encompassing not just
17 http://www.dominos.com, but expands to include "any other website operated or
18 controlled by Defendant as well as any third party content which is located on or
19 used in connection with Dominos.com and any other website operated by or
20 controlled by Defendant, for the purposes described herein." Plaintiff does not
21 specify what other websites these are or what other third parties Plaintiff wants to
22 join to the lawsuit because he contends their content is also inaccessible. For
23 instance, a brief glance at http://www.dominos.com reveals content from advertisers

such as Coca Cola and the National Dairy Council, as well as links to Facebook,[2] Instagram, Twitter, and Tumblr.

In addition, Plaintiff claims to have visited http://www.dominos.com again (presumably at the direction of his counsel) and on unspecified occasions, claims to have encountered additional "barriers" to access. (Dkt 60-4). Plaintiff's claim used to be that he was unable to order a pizza and now his claim has evolved to add a host of miscellaneous alleged concerns. Defendant denies that any of these specific changes constitutes an unlawful "barrier" or that Plaintiff was denied access to Defendant's goods and/or services in any way.

As of the time this motion is filed, the Court has not yet acted on Plaintiff's motion, and Domino's requests that the Court stay consideration of that motion.

## III. ARGUMENT

### A. Legal Standard.

The Court has inherent power to control its docket, including the discretion to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Pate v. DePuy Orthopaedics, Inc.*, 2012 WL 3532780, at *2 (D. Nev. Aug. 14, 2012) citing *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). Similarly, the Federal Rules of Civil Procedure and Federal Rules of Appellate Procedure expressly recognize the right of party to seek a stay of further litigation pending appeal. *See* Fed. R. Civ. Proc. 62(c); Fed. R. App. P. 8(a).

---

[2] Of course, Facebook is not subject to the requirements of the ADA in this Circuit. *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110 (N.D. Cal. 2011). However, this may not be true in other Circuits.

Moreover, when a final judgment or decree of any court is subject to review by the United States Supreme Court on writ of certiorari, the execution and enforcement of such judgment or decree may be stated for a reasonable time to permit a party to obtain a writ of certiorari from the Supreme Court. 28 U.S.C.A. § 2101(f). Specifically, § 2101(f) provides:

> In any case in which the final judgment or decree of any court is subject to review by the Supreme Court on writ of certiorari, the execution and enforcement of such judgment or decree may be stayed for a reasonable time to enable the party aggrieved to obtain a writ of certiorari from the Supreme Court. The stay may be granted by a judge of the court rendering the judgment or decree or by a justice of the Supreme Court…

To determine if a stay should be granted, Courts must weigh the competing interests of the parties and of the court. As outlined by *Landis*, among those competing interests to be considered in the granting a stay are: (1) the hardship or inequity which a party may suffer in being required to go forward; (2) the possible damage which may result from the granting of a stay; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof and questions of law which could be expected to result from a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) citing *Landis*, 299 U.S. at 268.

As discussed below, application of these elements to this matter unquestionably warrants a limited stay to allow Domino's to petition the Supreme Court for a review of the Ninth Circuit's opinion in *Robles*. The Supreme Court's decision may well be dispositive of the issues in the case. Discovery will be needless if the Supreme Court agrees with this Court's ruling. *E.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("If the allegations of the complaint fail to establish the requisite elements of the cause of action, our requiring costly and time consuming discovery work would represent an abdication

of our judicial responsibility."). At minimum, the scope of discovery should be sharpened into focus.

As explained by the Court in *Busk v. Integrity Staffing Solutions, Inc.*:

> [T]he Supreme Court's decision on Defendant's Writ could drastically alter the parties' litigation focus and indeed, the case itself. Therefore, forcing Defendant, and Plaintiffs for that matter, to proceed prior to a decision on Defendant's Writ, risks wasting a substantial amount of resources on a case that may never go forward in its current form. Requiring the parties to incur such costs would be both pointless and prejudicial. Additionally, waiting six months to determine whether Defendant's petition will be granted will greatly simplify this case because the parties will be certain as to what law applies. Therefore, regardless of how the Supreme Court decides, once the parties have their answer they will know how to move forward and eventually reach a resolution in this case.

