Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
**MANNING LAW, APC**
20062 S.W. Birch St., Suite 200
Newport Beach, CA 92660
Office: (949) 200-8755
Fax: (866) 843-8308
DisabilityRights@manninglawoffice.com

Eve L. Hill (*pro hac vice*)
Jessica P. Weber (*pro hac vice*)
**BROWN, GOLDSTEIN & LEVY, LLP**
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Office: (410) 962-1030
Facsimile: (410) 385-0869
ehill@browngold.com
jweber@browngold.com

Attorneys for Plaintiff
Guillermo Robles

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| GUILLERMO ROBLES, an<br><br>individual,<br><br>        Plaintiff,<br><br>v.<br><br>DOMINO'S PIZZA LLC, a limited<br><br>liability corporation,<br>        Defendant. | **Case No.:** 2:16-cv-06599- JGB-E<br><br>**OPPOSITION TO DEFENDANT DOMINO'S PIZZA LLC'S MOTION TO COMPEL AND REQUEST FOR SANCTIONS**<br><br>**DATE:** September 28, 2020<br>**TIME:** 9:00 AM<br><br>**DISCOVERY MATTER**<br><br>**Magistrate Judge Charles F. Eick** |

---

**OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**

1

## **Table of Contents**

I.      Introduction…………………………………………………………………...1

II      Argument…………………………………………………………………...3

     A.      Defendant's Motion Is Late and Should Be Stricken……………………..3

     B.      Plaintiff Was Ready and Willing to Meet and Confer Regarding
         Defendant's Discovery Issues…………………………………………....4

     C.      Mr. Robles Has Sufficiently Answered Defendant's Interrogatories…….5

     D.      Defendant's Requests for Inspection of Plaintiff's Laptop and Cellular
         Phone Are Oppressive and Burdensome, and Calculated to Harass
         Mr. Robles……………………………………………………………..8

     E.      Plaintiff's Loss of His iPhone Is Not Willful Spoliation and Does Not
         Prejudice Defendant…………………………………………………..10

     F.      Sanctions Are Not Warranted for Plaintiff's Loss of His 2016 iPhone…12

     G.      Monetary Sanctions Are Not Warranted Because Mr. Robles Properly
         Responded to Defendant's Discovery and Was, and Is Still, Ready and
         Willing to Informally Resolve Any Claimed Issues……………………12

     H.      Defendant's Goal to Discredit Mr. Robles as a "Professional Plaintiff"
         is Contradicted by His History as a Good Faith Advocate for
         Accessibility for Himself and His Community…………………………13

III.    Conclusion…………………………………………………………...14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
    631 F.3d 939 (9th Cir. 2011) .......................................................................7

*Gordon v. Virtumondo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) .....................................................................1

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) .....................................................................12

*Robles v. Domino's Pizza LLC*,
    913 F.3d 898 (9th Cir. 2019) .......................................................................1

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
    419 F. App'x 740 (9th Cir. 2011) ..............................................................10

*United States v. $40,955.00 in United States Currency*,
    554 F.3d 752 (9th Cir. 2009) .....................................................................10

**Other Authorities**

https://support.apple.com/guide/safari/search-your-web-browsing-history-
    ibrw1114/mac (last visited Sept. 11, 2020) ............................................11

Local Rule 37-2.4................................................................................2, 5, 15

Plaintiff Guillermo Robles ("Plaintiff" or "Mr. Robles") respectfully submits this memorandum in opposition to Defendant Domino's Pizza LLC's (Defendant) untimely motion to compel responses to requests for production and responses to interrogatories, and request for sanctions (the "Motion").