2013 WL 4786254 (D. Nev. Sept. 5, 2013). The Court should adopt the same reasoning in *Busk* and grant a limited stay.

**B.     A Limited Stay Is Appropriate While Domino's Petitions The United States Supreme Court For A Writ Of Certiorari.**

Here, all *Landis* factors weigh heavily in favor of a stay.

**1.     Domino's Will Suffer Undue Hardship And Inequity.**

Unless a stay is instituted, Domino's will be forced to endure potentially wasteful and unnecessary discovery while the litigation proceeds during the pendency of the writ petition. The review by the Supreme Court may well dispose

of this case in its entirety.  At the very minimum, all parties will benefit from the expected clarity to the law the Supreme Court can provide.

Significantly, federal courts of appeals have split over whether Title III imposes accessibility requirements on websites.  Further, where District Courts have attempted to apply the ADA to websites, they have split further concerning *what* sorts of accessibility these websites had to provide.  As a result, Domino's is subject to different accessibility requirements based on where the case is venued.  This prejudices Domino's significantly because the Internet is available everywhere and it is being forced to defend suits in varying jurisdictions all subject to different requirements.

Moreover, the U.S. Department of Justice ("DOJ") has issued conflicting and confusing guidance on how the ADA should apply to websites.  In 2012, for example, DOJ argued that Netflix, a video streaming website, was itself a public accommodation.  Statement of Interest at 5–7, *Nat'l Assoc. of the Deaf v. Netflix*, No. 11-30168 (D. Mass. May 15, 2012).  But in 2015, DOJ deemed MIT's online programming merely a "service" of the university, which was a public accommodation.  Statement of Interest at 18, *Nat'l Assoc. of the Deaf v. MIT*, 15-300024 (D. Mass. Jun. 3, 2015).  After years of conflicting statements, in 2017, DOJ withdrew the 2010 advance notice of proposed rulemaking and warned parties against "rely[ing] upon" the ANPRM "as presenting the Department of Justice's position on these issues." *Nondiscrimination on the Basis of Disability; Notice of Withdrawal of Four Previously Announced Rulemaking Actions*, 82 Fed. Reg. 60,932, 60,932, 60,933 (Dec. 26, 2017).

In 2018, DOJ contended that "the ADA applies to public accommodations' websites," again backing away from the notion that websites are themselves public accommodations.  Stephen E. Boyd, Assistant Attorney General, Letter to Rep. Ted Budd Sept. 25, 2018).  DOJ also indicated that "noncompliance with a voluntary

technical standard for website accessibility does not necessarily indicate noncompliance with the ADA." *Id.*

In sum, despite decades of ad hoc pronouncements, DOJ has never coherently explained how Title III could extend to websites.

Given the unsettled nature of the law, Domino's may be subject to discovery that potentially goes far beyond the scope of what the ADA requires. For instance, the majority of courts that have found the ADA may apply to websites do not agree that an entire website must be programmed in such a manner to be read by screen reading software. *See, e.g., Price v. Everglades College, Inc.*, 2018 WL 3428156, *2 (M.D. Fla. July 16, 2018) ("One rationale underlying this holding is that a contrary finding would require all websites with *any* nexus to a physical public accommodation to be formatted in such a way that they are accessible to screen reader software. District courts in the Eleventh Circuit have been unwilling to take a leap with such far-reaching implications, and this Court is no exception."); *Gomez v. La Carretta Enterprises*, 2017 U.S. Dist. LEXIS 202662, at *9 (S.D. Fla. Dec. 6, 2017) ("If the Court allows ADA accessibility claims to proceed for these websites under a theory that a visually impaired plaintiff was denied access to *information* about the physical business location, then this Court would be saying, in effect, that *all* websites must interface with screen readers. The Court is not willing to take that leap."); *Price v. AFT Mgmt., Corp.*, 2018 U.S. Dist. LEXIS 25896, at *9 (S.D. Fla. Feb. 14, 2018) ("For those same reasons, the Court finds Plaintiff's allegations in the Amended Complaint that he was unable to use the website to educate himself about Ocean Manor hotel amenities and goods and services available and/or to learn about the room options, dining options, and spa services at the Resort insufficient to state a claim. [] Further, while Plaintiff alleges that he attempted to educate himself about the amenities available at the Resort with the intent of then patronizing the Resort, he does not specifically allege that he attempted to make any room or dining reservations on oceanmanor.com and was precluded from doing so because of the