## I.  **Introduction**

Unable to establish that it provided Mr. Robles full and equal enjoyment of its website and mobile application, as required by Title III of the Americans with Disabilities Act ("ADA") and the Unruh Act, Domino's instead continues to try to shift focus.  Following the Ninth Circuit's rejection of its arguments that complying with the ADA would violate its Due Process rights,[1] Domino's now grasps at straws. After sitting on Mr. Robles' discovery responses for more than three years in some cases and for more than eight months in others, Domino's first raised issues with Mr. Robles' discovery responses on the eve of the discovery deadline, foregoing Mr. Robles' good faith invitation to resolve discovery issues amicably and instead rushing to court to file an untimely motion to compel. Recognizing the weakness of its substantive arguments, Domino's repeatedly resorts to trying to discredit Mr. Robles as a "serial litigant"[2] for diligently enforcing his civil rights, as contemplated by Congress when it passed the ADA with a private right of action. And left with the reality that it maintained an inaccessible website and mobile application that denied Mr. Robles full and equal enjoyment of its goods and services, Domino's has suddenly decided—four years into this litigation—that Mr. Robles' old iPhone from 2016 is a necessary piece of evidence.

This Court should reject Domino's eleventh-hour attempt to obfuscate the issues

---

[1] *See Robles v. Domino's Pizza LLC*, 913 F.3d 898 (9th Cir. 2019).

[2] As the Ninth Circuit has observed, "the term 'professional' as in 'professional plaintiff,' is not a 'dirty word' and should not itself undermine one's ability to seek redress for injuries suffered." *Gordon v. Virtumondo, Inc.*, 575 F.3d 1040, 1056 (9th Cir. 2009).  Furthermore, no court has ever found the lawsuits that Mr. Robles has filed to be frivolous.

in this case. Because Domino's filed its Motion on August 31, 2020, and set the hearing date for its motion on September 28, 2020 – one full week after the Court's September 21, 2020 discovery cut-off deadline (Doc. 89) – Domino's motion should be stricken as untimely.  The motion should also be stricken because Domino's failed to engage in good faith discussions with Plaintiff's counsel before filing the instant motion, in violation of Local Rule 37-2.4.

Defendant's Motion otherwise substantively lacks merit. Mr. Robles has provided the information requested in Domino's interrogatories.  Defendant's requests to inspect Plaintiff's laptop and phone are unduly burdensome and oppressive, and not relevant to the central issue in this case: whether Domino's website and mobile application are designed and maintained to be accessible to blind users.  Domino's focus on Mr. Robles' devices is a distraction; if the problem lay with Mr. Robles' devices, Domino's could easily prove it by showing that the accessibility barriers Mr. Robles' encountered cannot be replicated across other devices.  Nevertheless, had Mr. Robles been afforded the opportunity to meet and confer, he would have proposed selecting a third-party neutral technology expert to review Plaintiff's laptop for limited, agreed upon purposes. Mr. Robles is still amenable to that solution.

Defendant's spoliation claim fares no better. Despite waiting more than three years to challenge Plaintiff's objection to handing over his mobile phone and never sending a preservation letter, Domino's now argues that Mr. Robles should have saved his broken iPhone from 2016, instead of trading it in for a new phone.  Not only was Mr. Robles' decision to upgrade to a functioning phone far from willful destruction of evidence, it also had no impact on Domino's ability to defend against Mr. Robles' claims.  As explained herein, there would have been no browsing history saved on the phone by the time Defendant requested it and a review of the phone is not relevant to the central question of whether the website and mobile application are coded for accessibility.  Thus, Mr. Robles' replacement of his phone did not prejudice Domino's in any way. The Court should therefore reject Domino's untimely motion to compel

1   and for sanctions in its entirety.