website's incompatibility with his screen reader."); *Gomez v. Bang & Olufsen America, Inc.*, 2017 WL 1957182, *3 (S.D. Fla. Feb. 2, 2017) ("it appears that the majority of courts agree that websites are not covered by the ADA unless some function on the website hinders the full use and enjoyment of a physical space."); *Kidwell v. Florida Comm'n on Human Relations*, 2017 WL 176897, *5 (M.D. Fla. Jan. 17, 2017) ("Plaintiff is unable to demonstrate that either Busch Gardens' or SeaWorld's online website prevents his access to 'a specific, physical, concrete space such as a particular airline ticket counter or travel agency.' As a result, Plaintiff may not plead a claim based on accessibility of an online website under Title III of the ADA."); *Peoples v. Discover Fin'l Services, Inc.*, 2009 WL 3030217, *2 (E.D. Pa. 2009) (services available on internet website must have some connection to a physical place of accommodation to fall within ADA's 'place of public accommodation' requirement), aff'd 387 Fed. Appx. 179 (3d Cir. 2010).

Here, Plaintiff's Complaint seeks to have Defendant's entire website comply with WCAG 2.0. The cost of litigating and defending against the entire scope of the Website is costly and burdensome and potentially requires an element by element analysis of whether each link, image, button, form, heading, and menu is programmed perfectly. This point is underscored by the fact that "compliance" with WCAG 2.0 can itself be onerous. One grocery chain estimated it would need $250,000 to make its website accessible. *Gil v. Winn Dixie Stores, Inc.*, 257 F. Supp. 3d 1340, 1345–47 (S.D. Fla. 2017). Almost 10 years ago, banks estimated that satisfying website-accessibility requirements could reach $3 million per website. *See, e.g.,* Comments of American Bankers Association, Proposed Rulemaking, Docket No. 110 RIN 1190-AA61 (Jan. 24, 2011). Publishers pegged their minimum estimate for interactive websites at $100,000, with possible costs of $ 1 million. Comments of Association of American Publishers, Docket No. 110 RIN 1190-AA61 (Jan. 24, 2011). For more complex websites with video content, interactive features, and links to other webpages, costs can reach even higher.

It is expected that the Supreme Court can provide much needed guidance on the scope of the ADA's application to websites (if any).

Accordingly, to require Domino's to participate in such potentially unnecessary discovery would be inequitable, cause undue hardship, and be a terrible waste of time, resources and money. Accordingly, this Court should exercise its inherent power and stay further action in this case until such time as the Supreme Court disposes of Defendant's impending Petition for Writ of Certiorari and, in the event the Supreme Court grants the Petition, until such time as the Supreme Court finally disposes of the case.

### 2. Plaintiff Will Not Be Prejudiced By A Stay.

There is no conceivable reason Plaintiff will be prejudiced by a stay. Plaintiff is a serial filer of ADA lawsuits alleging that he was not able to access a given defendant's businesses website. Indeed, Plaintiff's law firm specializes in bringing a large volume of cases against numerous businesses making the same form allegations. Domino's does not believe that Plaintiff was ever actually a *bona fide* customer who was denied access given the multitude of other avenues available to him to order a pizza (including, in-person, phone, sending a text message, using voice-activated devices such as Amazon Alexa, and even via Twitter) and doubts he can establish standing to bring this case. Tellingly, a complaint has been filed against Plaintiff's law firm by the District Attorney for the County of Riverside for allegedly bringing lawsuits on behalf of a plaintiff who lacked standing to bring them. (*See The People of the State of California v. James Rutherford, et al.*, Superior Court of California for the County of Riverside Case No. RIC 1902577, attached as Exhibit A to Leimkuhler Decl.).