2   **II.    Argument**

3   **A. Defendant's Motion Is Late and Should Be Stricken**

4   Defendant's Motion is late. Defendant filed its Motion on August 31, 2020, and

5   set the hearing date for its motion on September 28, 2020 -- one full week after the

6   Court's September 21, 2020, Discovery Cut-Off deadline. [Doc. 89] "The discovery

7   cut-off is the last date to complete discovery, including expert discovery. It is also *the*

8   *last day for hearing any discovery motion.*" (Judge Bernal's Civil Trial Scheduling

9   Order, p. 3:12-13) (emphasis added).[3] Defendant filed its Motion late in contravention

10  of the Scheduling Order without applying for relief or permission to file late, and its

11  Motion should be denied for that reason alone.

12  Domino's late filing of the present Motion is not merely a technical

13  shortcoming.  It is illustrative of Domino's pattern of prejudicial delay in this case.

14  Mr. Robles served the discovery responses to which Domino's now objects on March

15  13, 2017 and December 5, 2019.  Inexplicably, Domino's chose to wait until mid-

16  August 2020 to first notify Mr. Robles of any perceived deficiencies with his responses

17  and then raced to file the present untimely Motion on August 31, ignoring Plaintiff's

18  willingness to resolve discovery issues amicably, without court intervention.  Now, in

19  the midst of working to conclude all fact and expert discovery by the September 21

20  deadline (a task that has become more challenging in light of Defendant's untimely

21  expert disclosure on September 9, 2020), Mr. Robles must now expend resources

22  briefing discovery issues with the Court that could have been resolved between the

23  parties months ago.    Furthermore, should the Court rule that any further

24  supplementation is required, this would represent a de facto extension of the discovery

25

26  [3] *See also* Judge Otero's Initial Standing Order, p. 8:25-28 (Doc. 10): "All expert /
    non-expert discovery must be **completed** by the discovery cut-off set by the Court.

27  Any motion challenging the adequacy of discovery responses must be calendared
    sufficiently in advance of the cut-off date to permit any compelled responses to be

28  obtained before that date." (emphasis in original)

---

**OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**

period.  In light of the dispositive motions deadline of October 26, 2020, extending the discovery period further, particularly when it has already been extended several times over the past year (discovery was initially set to conclude on December 23, 2019, Doc. 56) would prejudice Mr. Robles, as he must simultaneously work to supplement discovery and prepare a dispositive motion. Because Domino's could have raised the issues in its Motion several months ago, when the Motion would have been timely, the Court should reject Domino's tardiness and deny its Motion as untimely.

### B. Plaintiff Was Ready and Willing to Meet and Confer Regarding Defendant's Discovery Issues

Rather than work with Plaintiff's counsel to resolve discovery issues amicably, Defendant instead elected to race to Court with the instant Motion, perhaps recognizing that its Motion was already untimely. Counsel for all parties have been in regular contact with each other throughout the course of discovery. (Manning Decl. ¶ 3.) Mr. Robles' counsel had been communicating with Defendant's counsel, provided a range of dates when Mr. Robles was available to be deposed, and expressed a clear willingness to schedule a call to discuss any other discovery related matters. (Manning Decl. ¶ 3.) Rather than follow up, Defendant rushed to file this late Motion to Compel, again in contravention of the Court's instruction. "Counsel are expected to resolve discovery problems without the assistance of the Court." (Civil Trial Scheduling Order, p. 3:10-11)

After Defendant filed its Motion, Mr. Robles' counsel again reached out to Defendant's counsel on September 2, 2020, and informed them, as previously expressed, that Plaintiff remained ready and willing to work with Defendant on the discovery issues it identified in its Motion. (**Exhibit A**, Manning Decl. ¶ 4-5.) As of the date of this filing, counsel for Domino's still has not responded to Mr. Robles' communication. (Manning Decl. ¶ 6.) Nevertheless, in the past two weeks, Defendant's counsel continued to communicate with Mr. Robles' counsel on different discovery matters: noticing depositions (September 3), supplementing its discovery (September 8), and serving an untimely expert disclosure and report (September 9).

(Manning Decl. ¶ 7.) Curiously, Defendant selectively chose to ignore Plaintiff's continued overtures to resolve discovery issues amicably, instead electing to involve the Court unnecessarily. Defendant's behavior is not of candor or good faith, and should not be rewarded. (Manning Decl. ¶ 8.)