To the contrary, Plaintiff stands to benefit from the potential clarity brought by the Supreme Court on what the ADA requires. First, it will enable Plaintiff to focus his lawsuit on the portions of Domino's Website and Mobile App, if any, that are subject to the requirements of the ADA. Second, it may enable Plaintiff to apply

the appropriate standard to his evaluation of Domino's Website and Mobile App. Third, it will potentially allow Plaintiff to avoid the burdensome and costly expense of retaining an expert to evaluate the portions of Domino's Website and Mobile App that are not subject to the ADA at all.

The lack of prejudice to Plaintiff is underscored by the fact Plaintiff recently has sought leave to amend his complaint to add new allegations – effectively an effort to start the litigation anew – despite having been afforded many months (or years) to seek leave to amend. Therefore, it would be entirely inconsistent for Plaintiff to complain about "delay" when he has delayed himself to pursue his claim.

Therefore, this factor weighs in favor of a stay.

### 3. The Orderly Course of Justice Is Best Served Waiting On The Supreme Court's Decision On Domino's Petition For Writ Of Certiorari.

A stay is warranted here due to the split of authority among the circuits of the ADA's application to websites. In *Robles*, the Ninth Circuit reiterated its prior holding that website-only businesses cannot face Title III liability. *See also Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000)). In doing so, the Ninth Circuit doubled down on the existing circuit split over whether Title III applies to online-only businesses. The Third, Sixth, Ninth, and Eleventh Circuits have all required a business have a brick and mortar location open to the public for the ADA to apply at all while the First, Second, and Seventh Circuits have extended the ADA's application to online-only businesses. *Compare Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006, 1010 (6th Cir. 1997) (en banc), *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 614 (3d Cir. 1998), *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000), *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279 (11th Cir. 2002), *with Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999); *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28 (2d Cir. 1999); *Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994).

Critically, in *Robles*, the Ninth Circuit also articulated a new rule for entities that operate both a website or app and a brick-and-mortar location. The website or app, viewed in isolation, must comply with Title III if either provides access to what the physical public accommodation offers. The Ninth Circuit thus extended Title III to Domino's website and mobile app because they bear a sufficient "nexus" to Domino's restaurants, namely they "facilitate access" or "connect customers" to the restaurants' products.

This new extension conflicts with that of the Third, Sixth, and Eleventh Circuits. The Ninth Circuit recognized a valid Title III claim even though Plaintiff did not allege overall inaccessibility of the goods and services of Domino's restaurants. It was enough that the website or app—taken in isolation—was allegedly inaccessible. Although the Ninth Circuit suggested that alternative means of access, including a telephone hotline, might be relevant at a later stage, Plaintiff's allegation of website and app inaccessibility was enough to state a Title III claim.

As discussed above, courts are divided over whether websites or mobile apps are subject to Title III. This split of authority creates tremendous uncertainty for businesses attempting to operate a website and/or mobile application that is available to customers all over the United States (and internationally).

Therefore, proceeding with this matter, without allowing for an opportunity to clear up this split in authority, can only serve to further complicate the issues before this Court. Thus, this factor weighs in favor of a stay.

## IV. CONCLUSION

For all of the foregoing reasons, Domino's respectfully requests that the Court exercise its inherent authority this Court should exercise its inherent power and stay this matter until such time as the United States Supreme Court rules upon the merits of Domino's Petition for Writ of Certiorari, and should certiorari be granted, until such time as the Supreme Court finally disposes of the appeal on the merits. Whether the petition is denied or granted, the proceeding would continue without

the very real and significant threat of incurring unnecessary time and expense or cloud of unsettled case law.

Dated: June 10, 2019

                                  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                        By          /s/ *Gregory F. Hurley*
                                     GREGORY F. HURLEY

                                     Attorneys for Defendant,
                                     DOMINO'S PIZZA LLC