Defendant did not make a good faith attempt to try to resolve its purported discovery issues before filing this Motion, and has thus failed to abide by the requirements of Local Rule 37-2.4. The Court should also reject Defendant's Motion on this ground.

### C. Mr. Robles Has Sufficiently Answered Defendant's Interrogatories

Even if the Court chooses to address the substance of Domino's untimely and improperly filed Motion, Mr. Robles' responses to Defendant's interrogatories are appropriate and complete, and Defendant improperly finds issues where none exist. Furthermore, since initially responding to Defendant's discovery requests in 2017, Plaintiff has provided a report from his expert witness, Rosemary Musachio, and amended the Complaint—all of which provided Defendant with the more detailed information it now claims to seek.

1. Interrogatory Nos. 1 and 2

Defendant protests that Mr. Robles did not answer these interrogatories to identify the injunctive relief he seeks, but acknowledges that Mr. Robles states that he seeks: "a change in Defendant's corporate policies, practices, and procedures so that Defendant's website and mobile application will become and remain accessible to blind and visually-impaired consumers, which includes Plaintiff" and that he seeks an order requiring "Defendant [to] operate, maintain and provide an accessible website, free of barriers, when read by screen-reading software and an accessible Mobile Application, free of barriers, when read by screen-reading software on a smartphone." This is the injunctive relief that Mr. Robles seeks.  The flexibility this proposed relief gives to Domino's on how best to reach these ends is not a deficiency, but a benefit to Domino's.

Defendant's claim that Plaintiff has not specified particular access barriers on its website and mobile application is similarly misguided.  Plaintiff identified a number of specific barriers in his responses to Interrogatories 1 and 2:

> I have encountered barriers to access on Defendant's website, Dominos.com, and when using Defendant's mobile application. I was unable to find the closest Domino's store location to place an order for pick-up. I was unable to find the closest Domino's store location to place an order from, for carry-out or otherwise. I was unable to complete an order for a customized pizza using Defendant's mobile application or using Dominos.com. I was unable to independently, securely and privately complete my pizza order for carry out. I encountered unlabeled buttons on Defendant's website and mobile application when I was trying to locate the "Delivery" and "Carry Out" options. I was unable to navigate, or otherwise find information on the homepage of Dominos.com located in a carousel about advertisements and specials offered by Defendant. The website and mobile application lack the Alternative text ("Alt-text") I need to be read to me which would allow me to place an order for carry-out via the website and mobile application. Because the website and mobile application are not designed or maintained so that my screen-reading software can read to me the features I need to complete my order, I am unable to complete my order using Defendant's website and mobile application.

(*See* Plaintiff's Responses to Interrogatories No. 3-5 (**Exhibits B**, Manning Decl. ¶ 12.))

Further, the First Amended Complaint lists no fewer than 35 discrete barriers (**Exhibits C**, Manning Decl. ¶ 13.) and Plaintiff's Initial Expert Disclosure and Report provides detailed information about these barriers as well. (**Exhibits D**, Manning Decl. ¶ 14.)

To the extent Domino's complaint here is that Mr. Robles cannot seek an injunction requiring accessibility as to the entirety of its website and mobile application without specifying every single barrier on each platform, Domino's misunderstands the law.  Mr. Robles need not have encountered every barrier on the website and mobile application to have standing to seek the removal of all access

barriers on these platforms. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 950-53 (9th Cir. 2011) (concluding that an individual plaintiff who had encountered barriers in attempting to shop in a store had standing to seek to remedy barriers that he did not personally encounter in the same store). To limit injunctive relief to only those barriers personally confronted by Mr. Robles would result in piecemeal fixes that would not ultimately create an accessible website or mobile application. It would be confusing and unworkable for different parts of the same website or mobile application to have different and possibly conflicting policies and procedures for maintaining digital accessibility.

Mr. Robles' responses to these interrogatories are complete. To the extent Defendant is interested in any additional responsive information that Mr. Robles did not provide, Mr. Robles remains ready and willing to meet and confer further with Defendant if given the opportunity and would supplement if necessary. (Manning Decl. ¶ 9.)

### 2. Interrogatory Nos. 7 and 8.

As with Interrogatories 1 and 2, Defendant again claims to not have enough specific information about website and mobile application accessibility barriers Mr. Robles encountered. Yet these interrogatories actually ask about the amount of damages claimed, which Mr. Robles has answered. (Ex. D to Def.'s Mot. to Compel, Doc. 90-6). As far as identifying each barrier he confronted on the website, Mr. Robles has already provided that information as indicated above, in his answers to Interrogatory Nos. 3 to 5, in the First Amended Complaint, and through his expert's report. It is unclear what further information Domino's would like.

### 3. Interrogatory No. 10

Mr. Robles identified that he tried to order a pizza on Defendant's website since July 2015 and on Defendant's mobile application in early 2016, and encountered barriers to access on both that prevented him from completing an order. Mr. Robles has since described the same in the First Amended Complaint. Mr. Robles cannot

recall all of the exact dates that he visited the website and mobile application. (Robles Decl. ¶ 6.)   However, he remembers that he first visited the website around July 18, 2015, and revisited the website and mobile application around July 25, 2016, but he cannot remember the exact dates. (Robles Decl. ¶¶ 2-3.) Mr. Robles also recalls that he visited the website again on February 28, 2017, shortly before responding to Domino's interrogatories in March 2017. (Robles Decl. ¶ 4.) Mr. Robles also attempted to use the mobile application on June 19, 2019, but could not even log into the app because of access barriers. (Robles Decl. ¶ 5.)   Mr. Robles has made a diligent search to find more exact dates of his visits by contacting Microsoft and the Apple Accessibility Department. (Robles Decl. ¶ 6.)   Unfortunately, Mr. Robles learned that his Internet Explorer and Safari browsers were set to automatically delete browsing history after 30 days and he was unable to locate the exact dates of his website visits in 2015 and 2016. (Robles Decl. ¶ 7.)

Plaintiff would have been happy to provide this information to Domino's had Domino's been willing to engage in a good faith discussion instead of rushing to file its late Motion to Compel.

### D. Defendant's Requests for Inspection of Plaintiff's Laptop and Cellular Phone Are Oppressive and Burdensome, and Calculated to Harass Mr. Robles

Defendant's requests to inspect Plaintiff's laptop and phone, as well as the browsing history of both, (Requests for Production 18, 19, 20-23, 25, 26, and 28) are unduly burdensome and oppressive, and not relevant to the issues in this case, as Mr. Robles originally objected in 2017. The central issue is whether Domino's website and mobile application are inaccessible to blind users like Mr. Robles. Mr. Robles has provided information about his personal experiences, and has offered an expert, Rosemary Musachio, who has already opined, and will further, about the access barriers on the website and mobile application across device types. (*See e.g.* First Amended Complaint ¶ 36.a. – hh. (describing in detail barriers to access); Plaintiff's

---

Responses to Interrogatories Nos. 3-5 (describing in detail the barriers to access experienced by Plaintiff, and when); and Plaintiff's Initial Expert Disclosure and Report) (**Exhibits B – D**, Manning Decl. ¶¶ 12-14.))

This case focuses on the accessibility of Defendant's website and mobile application; not on Mr. Robles' devices. A particular device is only relevant if the accessibility problems cannot be replicated across other devices. This is not the case here.  Plaintiff's expert was able to replicate the barriers Mr. Robles encountered, and discover additional barriers, using different electronic devices than Mr. Robles has used.  (**Exhibits D**, Manning Decl. ¶ 14.)

More than three years after Plaintiff first lodged these objections, Defendant has suddenly become interested in challenging them only in the last month and rushed to file a late Motion to Compel to acquire unfettered access to Mr. Robles' laptop and iPhone from 2016. It is implausible that Defendant's change of heart is because it actually wants or needs Mr. Robles' devices. Instead, it appears Defendant simply wants to burden Mr. Robles, particularly because it is unable to show that its website and mobile application actually are or were accessible.

It is notable that Plaintiff's counsel and Defendant's counsel have litigated numerous cases regarding website and mobile app accessibility, and Defendant's counsel has never inspected a phone or computer in any of these cases. (Manning Decl. ¶ 11.) This supports the conclusion that Defendant and its counsel do not actually need to inspect Mr. Robles' phone or computer, and do not expect to inspect them either.

Nevertheless, had Mr. Robles been afforded the opportunity to meet and confer, he would have proposed selecting a third-party neutral technology expert to review Plaintiff's laptop for agreed upon, limited purposes (like determining whether there is a cache history showing past visits to the website or application). Mr. Robles is still amenable to that solution. (Manning Decl. ¶ 10.)  Yet Defendant did not afford Mr. Robles this opportunity to informally work out this discovery issue and instead filed its Motion.

**E. Plaintiff's Loss of His iPhone Is Not Willful Spoliation and Does Not Prejudice Defendant**

Defendant claims that spoliation has occurred because Plaintiff no longer has his iPhone from 2016.  Yet Mr. Robles' loss of his 2016 iPhone was certainly not willful and, more importantly, is not prejudicial to Defendant.

Mr. Robles replaced his iPhone not to destroy evidence, but because in the ordinary course of business, people tend to replace broken phones with new, functioning ones. In December 2018, Mr. Robles' 2016 iPhone stopped working, he believes because the battery and antennae failed.  (Robles Decl. ¶ 8.)  Like most people do, he traded his broken iPhone in with his carrier, AT&T, for a new iPhone (an iPhone 8).  After his iPhone 8 sustained water damage in February 2020, he again traded it in with his carrier for a new phone, the iPhone 11, which is his current phone. (Robles Decl. ¶ 9.)  The Ninth Circuit has repeatedly held that potential evidence lost in the ordinary course of business does not constitute spoliation.  *See, e.g.*, *Taniguchi v. Kan Pac. Saipan, Ltd.*, 419 F. App'x 740, 741-42 (9th Cir. 2011); *United States v. $40,955.00 in United States Currency*, 554 F.3d 752, 758 (9th Cir. 2009).

Although Domino's makes much of its initial invasive request for Mr. Robles' iPhone in discovery in 2017, critically, after Plaintiff objected to simply handing over his phone to Defendant as requested, Defendant took more than **three years** to respond to this objection.  Domino's never sent Mr. Robles a <u>preservation letter</u> asking him specifically to save his iPhone.  And because the central issue in this case concerns the *coding* of the mobile application and website, and not Mr. Robles' device settings, Mr. Robles did not believe it was necessary to preserve his phone. (Robles Decl. ¶ 10.) Given the frequency with which people update their phones to keep up with technology or replace malfunctioning devices—especially a blind person who relies heavily on his phone for communication and access to information—Domino's should have clearly asserted its interest in Mr. Robles' phone sooner, not waited more than three years after Mr. Robles reasonably objected to production and at the very close of

discovery.

Furthermore, the loss of Mr. Robles' 2016 iPhone is not prejudicial to Defendant. According to Apple, visits to Domino's website and mobile application from 2016 would not have remained saved on Mr. Robles' device years later. *See* Safari User Guide, "Search your web browsing history in Safari on Mac," https://support.apple.com/guide/safari/search-your-web-browsing-history-ibrw1114/mac (last visited Sept. 11, 2020) ("Safari uses iCloud to keep your browsing history the same on your iPhone, iPad, iPod touch, and Mac computers that have Safari turned on in iCloud preferences. However, your Mac can keep your browsing history for as long as a year, while some iPhone, iPad, and iPod touch models keep browsing history *for a month*.") (emphasis added).

Additionally, Dominos is free to demonstrate to the Court that its mobile application and website work for blind users on other devices, which would indicate that Mr. Robles' devices or device settings were to blame, not Defendant's coding. It is worth noting that the website and mobile application at issue and any iterations or updates thereof are in Defendant's complete possession and control. There is no credible need for Defendant to inspect an old 2016 iPhone to defend this action or assess claims of accessibility because the predominate issues are whether Domino's built and maintained a website and mobile application coded for accessibility.

Accordingly, the loss of Mr. Robles' 2016 iPhone has no impact on the parties' claims or defenses in this matter. Given Defendant's extreme delay in raising this non-issue—more than three years after it initially requested all of Mr. Robles' devices—it appears to be more interested in trying to distract from the inaccessibility of its website and mobile application than in actually obtaining Mr. Robles' iPhone.

**F. Sanctions Are Not Warranted for Plaintiff's Loss of His 2016 iPhone**

Despite not needing or wanting Mr. Robles' lost 2016 iPhone for any credible reason, Defendant frames the loss as spoliation that warrants an issue sanction that

would eliminate Mr. Robles' Second and Fourth Causes of Action regarding the accessibility of Defendant's mobile application. Defendant lists five factors under *Leon v. IDX Sys. Corp.*, but emphasizes "prejudice" to Defendant; seemingly because none of the other factors apply. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

Defendant frames the issue that loss of the 2016 iPhone will interfere with the rightful decision of the case and Defendant will be irreparably harmed by Mr. Robles' loss of his iPhone because "Defendant will be unable to evaluate Plaintiff's claims relating to the mobile application." As discussed in the previous section, however, Defendant is not at all prejudiced by the loss of the iPhone; if it were, it likely would have pursued obtaining the phone at some point earlier within the past three years.

An outdated (and broken) iPhone is unlikely to have any relevant saved information as to application visits from 2016, nor about default VoiceOver settings or a Dominos' Mobile Application version from 2016 that had most likely already been automatically updated multiple times by the iPhone's operating system at the time the phone died in 2018.  Thus, Defendant's purported purposes for inspecting the phone are wholly irrelevant.  Defendant suffers no prejudice from the loss of Mr. Robles' old phone and its motive here for issue sanctions is unmistakably only for litigation advantage and not for the pursuit of truth.

As noted earlier, Defendant has complete control over its mobile application and its many versions and updates, including those that existed in 2016 through the present. The accessibility of the application itself is where the focus of this case lies; not on an old iPhone that is unlikely to have any information relevant to this case. Issue sanctions are wildly inappropriate and Defendant's request should be denied.

### G. Monetary Sanctions Are Not Warranted Because Mr. Robles Properly Responded to Defendant's Discovery and Was, and Is Still, Ready and Willing to Informally Resolve Any Claimed Issues

Defendant's request for $6,000 in monetary sanctions should be denied for the following reasons: (1) Mr. Robles' discovery responses were complete and accurate;

(2) Defendant waited more than three years before taking any action to pursue its objectionable and irrelevant request for an unfettered and intrusive inspection of Plaintiff's laptop and iPhone; (3) Mr. Robles was and remains ready and willing to meet and confer to resolve discovery issues, but Defendant, without good faith, rushed to file its late Motion; and (4) Defendant's Motion is a week late in contravention of the Court's Standing and Scheduling Orders.

### H. Defendant's Goal to Discredit Mr. Robles as a "Professional Plaintiff" is Contradicted by His History as a Good Faith Advocate for Accessibility for Himself and His Community

Domino's repeatedly resorts to trying to frame Mr. Robles negatively as a "serial litigant" and "professional plaintiff" for diligently enforcing his civil rights. These characterizations are not only irrelevant, but are also misplaced in light of Mr. Robles' committed advocacy on behalf of equal access for the blind. Mr. Robles' advocacy and his participation in this lawsuit is and has always been in good faith and are for altruistic reasons of achieving accessibility.

Mr. Robles is an active member of several blind advocacy organizations f and actively participates in the furtherance of accessibility for persons who are blind. (Robles Decl. ¶ 11.)  Mr. Robles first joined the American Council of the Blind ("ACB") via the California Council of the Blind ("CCB") in 1994 after attending workshops aimed at high school students. He started by translating the council's weekly newsletter from English to Spanish. (Robles Decl. ¶ 12.)  Since the ACB and CCB have been such an important support system for him, he became more deeply involved with its affiliates on a national level. (Robles Decl. ¶ 13.)

In 2012, Mr. Robles became involved with Blind Pride International, an affiliate within ACB geared toward the LGBTQ community and he was elected President of that affiliate on July 9, 2012. (Robles Decl. ¶ 14.) In September 2014, Mr. Robles attended meetings with the Greater Los Angeles Chapter of the CCB and served a partial term as secretary of this chapter. (Robles Decl. ¶ 15.) In 2018, he again ran for

the secretary position of the Greater Los Angeles Chapter of the CCB, and has served as secretary for this chapter since then. (Robles Decl. ¶ 16.) Mr. Robles has also served as co-chair of the Greater Los Angeles Chapter's fundraising committee where he managed the Chapter's written communication, public relations throughout California, and helped obtain sponsorship for the Chapter's major Fall fundraiser. (Robles Decl. ¶ 17.)

In June of 2016, Mr. Robles was appointed to the CCB Scholarship Committee, which considers and interviews blind applicants for merit-based college scholarships and has become an integral part of the committee by revamping the application process. (Robles Decl. ¶ 18.) In January of 2020, Mr. Robles was appointed as the chair of the CCB's Membership Committee and he is currently involved in member retention and outreach efforts, and building a "next generation" group for blind persons aged 21-50. (Robles Decl. ¶ 19.)  On June 20, 2020, Mr. Robles was elected to one of 9 director positions on the CCB Board of directors and is currently serving a two-year term. (Robles Decl. ¶ 20.)

Mr. Robles has closely followed his case against Dominos and has remained actively engaged, including by attending the oral argument of his case at the Pasadena branch of the Ninth Circuit Court of Appeals with a group of other visually impaired members of the CCB and National Federation of the Blind. (Robles Decl. ¶¶ 21-22.)

Defendant's efforts to smear Mr. Robles because he filed this lawsuit to improve accessibility for himself and other blind persons should not carry any weight in the determination of this Motion, especially because of his clearly good faith advocacy for himself and his community.

### III.   Conclusion

Because Defendant's Motion's September 28, 2020 hearing date falls after the discovery cutoff date of September 21, 2020, as specified in the Court's Scheduling Order (Doc. 89), Mr. Robles respectfully requests that Defendant's Motion to Compel

---

**OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**

be STRICKEN for untimeliness. Defendant's Motion should also be stricken for failure to meet and confer in good faith prior to filing this motion, in violation of Local Rule 37-2.4, when the parties had been in regular contact and discussing discovery matters.

Alternatively, Mr. Robles respectfully requests that Defendant's Motion to Compel and for Sanctions be DENIED in its entirety for the reasons set forth above.

Dated: September 15, 2020                    Respectfully Submitted,


                                             */s/ Joseph R. Manning, Jr., Esq.*
                                             Joseph R. Manning Jr., Esq.
                                             MANNING LAW, APC

                                             Eve L. Hill (*pro hac vice*)
                                             Jessica P. Weber (*pro hac vice*)
                                             BROWN, GOLDSTEIN & LEVY, LLP

                                             Attorneys for Plaintiffs

---

**OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**

15