1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   GREGORY F. HURLEY, Cal. Bar No. 126791
3  ghurley@sheppardmullin.com
   BRADLEY J. LEIMKUHLER, Cal. Bar No. 261024
4  bleimkuhler@sheppardmullin.com
   STACY M. DOMINGUEZ, Cal. Bar No. 279161
5  sdominguez@sheppardmullin.com
   650 Town Center Drive, 10th Floor
6  Costa Mesa, California 92626-1993
   Telephone:   714.513.5100
7  Facsimile:   714.513.5130

8  Attorneys for DOMINO'S PIZZA LLC

9

10                    UNITED STATES DISTRICT COURT

11           CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13 | GUILLERMO ROBLES,              | Case No. 2:16-cv-06599
                                    | Hon. Jesus G. Bernal
14 |           Plaintiff,
                                    | **DEFENDANT DOMINO'S PIZZA**
15 |     v.                         | **LLC'S MEMORANDUM OF**
                                    | **POINTS AND AUTHORITIES IN**
16 | DOMINO'S PIZZA LLC,            | **SUPPORT OF MOTION FOR**
                                    | **SUMMARY JUDGMENT**
17 |           Defendant.

18                                    Date:   October 26, 2020
                                      Time:   9:00 a.m.
19                                    Courtroom: 1

20

21                                    Action Filed:   September 1, 2016
                                      Trial Date:     December 8. 2020

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 2

    A.     Plaintiff's Allegations. ............................................................................. 2

    B.     Defendant Domino's Pizza, LLC .............................................................. 3

    C.     Procedural History. ................................................................................... 4

III.    ARGUMENT ....................................................................................................... 4

    A.     Plaintiff Cannot State A Claim For Violation Of The ADA Because He Cannot Establish A "Nexus" To An Actual, Physical Place That Is Owned, Operated, or Leased By Defendant In California................................................................................................ 4

        1.     Websites/Mobile Apps Are Not Places Of Public Accommodation........................................................................... 5

        2.     Plaintiff Must Establish a Nexus Between The Online Service And The Physical Place Owned, Operated, Or Leased By Defendant.................................................................. 7

        3.     Franchisors Do Not "Own, Lease, Or Operate" Places Of Public Accommodation Within The Meaning Of The ADA................................................................................................ 8

        4.     Plaintiff Admits He Was Not Denied Access To A Physical Location...................................................................... 10

    B.     Plaintiff Cannot Establish A Claim For Violation Of The UCRA On The Basis Of Intentional Discrimination. ....................................... 11

    C.     Plaintiff's Claims For Injunctive Relief Are "Moot". ......................... 14

    D.     To The Extent The Court Does Not Dismiss Plaintiff's State-Law Claims In Their Entirety, The Court Should Decline To Exercise Supplemental Jurisdiction Over Them................................. 16

IV.     CONCLUSION ................................................................................................. 21

SMRH:4844-1187-6812.1

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>Cases</u>

4

*Access Now, Inc. v. Southwest Airlines, Co.*

5
227 F. Supp. 2d 1312 (S.D. Fla. 2002), aff'd, 385 F.3d 1324 (11th
Cir. 2004) .................................................................................................. 6

6

*Acri v. Varian Assoc's, Inc.*

7
114 F.3d 999 (9th Cir. 1996) ................................................................... 17

8

*Anderson v. Macy's, Inc.*

9
2012 WL 3155717 (W.D. Pa. Aug. 2, 2012)............................................ 6

10

*Arguello v. Conoco, Inc.*

11
207 F.3d 803 (5th Cir. 2000) ................................................................... 10

12

*Belton v. Comcast Cable Holdings, LLC*

13
151 Cal.App.4th 1224 (2007) ............................................................ 12, 13

14

*Carnegie-Mellon Univ. v. Cohill*

15
484 U.S. 343 ( 1988) ................................................................................ 17

16

*Clark v. City of Lakewood*
259 F.3d 996 (9th Cir. 2001) ................................................................... 14

17

18

*Cortez v. National Basketball Association*
960 F.Supp. 113 (W.D. Tex. 1997) ......................................................... 10

19

*Cullen v. Netflix, Inc.*

20
880 F. Supp. 2d 1017 (N.D. Cal. 2012), aff'd, 600 Fed. Appx. 508

21
(9th Cir. 2015) .................................................................................... 5, 12

22

*Diaz v. Kroger Co.*

23
2019 WL 2357531 (S.D.N.Y. June 4, 2019)........................................... 15

24

*Earll v. eBay, Inc.*

25
2011 WL 3955485 (N.D. Cal. Sept. 7, 2011), *aff'd* 599 Fed. Appx.
695 (9th Cir. 2015) ......................................................................... 5, 12, 13

26

*Earll v. Ebay Inc.*

27
No. 5:11–CV–05:11–CV–00262–EJD, 2012 WL 6652444 (N.D.

28
Cal., Dec. 20, 2012), *aff'd.*, 599 F. ....................................................... 13

SMRH:4844-1187-6812.1

*Ford v. Schering-Plough Corp.*
  145 F.3d 601 (3d Cir. 1998) ......................................................................... 6

*Gasper v. Marie Callender Pie Shops*
  2006 U.S. Dist. LEXIS 96929 (C.D. Cal. 2006) ....................................... 14

*Gomez v. Bang & Olufsen Am., Inc.*
  2017 WL 1957182 (S.D. Fla. Feb. 2, 2017) ............................................. 11

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*
  742 F.3d 414 (9th Cir. 2014) ..................................................................... 12

*Grutman v. The Regents of the University of California*
  807 F.Supp.2d 861 (N.D. Cal. 2011) ................................................... 18, 19

*Gunther v. Lin*
  144 Cal.App.4th 223 (2006) ....................................................................... 19

*Harris v. Stonecrest Care Auto Ctr., LLC*
  472 F.Supp.2d 1208 (S.D. Cal. 2007) ........................................................ 17

*Jancik v. Redbox Automated Retail, LLC*
  2014 WL 1920751 (C.D. Cal. May 14, 2014) .............................................. 5

*Jankey v. Beach Hut*
  2005 WL 5517235 (C.D. Cal. 2005) ........................................................... 19

*Johnson v. Compton*
  2017 WL 1353801 (E.D. Cal. Apr. 10, 2017) .............................................. 9

*Kemper v. Sacramento Radiology Medical Group*
  2007 WL 2481938 (E.D. Cal. 2007) ........................................................... 18

*Koebke v. Bernardo Heights Country Club*
  36 Cal. 4th 824 (2005) .......................................................................... 12, 13

*Lemmons v. Ace Hardware Corp.*
  2014 WL 3107842 (N.D. Cal. July 3, 2014) ................................................ 9

*Lentini v. California Ctr. for the Arts, Escondido*
  370 F.3d 837 (9th Cir. 2004) ....................................................................... 9

*Long v. Playboy Enterprises Int'l, Inc.*
  No. LA CV11–02128 ................................................................................. 12

*Magee v. Coca-Cola Refreshments USA, Inc.*
    833 F.3d 530 (5th Cir. 2016) ..................................................................... 6

*Medical Society of New Jersey v. Herr*
    191 F.Supp.2d 574 (D.N.J. 2002)............................................................ 14

*Molski v. EOS Estate Winery*
    2005 WL 3952249 (C.D. Cal. 2005) ................................................. 19, 20

*Molski v. Hitching Post I Rest., Inc.*
    2005 WL 3952248 (C.D. Cal. 2005) ................................................. 19, 20

*Molski v. Kahn Winery*
    381 F.Supp.2d 1209 (C.D. Cal. 2005) ..................................................... 19

*Molski v. M.J. Cable, Inc.*
    481 F.3d 724 (9th Cir. 2007) ..................................................................... 4

*Molski v. Mandarin Touch Rest.*
    347 F.Supp.2d 860 (C.D. Cal. 2004) ....................................................... 20

*Molski v. Mandarin Touch Restaurants*
    359 F.Supp.2d 924 (C.D. Cal. 2005) ....................................................... 19

*Munson v. Del Taco, Inc.*
    46 Cal. 4th 661 (2009) ............................................................................. 12

*Neff v. American Dairy Queen Corporation*
    58 F.3d 1063 (5th Cir. 1995) ................................................................. 8, 9

*Noah v. AOL Time Warner, Inc.*
    261 F. Supp. 2d 532 (E.D. Va. 2003) ........................................................ 6

*Oliver v. Ralphs Grocery Co.*
    654 F.3d 903 (9th Cir. 2011) ..................................................... 15, 17, 18

*Ouellet v. Viacom*
    2011 WL 1882780 (D. Mont. Mar. 31, 2011) ........................................... 6

*Parker v. Metro. Life Ins. Co.*
    121 F.3d 1006 (6th Cir. 1997) ................................................................... 6

*Parr v. L&L Drive-Inn Restaurant*
    96 F.Supp.2d 1065 (D. Haw. 2000) ........................................................ 14

-iv-

*Peoples v. Discover Fin'l Services, Inc.*
 2009 WL 3030217 (E.D. Pa. 2009), aff'd 387 Fed. Appx. 179 (3d
 Cir. 2010) ............................................................................................... 6

*Pinnock v. Safino Designs, Inc.*
 2007 WL 2462107 (S.D. Cal. 2007) ................................................... 20

*Pona v. Cecil Whittaker's Inc.*
 155 F.3d 1034 (8th Cir. 1998) ............................................................ 10

*Price v. City of Ocala, Florida*
 375 F. Supp. 3d 1264 (M.D. Fla. 2019) .............................................. 11

*Price v. Everglades Coll., Inc.*
 2018 WL 3428156 (M.D. Fla. July 16, 2018) ...................................... 11

*Renne v. Geary*
 501 U.S. 312 (1991) ............................................................................ 14

*Rios v. New York & Co., Inc.*
 2017 WL 5564530 (C.D. Cal. 2017) ..................................................... 7

*Robles v. Domino's Pizza, LLC*
 913 F.3d 898 (9th Cir. 2019) ................................................................ 5

*Rodriguez v. Ralphs Grocery Company*
 2009 WL 1101550 (9th Cir. 2009) ...................................................... 17

*Sanford v. Del Taco*
 2006 WL 1310318 (E. D. Cal. 2006) ................................................... 19

*Singletary v. The Brick Oven Rest.*
 406 F.Supp.2d 1120 (S.D. Cal. 2005) ................................................. 20

*Strojnik v. Kapalua Land Co. Ltd.*
 2019 WL 4685412 (D. Haw. Aug. 26, 2019) *aff'd* 801 Fed. App'x.
 531 (9th Cir. 2020) .............................................................................. 11

*Strojnik v. Landry's, Inc.*
 2019 WL 7461681 (S.D. Tex. Dec. 9, 2019) ....................................... 15

*Turner v. Ass'n of Am. Med. Colleges*
 167 Cal. App. 4th 1401 (2008), *as modified on denial of reh'g* (Nov.
 25, 2008) ........................................................................................ 12, 13

-v-

*U.S. v. Days' Inn of Am.*
   1998 WL 461203 (E.D. Cal. Jan. 12, 1998) ........................................................ 10

*U.S. v. Days Inns of America*
   22 F.Supp.2d 612 (E.D. Kent. 1998) ................................................................... 10

*Wander v. Kaus*
   304 F.3d 856 (9th Cir. 2002) ............................................................................. 14

*Wentzka v. Gellman*
   991 F.2d 423 (7th Cir. 1993) ............................................................................. 17

*West v. Secretary of Dept. of Transp.*
   206 F.3d 920 (9th Cir. 2000) ............................................................................. 14

*Weyer v. Twentieth Century Fox Film Corp.*
   198 F.3d 1104 (9th Cir. 2000) ............................................................................. 5

*Wilson v. Costco Wholesale Corporation*
   426 F.Supp.2d 1115 (S.D. Cal. 2006) ................................................................ 17

*Young v. Facebook, Inc.*
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) .................................................... 6, 8, 10, 13

<u>Statutes</u>

28 U.S.C. § 1367(c) .................................................................................................. 16

28 U.S.C. § 1367(c)(2) ............................................................................................. 20

28 U.S.C. § 1367(c)(3) ............................................................................................. 18

42 U.S.C. § 12181(7) ............................................................................................. 5, 6

42 U.S.C. § 12182(a) ................................................................................................. 5

42 U.S.C. § 12188(a)(1) ......................................................................................... 14

Americans with Disabilities Act ("ADA") .......................................................*passim*

California Unruh Civil Rights Act ("UCRA") ...................................................*passim*

/ / /

/ / /

-vi-

<u>Other Authorities</u>

Defendant's website, www.dominos.com ................................................................. 1

F.R.C.P. Rule 8 ......................................................................................... 15

1   Defendant Domino's Pizza LLC ("Defendant") hereby submits its
2   memorandum of points and authorities in support of its motion for summary
3   judgment.

4   **I.   <u>INTRODUCTION</u>**

5   Plaintiff Guillermo Robles ("Plaintiff") brings this form lawsuit alleging that
6   Defendant's website, www.dominos.com (the "Website"), and Defendant's mobile
7   application (the "Mobile App"), are not accessible to him or the visually impaired.
8   Plaintiff and his counsel have filed numerous near-identical lawsuits against several
9   businesses in which similar allegations are made.  In his First Amended Complaint
10  ("FAC"), Plaintiff seeks injunctive relief pursuant to the Americans with Disabilities
11  Act ("ADA") and statutory damages pursuant to the California Unruh Civil Rights
12  Act ("UCRA") based on his alleged attempts to use Defendant's Website and
13  Mobile App.  Plaintiff's claims fail for several independent reasons.

14  *First*, under binding Ninth Circuit precedent, a plaintiff that alleges a
15  violation of the ADA, or a violation of the UCRA arising from a violation of the
16  ADA, based on unequal access to a website, must establish that there is a "nexus"
17  between the website (or mobile application) and a physical place of public
18  accommodation that the defendant owns, leases (or leases to), or operates to which
19  the plaintiff was denied access.  In this case, Defendant does not "own, lease, or
20  operate" any physical place of public accommodation in California.  Further,
21  Plaintiff admits that the Website and the Mobile App did not deny him access to any
22  physical location.  Therefore, Plaintiff cannot establish a violation of the ADA.

23  *Second*, a plaintiff who alleges a UCRA violation that is not based upon an
24  ADA violation must establish facts supporting a conclusion of "willful and
25  affirmative" discrimination against the plaintiff personally.  Defendant has not
26  "affirmatively and willfully" discriminated against Plaintiff.  To the contrary,
27  Plaintiff has merely asserted conclusory allegations that are not supported by any
28

1   evidence whatsoever.  As a result, Plaintiff's claim under the UCRA, to the extent it

2   is not entirely reliant upon the ADA, must also be dismissed.

3       *Third*, even if the ADA did apply to Defendant's Website and Mobile App,

4   Plaintiff's claims are "moot" because the Website and Mobile App are functional

5   and usable by screen reading software.  For example, it is possible for a screen

6   reader user to independently order a pizza from one of Defendant's franchise

7   locations through the Website or Mobile App.  Therefore, Plaintiff's claims under

8   the ADA should be dismissed as moot.

9       *Finally*, to the extent that the Court does not dismiss Plaintiff's UCRA cause

10  of action with prejudice, the Court should decline to exercise supplemental

11  jurisdiction over his UCRA claim.  The Ninth Circuit has repeatedly indicated that if

12  the basis for federal jurisdiction is lost before trial, then the case should be

13  dismissed in favor of the state court addressing the state-law claims.

14      In sum, Defendant respectfully requests the Court grant summary judgment in

15  its favor and against Plaintiff.

16  **II.**  **FACTUAL BACKGROUND**

17      **A.**  **Plaintiff's Allegations.**

18      Plaintiff and his counsel, who specialize in a litigation by the truck load

19  approach, allege that Plaintiff is a blind individual who uses screen-reading software

20  to use the internet on his computer and mobile applications on his iPhone.  (FAC at

21  ¶ 1).  Plaintiff alleges that Defendant has failed to design, construct, and maintain its

22  Website in compliance with screen reading software that is used by blind

23  individuals, such as Plaintiff, to access digital spaces.  (FAC at ¶¶ 2-3).

24  Specifically, Plaintiff claims that he was not able to access Defendant's Website

25  because it is not compatible with his JAWS screen reader and Defendant's Mobile

26  App is not compatible with Apple Corporation's VoiceOver software on his iPhone.

27  (FAC ¶¶ 10, 14, 19-20).  Plaintiff identifies a number of alleged "barriers" on

28  Defendant's Website that allegedly both prevented him from (1) testing the

1   Website's "compliance" with the ADA, and (2) ordering a pizza.  (FAC ¶¶ 36-37).

2   Plaintiff makes similar claims with respect to the Mobile App.  (FAC ¶ 44).

3        In other words, Plaintiff alleges that because Defendant's Website and Mobile

4   App are not functional and usable by his preferred screen reading software,

5   Defendant is liable for violating the ADA and UCRA.

6        **B.    Defendant Domino's Pizza, LLC**

7        Defendant is a limited liability company organized under the laws of the State

8   of Michigan, with its principal place of business in Ann Arbor, Michigan, which is

9   not open to the public.  (UMF[1] 1).  Defendant does not have an office in California

10  and does not own, operate, or lease any physical restaurant locations in California.

11  (UMF 2).  Instead, Defendant grants to independently owned and operated

12  franchisees the right to operate Domino's restaurant franchises pursuant to franchise

13  agreements.  Through this franchise model, Defendant licenses intellectual property

14  to independently owned and operated franchises.  (UMF 3).   All "Domino's"

15  locations in California are independently owned and operated by franchisees.  (UMF

16  4).  Defendant does not own, lease, or operate any franchised locations in California,

17  nor is Defendant involved in any individual real estate transactions.  (UMF 5).

18  Defendant does not maintain control, or have the right to control, the day-to-day

19  operations of the independently owned and operated Domino's franchisees or

20  control whether they meet the accessibility standards of the ADA. (UMF 6).  All

21  independently owned and operated franchisees maintain their own restaurant

22  locations and are solely responsible for enforcing policies related to accessibility at

23  their own locations.  (UMF 7).  All of the foregoing was true in 2015 and has

24  remained true through the present.  (UMF 8).

25

26  ———————————

27  [1] All references to "UMF" are "Undisputed Material Facts" as set forth in
    Defendant's concurrently filed Separate Statement of Uncontroverted Facts.
28

**C.   Procedural History.**

Plaintiff filed this action on September 1, 2016.  (Dkt. 1).  In February 2017, Defendant moved to dismiss Plaintiff's claims principally on the grounds that his lawsuit should be dismissed pursuant to the primary jurisdiction doctrine because the U.S. Department of Justice has not issued any technical standards for how websites (or mobile applications) should be designed in order to provide the requisite level of accessibility to individuals with disabilities.  On March 20, 2017, Hon. S. James Otero granted Defendant's motion, agreeing with Defendant that requiring Defendant to program its website in compliance with certain technical standards "flies in the face of due process."  (Dkt. 42 at 8).

Plaintiff appealed, and the Ninth Circuit reversed, on the grounds that Defendant's obligations (if any) under the ADA were subject to a flexible standard.  (Dkt. 49 at 18).  On June 14, 2019, Plaintiff filed his FAC.  (Dkt. 66).  In his FAC, Plaintiff removed references to compliance with the third party accessibility standards that Judge Otero (and the Ninth Circuit) found problematic.  (*Compare* FAC with Dkt. 1 (*e.g.* Dkt 1 at ¶ 33).  Defendant now brings this motion for summary judgment.

## III.   ARGUMENT

**A.   Plaintiff Cannot State A Claim For Violation Of The ADA Because He Cannot Establish A "Nexus" To An Actual, Physical Place That Is Owned, Operated, or Leased By Defendant In California.**

To prove a valid claim for a violation of the ADA, Plaintiff must establish that "(1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of h[is] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

Of significance here is that the ADA only addresses access to a "place of public accommodation" as defined by the statute itself.  Title III of the ADA

1  provides that: "[n]o individual shall be discriminated against on the basis of

2  disability in the full and equal enjoyment of the goods, services, facilities,

3  privileges, advantages, or accommodations of any place of public accommodation

4  by any person who owns, leases (or leases to), or operates a place of public

5  accommodation.") 42 U.S.C. § 12182(a).

6      Title III defines the term "public accommodation" by listing twelve specific

7  categories of private businesses that are covered. 42 U.S.C. § 12181(7). The

8  implementing regulations issued by the DOJ combine these provisions and define

9  the term "public accommodation" to mean "a private entity that owns, leases (or

10  leases to), or operates a place of public accommodation," and then, in turn define

11  "place of public accommodation" to mean "a facility, operated by a private entity,

12  whose operations affect commerce and fall within at least one of the" categories

13  specifically listed in § 12181(7). 28 C.F.R. § 36.104.

14      1.   Websites/Mobile Apps Are Not Places Of Public Accommodation.

15      The Ninth Circuit has interpreted the ADA's definition of "place of public

16  accommodation" to be an actual, physical place. *See Weyer v. Twentieth Century*

17  *Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (concluding that places of

18  public accommodation are "actual, physical places"); *Robles v. Domino's Pizza,*

19  *LLC*, 913 F.3d 898, 905 (9th Cir. 2019) (same).

20      In this Circuit, it is well-established that websites by themselves are not

21  places of public accommodation. *See, e.g., Earll v. eBay, Inc.*, 2011 WL 3955485

22  (N.D. Cal. Sept. 7, 2011), *aff'd* 599 Fed. Appx. 695 (9th Cir. 2015) (dismissing

23  ADA/UCRA claim by deaf individual because ebay.com was not an actual, physical

24  place); *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1023-24 (N.D. Cal. 2012)

25  (streaming video library was a website, not an actual physical place, and under

26  judicial precedent, it was not a place of public accommodation under the ADA),

27  *aff'd*, 600 Fed. Appx. 508 (9th Cir. 2015); *Jancik v. Redbox Automated Retail, LLC*,

28  2014 WL 1920751, *8 (C.D. Cal. May 14, 2014) ("In short, Redbox Digital's

1   website, which offers Redbox Instant, is not a "place of public accommodation."

2   and dismissing Plaintiff's ADA, Unruh, and DPA claims that were premised upon

3   Redbox's website); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1115-16 (N.D.

4   Cal. 2011) (finding that Facebook was not a place of public accommodation in Title

5   III claim by mentally disabled plaintiff alleging failure to provide reasonable

6   customer service upon deactivation of her account); *Ouellet v. Viacom*, 2011 WL

7   1882780, *5 (D. Mont. Mar. 31, 2011) ("Absent allegations that a website impedes

8   the plaintiff's 'access to a specific, physical, concrete space[,]' and absent

9   allegations establishing a nexus between a website and a physical place of public

10  accommodation, a plaintiff's allegations fail to state a claim upon which relief could

11  be granted."); *Peoples v. Discover Fin'l Services, Inc.*, 2009 WL 3030217, *2 (E.D.

12  Pa. 2009) (services available on internet website must have some connection to a

13  physical place of accommodation to fall within ADA's 'place of public

14  accommodation' requirement), aff'd 387 Fed. Appx. 179 (3d Cir. 2010); *Noah v.

15  AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 545 (E.D. Va. 2003) (AOL's chat

16  rooms are not places of public accommodation subject to ADA); *Access Now, Inc. v.

17  Southwest Airlines, Co.*, 227 F. Supp. 2d 1312, 1321 (S.D. Fla. 2002) (website

18  consisted of no particular geographical location and, therefore, www.southwest.com

19  was not a place of public accommodation like a ticket counter or travel agency),

20  aff'd, 385 F.3d 1324, 1329 (11th Cir. 2004); *Anderson v. Macy's, Inc.*, 2012 WL

21  3155717, at *4 (W.D. Pa. Aug. 2, 2012) ("Since a website is not a physical

22  accommodation, the Title III claim against Macy's Online must be dismissed.");

23  *Ford v. Schering-Plough Corp.* 145 F.3d 601, 612-14 (3d Cir. 1998)  (holding that

24  "public accommodation" does not refer to non-physical access); *Parker v. Metro.

25  Life Ins. Co*. 121 F.3d 1006, 1013-14 (6th Cir. 1997) ("The clear connotation of the

26  words in § 12181(7) is that a public accommodation is a physical place."); *see also

27  Magee v. Coca-Cola Refreshments USA, Inc*. 833 F.3d 530, 534 (5th Cir. 2016)

28  (concluding that vending machines are not places of public accommodation because

-6-

the ADA definition of public accommodation only includes actual physical spaces open to the public).

> 2. Plaintiff Must Establish a Nexus Between The Online Service And The Physical Place Owned, Operated, Or Leased By Defendant.

Based on the foregoing authority, courts in this District have concluded that "a plaintiff may challenge the online services provided by a brick-and-mortar store," only if there is a "nexus between the online services and the physical place." *Rios v. New York & Co., Inc.*, 2017 WL 5564530, *3 (C.D. Cal. 2017).

For instance, in *Thurston v. FCA US LLC*, the District Court dismissed the complaint because plaintiff could not demonstrate that defendant owned and operated a physical place of public accommodation in California. 2018 WL 700939 at *5 (C.D. Cal. Jan. 26, 2018).  In other words, the plaintiff failed toe establish the required "nexus" between the allegedly offending online service and an actual, physical place in California.

In *Thurston*, plaintiff alleged, based on "information and belief," that defendant "owns and operates car dealership locations in California" which are "places of public accommodation." *Id*. at *4. However, the plaintiff alleged no facts demonstrating that she had any basis for her "information and belief." *Id*. The Court noted that, "if [p]laintiff had conducted even a cursory investigation of publicly available sources, she would have easily discovered that [d]efendant is not licensed as either a lessor/retailer of automobiles or as an automobile dealer/broker, and, thus, [d]efendant is not the owner of any dealerships in California." *Id*. Accordingly, the Court held that plaintiff failed to plead a sufficient nexus because she failed to demonstrate that there was any "reasonable basis" for her "belief" that defendant owned and operated dealerships in California, and thus "failed to plausibly demonstrate that [d]efendant owns and operates a place of public accommodation." *Id*.  Accordingly, the Court concluded that Plaintiff's ADA claim must be dismissed.

SMRH:4844-1187-6812.1

In *Young v. Facebook, Inc.*, the plaintiff similarly contended that Facebook's website had a sufficient nexus to a physical place of public accommodation because Facebook sold its gift cards in various retail stores across the country, and the alleged discrimination on Facebook's website deprived plaintiff of full and equal access to the goods and services provided by Facebook through physical retail stores. 790 F. Supp. 2d at 1115. The District Court rejected this claim because the ADA explicitly provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation *by any person who owns, leases (or leases to) or operates* a place of public accommodation." *Id.* (emphasis in original). In particular, the Court observed that "[w]hile the retail stores that sell Facebook gift cards may be places of accommodation, [plaintiff] does not allege that Facebook, Inc. "owns, leases (or leases to) or operates" those stores" and "Facebook's internet services thus do not have a nexus to a physical place of public accommodation for which Facebook may be liable under the statute." *Id.* at 1116.

In this case, Plaintiff alleges that he is a resident of Los Angeles, County. (FAC at ¶ 10).  Therefore, to the extent he was attempting to order a pizza from a Domino's Pizza location, he would have been obtaining that pizza from a Domino's Pizza franchisee.  (UMF 9).

> 3.    Franchisors Do Not "Own, Lease, Or Operate" Places Of Public Accommodation Within The Meaning Of The ADA.

Under well-established law, franchisors cannot be held liable for alleged ADA violations because they do not "own, lease, or operate" places of public accommodation within the meaning of the ADA.  The following cases are instructive.  The seminal case on franchisor liability under the ADA is *Neff v. American Dairy Queen Corporation*, 58 F.3d 1063 (5th Cir. 1995).  In *Neff,* the plaintiff, a wheelchair user, filed suit against American Dairy Queen Corporation

Case No. 2:16-cv-06599
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

("ADQ") alleging that various Dairy Queen stores in San Antonio contained architectural barriers in violation of the ADA.  ADQ moved for summary judgment on the grounds that, as a franchisor, it did not "own, operate, or lease" the San Antonio stores – it merely licensed franchisees to establish and operate Dairy Queen retail stores nationwide – and thus could not be held liable under the ADA.  *Id.* at 1064.  In response, the plaintiff contended that ADQ retained sufficient control over the operation of the San Antonio stores through its franchise agreement to make it an "operator" within the meaning of the ADA.  *Id.* at 1065.  On appeal, the Fifth Circuit upheld the district court's summary judgment order in favor of ADQ.  The Fifth Circuit framed the issue as "whether ADQ specifically controls the modification of the franchises to improve their accessibility to the disabled" and "remove[] existing architectural barriers."  *Id.* at 1066, 1068.  The Fifth Circuit held that "while the terms of the…franchise agreement demonstrate that ADQ retains the right to set standards for building and equipment maintenance and to 'veto' proposed structural changes, we hold that this supervisory authority, without more, is insufficient to support a holding that ADQ 'operates,' in the ordinary and natural meaning of that term, the…stores."  *Id.* at 1068-1069.

The Ninth Circuit has interpreted the term "to operate" as "to put or keep in operation," "to control or direct the functioning of," or "to conduct the affairs of; manage." *Lentini v. California Ctr. for the Arts, Escondido,* 370 F.3d 837, 849 (9th Cir. 2004).  Importantly, the Ninth Circuit relied on the Fifth Circuit's approach in *Neff*, in defining the term "to operate." *Lentini,* 370 F.3d at 849 ("We agree with the Fifth Circuit's guidelines for defining the scope of the verb "to operate" in this context.").  District Courts in California have relied on *Neff* and *Lentini* to dismiss ADA lawsuits brought against the franchisor instead of the franchisee.  *E.g. Lemmons v. Ace Hardware Corp.*, 2014 WL 3107842, *6-7 (N.D. Cal. July 3, 2014) (dismissing ADA claims against Ace Hardware as franchisor of physical location alleged to have barriers to access); *Johnson v. Compton*, 2017 WL 1353801 (E.D.

Cal. Apr. 10, 2017) (dismissing ADA claims against franchisor at place of business operated by franchisee); *U.S. v. Days' Inn of Am.*, 1998 WL 461203, at *1 (E.D. Cal. Jan. 12, 1998) (plaintiffs could not hold the franchisors liable for ADA violations at the franchisees' places of business); *see also Arguello v. Conoco, Inc.*, 207 F.3d 803 (5th Cir. 2000) (franchisor not liable under agency theory for discriminatory conduct of franchisees at branded locations); *Cortez v. National Basketball Association*, 960 F.Supp. 113 (W.D. Tex. 1997) (NBA does not "operate" for ADA purposes individual team arenas despite existence of NBA Facility Standard guidelines*); U.S. v. Days Inns of America*, 22 F.Supp.2d 612, 616 (E.D. Kent. 1998) (franchisor not liable for ADA violations at franchisee locations because it did not own, operate, or lease the subject properties; to be potentially liable, "the franchisor must in some way actually cause the franchisee to comply or not comply with the ADA"); *Pona v. Cecil Whittaker's Inc.*, 155 F.3d 1034, 1036 (8th Cir. 1998) ("CW…as franchisor of the pizzeria, did not own, lease, or operate the pizzeria, and therefore cannot be liable under the ADA")

Here, as in *Thurston* and *Young*, as a matter of law, Plaintiff has not proven (and cannot prove) a nexus between the Website and a physical place of public accommodation owned, leased, leased to, or operated by Defendant in California to which Plaintiff was allegedly denied access.  Indeed, Defendant does not own, lease, lease to, or operate any brick-and-mortar retail stores in California.  (UMF 1-8).

This omission is fatal to Plaintiff's claims and warrants the entry of summary judgment on his ADA claim and his UCRA claim to the extent it is premised upon a violation of the ADA.

> 4.    Plaintiff Admits He Was Not Denied Access To A Physical Location.

Plaintiff's claim also fails because he has admitted that Defendant's Website and Mobile App did not deny him access to an actual, physical location.  (UMF 10, 11).  This is similarly fatal to his claim.

Applying the "nexus" rule, many courts have also recognized that "there is a critical distinction 'between an inability to use a website to gain information about a physical location and an inability to use a website that impedes access to enjoy a physical location.'" *Strojnik v. Kapalua Land Co. Ltd.*, 2019 WL 4685412, *7 (D. Haw. Aug. 26, 2019) *aff'd* 801 Fed. App'x. 531 (9th Cir. 2020).  The *Kapalua Land* Court held the former "insufficient to state a claim" under the ADA.  *Id*.; *see also Price v. City of Ocala, Florida,* 375 F. Supp. 3d 1264, 1271-72 (M.D. Fla. 2019) ("When considering whether there is a nexus, courts distinguish between 'an inability to use a website to gain information about a physical location and an inability to use a website that impedes access to enjoy a physical location,' with only the latter being sufficient to state a claim."); *Price v. Everglades Coll., Inc.*, 2018 WL 3428156, at *2 (M.D. Fla. July 16, 2018) (dismissing claim against website where "the Plaintiff alleges only facts indicating that his ability to gain information about the location, rather than his access to enjoyment of the university itself, was compromised."); *Gomez v. Bang & Olufsen Am., Inc*., 2017 WL 1957182, at *4 n.3 (S.D. Fla. Feb. 2, 2017) ("Plaintiff's grievance seems to be that Defendant's website does not provide a blind person with the same online-shopping experience as non-disabled persons.  However, the ADA does not require places of public accommodations to create full service websites for disabled persons. . . . All the ADA requires is that, if a retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-mortar store").

In this case, Plaintiff has admitted that neither the Website, nor the Mobile App, impeded his access to any brick-and-mortar restaurant locations.  (UMF 10, 11).  As a result, his ADA claim fails for this additional reason.

**B.**    **Plaintiff Cannot Establish A Claim For Violation Of The UCRA On The Basis Of Intentional Discrimination.**

Plaintiff is thus left with an UCRA claim that is untethered from the ADA. Such a violation of the UCRA (independent of an ADA claim) may be maintained

-11-

Case No. 2:16-cv-06599

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1    only where a plaintiff pleads and proves "intentional discrimination in public

2    accommodations in violation of the terms of the UCRA." *Munson v. Del Taco, Inc.*,

3    46 Cal. 4th 661, 668 (2009) (quoting *Harris v. Capital Growth Investors XIV*, 52

4    Cal. 3d 1142 (1991); *Long v. Playboy Enterprises Int'l, Inc.*, No. LA CV11–02128

5    JAK (AJWx), 2012 WL 12869314, at *3 (C.D. Cal. Mar. 7, 2012), *aff'd*, 565 F.

6    App'x. 646 (9th Cir. 2014).

7          The California Supreme Court has repeatedly confirmed that the UCRA

8    contemplates "willful, affirmative misconduct on the part of those who violate the

9    UCRA" and that a plaintiff must allege more than the "disparate impact" of a

10   facially neutral policy on a particular group.  *Koebke v. Bernardo Heights Country*

11   *Club*, 36 Cal. 4th 824, 853-854 (2005).  "A policy that is neutral on its face is not

12   actionable under the Unruh Act, even when it has a disproportionate impact on a

13   protected class." *Turner v. Ass'n of Am. Med. Colleges,* 167 Cal. App. 4th 1401,

14   1408 (2008), *as modified on denial of reh'g* (Nov. 25, 2008); *Belton v. Comcast*

15   *Cable Holdings, LLC*, 151 Cal.App.4th 1224 (2007) (Comcast's policy, which was

16   neutral on its face, was not actionable despite the disproportionate impact on blind

17   people, because the Unruh Act required willful, affirmative misconduct); *see also*

18   *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742

19   F.3d 414 (9th Cir. 2014) (Although hearing-impaired individuals bore the brunt of

20   CNN's neutral policy of not captioning videos, the Ninth Circuit concluded that the

21   disparate impact was insufficient to support an Unruh Act claim as a matter of law.);

22   *Earll v. eBay, Inc.*, 2011 WL 3955485 (N.D. Cal. Sept. 7, 2011), *aff'd* 599 Fed.

23   Appx. 695 (9th Cir. 2015) (allegations were either conclusory, and therefore, lacked

24   the requisite factual support to make out a claim for intentional discrimination, or,

25   even if true, did not imply that eBay was unwilling or unable to remedy the situation

26   and therefore, Unruh Act claim failed as a matter of law); *Cullen v. Netflix, Inc.,* 880

27   F.Supp.2d 1017 (N.D. Cal. 2012) (holding plaintiff failed to state an Unruh Act

28   claim by alleging that Netflix failed to "caption a meaningful amount of its

-12-

streaming library" because such conduct was not "willful, affirmative misconduct");
*Young v. Facebook,* 790 F.Supp.2d 1110 (N.D. Cal. 2011) (holding that plaintiff
failed to state an Unruh Act claim by alleging that Facebook's customer service
system was difficult for her to use due to her bipolar disorder because Facebook's
customer service system treated all users in the same cold, automated way).

Here, Plaintiff fails to sufficiently plead intentional discrimination. Instead,
like the plaintiff in *eBay*, Plaintiff merely alleges that intentional discrimination is
established because Defendant has constructed a website that is inaccessible to
Plaintiff, Defendant maintains the website in an inaccessible form, and Defendant
has failed to take actions to correct these barriers.  (FAC at ¶ 57).

Anyone can use screen reading software in the same way that anyone can read
captions on a website.  Even if Defendant's Website is not compatible with screen
reading software or is maintained in an inaccessible format (which Defendant
denies), these allegations do not establish intentional or willful misconduct as the
Website is presented to all individuals in the same format, regardless of the viewer's
sight.  While Plaintiff may allege that the uniform website policy has a disparate
impact on blind individuals, allegations of disparate impact are insufficient to
support an UCRA claim.  *E.g. Koebke,* 36 Cal.4th at 853-854; Turner, 167 Cal. App.
4th at 1408; *see also Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App.
1224 (2007).

Moreover, Plaintiff's allegations are conclusory statements that is
unsupported by any facts in the Complaint. *See generally* FAC.  However, as
discussed above, even if Defendant had knowledge of the alleged defects and their
disparate impact, such knowledge is insufficient to give rise to an UCRA violation.
*E.g. Earll v. Ebay Inc.*, No. 5:11–CV–05:11–CV–00262–EJD, 2012 WL 6652444
(N.D. Cal., Dec. 20, 2012), at *3 (finding that Defendant's failure to "register
Plaintiff as a seller even after meeting her is not, without more, sufficient to
constitute the 'willful, affirmative misconduct' required to state a claim of

-13-

1  intentional discrimination under the Unruh Act"), *aff'd.*, 599 F. App' x. 695, 696
2  (9th Cir. 2015).

3       After discovery, Plaintiff has not established any facts that would support an
4  inference of "intentional" discrimination that would support an independent claim
5  under UCRA.  Accordingly, Plaintiff's claims concerning Defendant's facially
6  neutral website design are insufficient to state a claim pursuant to the UCRA.
7  Therefore, Defendant is entitled to summary judgment on his UCRA claim as well.

8      **C.**    **Plaintiff's Claims For Injunctive Relief Are "Moot".**

9       Mootness is a jurisdictional defect that can be raised at any time by the parties
10  or the court *sua sponte*.  *Parr v. L&L Drive-Inn Restaurant*, 96 F.Supp.2d 1065,
11  1087 (D. Haw. 2000).  A case is moot when "the issues presented are no longer
12  'live' or the parties lack a legally cognizable interest in the outcome."  *Clark v. City*
13  *of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001).  "The question is whether there
14  can be any effective relief."  *West v. Secretary of Dept. of Transp.*, 206 F.3d 920,
15  925 (9th Cir. 2000).  "Past exposure to illegal conduct does not in itself show a
16  present case or controversy . . . if unaccompanied by any continuing, present
17  adverse effects."  *Renne v. Geary*, 501 U.S. 312, 320-21 (1991).  "This requisite
18  ensures that the courts are able to grant effective relief, rather than rendering
19  advisory opinions."  *Medical Society of New Jersey v. Herr*, 191 F.Supp.2d 574, 581
20  (D.N.J. 2002).

21       "The only remedy available for a violation of the Americans with Disabilities
22  Act under a private right of action is injunctive relief.  Accordingly, if no ADA
23  violations exist at the time the court is asked to provide injunctive relief, the ADA
24  claim is moot because there is no basis for relief and there is nothing for the court to
25  order the facility to change."  *Gasper v. Marie Callender Pie Shops*, 2006 U.S. Dist.
26  LEXIS 96929, *4 (C.D. Cal. 2006); *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir.
27  2002) ("Damages are not recoverable under Title III of the ADA—only injunctive
28  relief is available for violations of Title III."); 42 U.S.C. § 12188(a)(1).

-14-

1    The "mootness" doctrine has been extended to actions involving alleged

2  website barriers under the ADA.  *E.g., Diaz v. Kroger Co.*, 2019 WL 2357531, *4

3  (S.D.N.Y. June 4, 2019) ("Rather, the Court believes that ADA cases involving

4  websites are subject to the same mootness standard as their "structural"

5  counterparts."); *Strojnik v. Landry's, Inc.*, 2019 WL 7461681, *3-4 (S.D. Tex. Dec.

6  9, 2019) (dismissing plaintiff's claims that the website for a hotel failed to provide

7  information sufficient for him to assess accessibility where website complaints had

8  been remedied); *see also Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 909 fn. 7 (9th

9  Cir. 2011), the Ninth Circuit confirmed that a plaintiff must identify all alleged

10  access barriers in his complaint in order to give the defendant fair notice under

11  F.R.C.P. Rule 8.

12    In this case, Defendant's Website and Mobile App are presently usable and

13  functional by persons using screen readers.  Individuals using screen readers are

14  able to order a pizza from a Domino's franchise using either the Website or the

15  Mobile App.  (UMF 12, 13).  None of the alleged barriers purportedly found by

16  Plaintiff's expert in May of 2019 are present on the Website currently or are, in fact,

17  not barriers to screen reader users.  (UMF 14).  In addition, Defendant actively

18  ensures that its Website and Mobile App are accessible to screen reader users by

19  continuously incorporating accessibility features into its constantly changing

20  Website and Mobile App.  (UMF 15).

21    As part of its further effort to accommodate its blind and visually impaired

22  customers, Defendant's Website contains an accessibility banner that direct users

23  who access the website or mobile application with a statement that "If you are using

24  a screen reader and are having problems using this website please call for

25  assistance" and provides a number.  (UMF 16).  This statement is able to be read by

26  screen readers.   (UMF 17).  If a blind individual calls that number, the person can

27  provide assistance with Defendant's website.  (UMF 18).

28

1    Therefore, Plaintiff's claim for injunctive relief is "moot" and his ADA claim

2 should be dismissed.

3    **D.     To The Extent The Court Does Not Dismiss Plaintiff's State-Law**

4 **Claims In Their Entirety, The Court Should Decline To Exercise Supplemental**

5 **Jurisdiction Over Them.**

6    To the extent the Court does not dismiss all of Plaintiff's state-law claims

7 with prejudice, then the Court should decline supplementary jurisdiction over them.

8    Under 28 U.S.C. § 1367(c), courts may properly exercise their discretion to

9 decline supplemental jurisdiction if *any* of four statutory grounds exist:

10    "(1) the claim raises a novel or complex issue of State law,

11    (2) the claim substantially  predominates over the claim or

12    claims over which the district court has original jurisdiction,

13    (3) the district court has dismissed all claims over which it has

14    original jurisdiction, or

15    (4) in exceptional circumstances, there are other compelling

16    reasons for declining jurisdiction."

17 28 U.S.C. § 1367(c).

18    As explained below, in this case, at least three of four statutory grounds exist

19 for declining supplemental jurisdiction.

20    **1.     Dismissal Of Plaintiff's ADA Claim Warrants Dismissal Of**

21    **His State-Law Claim**.

22    As the Supreme Court has instructed, once the federal claims are dismissed,

23 courts should decline supplemental jurisdiction over related state-law claims:

24    "[I]n  the usual case in which all federal-law claims are

25    eliminated before trial, the balance of factors to be considered

26    under the pendent jurisdiction doctrine judicial economy,

27    convenience, fairness, and comity will point toward declining

28    to exercise jurisdiction over the remaining state-law claims."

-16-

1   *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, fn. 7 ( 1988); *Wentzka v.*

2   *Gellman*, 991 F.2d 423, 425 (7th Cir. 1993) ("[W]e said quite clearly that, where a

3   federal claim drops out before trial a district court should not retain the state law

4   claims absent extraordinary circumstances"); *Acri v. Varian Assoc's, Inc.,* 114 F.3d

5   999, 1001 (9th Cir. 1996) ("The Supreme Court has stated, and we have often

6   repeated, that 'in the usual case in which all federal-law claims are eliminated before

7   trial, the balance of factors ... will point toward declining to exercise jurisdiction

8   over the remaining state-law claims'").

9       In ADA cases, courts properly and routinely decline supplemental jurisdiction

10   over related state-law access  claims once the ADA cause of action  has been

11   dismissed. *See, e.g., Wilson v. Costco Wholesale Corporation,* 426 F.Supp.2d 1115,

12   1124 (S.D. Cal. 2006)("Because the Court has dismissed all claims over which it has

13   original jurisdiction in this matter, the Court will decline to exercise supplemental

14   jurisdiction over Plaintiffs' remaining state law claims"); *Harris v. Stonecrest Care*

15   *Auto Ctr., LLC,* 472 F.Supp.2d  1208,  1220 (S.D.  Cal. 2007) (same).

16       For example, in *Rodriguez v. Ralphs Grocery Company,* 2009 WL 1101550

17   (9th Cir. 2009), the Ninth Circuit stated that "if the federal claim is dismissed for

18   lack of subject matter jurisdiction, a district court has no discretion to retain the

19   supplemental claims  for adjudication, and must dismiss the state law claims without

20   prejudice." *Id.* at 2.

21       Likewise, in *Oliver v. Ralphs Grocery Company*, 654 F.3d 903 (9th Cir.

22   2011), the Ninth Circuit upheld the district court decision to decline supplemental

23   jurisdiction over the plaintiff's state-law access claims once his ADA claim had

24   been dismissed:

25           "We  finally turn to [Plaintiff's] argument that the district court

26           erred  in declining to exercise supplemental jurisdiction over his

27           state  law claims.  By granting summary judgment to Ralphs

28           and Cypress Creek  on [Plaintiff']'s ADA claim, the district

-17-

Case No. 2:16-cv-06599

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1    court, properly disposed of all claims over which it had original

2    jurisdiction.  Because the balance of the factors  of judicial

3    economy, convenience, fairness, and comity did not tip in favor

4    of retaining the state law claims after the dismissal of the ADA

5    claim, *San-ford v. MemberWorks,  Inc.,* 625 F.3d 550, 561 (9th

6    Cir. 2010) ...the district court did not abuse  its discretion in

7    dismissing [Plaintiff]'s state law claims without  prejudice."

8 *Id.* at 911.

9    The reasoning behind these cases is that dismissing the state-law claims

10 promotes the values of comity and fairness.  *See, e.g., Kemper v. Sacramento*

11 *Radiology Medical Group,* 2007 WL 2481938, *6 (E.D. Cal. 2007) ("The *Gibbs*

12 values of comity and fairness do not weigh in favor of the federal court deciding

13 Plaintiffs' state disability and damage claims.  Accordingly, the court declines to

14 continue exercising supplemental jurisdiction over  Plaintiffs' remaining state law

15 claims and therefore these are dismissed under 28 U.S.C. §1367(c)(3)"); *Oliver v.*

16 *Ralphs Grocery Company,* 654 F.3d 903, 911 (9th Cir.  2011) (same).

17    **2.    Plaintiff's State-Law Claim Raises Novel And Complex**

18    **Issues Of State Law.**

19    Courts have recognized that claims under the Unruh Act raise novel and

20 complex issues of state law, providing another basis to decline supplemental

21 jurisdiction.  For example, in *Grutman v. The Regents of the University of*

22 *California,* 807 F.Supp.2d  861 (N.D. Cal. 2011), the court explained that the way in

23 which damages are calculated presents novel and complex issues of state law:

24    "Here, the Court declines to exercise  supplemental jurisdiction

25    because Plaintiffs claim  raises novel and difficult  questions of

26    state law, the resolution of which will have signification

27    implications for enforcement of the [California Unruh Civil

28    Rights Act].  In particular, the results of this and similar

-18-

> litigation will be dramatically different depending on whose
> interpretation of Section 52(a) the Court adopts...neither the
> case law nor the legislative  history offered  by Defendant as to
> the 2008 amendment require that the Court find that a plaintiff
> who encounters architectural barriers  on a daily basis in her
> residence should  be treated differently from plaintiffs who
> encounter architectural barriers, over a series of visits, to other
> types of business establishments.  The court notes also that the
> tension between *Doran* and *Botosan* as to whether daily
> damages are available under Section 52 is salient in this case ...
> under these circumstances, the Court concludes that this is a
> matter of state law that is better  left to the California courts to
> decide."

*Id.* at 870.

Numerous district courts have recognized that unresolved state-law issues are a proper basis to decline to exercise supplemental jurisdiction.  *See, e.g., Molski v. EOS Estate Winery,* 2005 WL 3952249 (C.D. Cal. 2005);  *Jankey v. Beach Hut,* 2005 WL 5517235 (C.D. Cal. 2005); *Molski v. Hitching Post I Rest., Inc.,* 2005 WL 3952248 (C.D. Cal. 2005); *Molski v. Mandarin Touch Restaurants,* 359 F.Supp.2d 924 (C.D. Cal. 2005); *Molski v. Kahn Winery,* 381 F.Supp.2d 1209 (C.D. Cal. 2005); *Sanford v. Del Taco,* 2006  WL 1310318 (E. D. Cal. 2006).

### 3.   <u>Plaintiff's State-Law Claim Substantially Predominates Over His ADA Claim.</u>

Likewise, courts have recognized that a plaintiff's state-law claim for monetary damages substantially predominate over his claim for injunctive relief under the ADA, providing yet another ground for declining supplemental jurisdiction.  "State law claims have become the tails that wag the dog of federal ADA litigation." *Gunther v. Lin,* 144 Cal.App.4th 223, 256 (2006).   "[E]nterprising

-19-

Case No. 2:16-cv-06599
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1   plaintiffs (and their attorneys) have found a way to circumvent the will of Congress

2   by seeking money damages while retaining federal   jurisdiction." *Molski v.*

3   *Mandarin Touch Rest.,* 347 F.Supp.2d 860, 862-63 (C.D. Cal. 2004).   As explained

4   by one district court:

5           "While Plaintiff has pleaded a federal  claim  as a jurisdictional

6           hook to maintain the action in federal  court, the case centers on

7           Plaintiff's claim for damages which are recoverable only under

8           the state law claims…Even though  Plaintiffs have submitted a

9           notice of voluntary  limitation  of damages, seeking  only an

10          award  of $4,000  to Molski and $1,000  to [co-plaintiff  that is

11          an association], it is still clear that the claim for damages is the

12          predominant focus of this lawsuit.  Further, since the state law

13          claims  provide for injunctive relief, the federal  claim adds

14          nothing  to the lawsuit  that could  not be obtained  in Superior

15          Court.  Accordingly, Plaintiffs' state law claims  substantially

16          predominate over the federal  ADA claim."

17  *Molski v. EOS Estate Winery,* 2005 WL 3952249, *4 (C.D.  Cal. 2005).

18          For these reasons, courts decline to exercise supplemental  jurisdiction.  *See,*

19  *e.g., Pinnock v. Safino Designs, Inc.,* 2007  WL 2462107, *4 (S.D.  Cal. 2007)

20  ("Given the disparity in terms of  comprehensiveness of the remedy sought, state

21  law claims substantially predominate over the ADA for purposes of  28  U.S.C. §

22  1367(c)(2)"); *Molski v. EOS Estate Winery,* 2005 WL 3952249, *4  (C.D. Cal.

23  2005); *Molski v. Hitching Post I Rest., Inc.,* 2005 WL 3952248, *4 (C.D. Cal. 2005);

24  *Singletary v. The Brick  Oven Rest.,* 406 F.Supp.2d 1120, 1130-31 (S.D. Cal. 2005).

25          In sum, to the extent the Court does not dismiss Plaintiff's state-law claims

26  with prejudice, then the Court should decline supplemental jurisdiction over them.

27

28

-20-

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant respectfully requests that the Court grant summary judgment in its favor and against Plaintiff.


Dated:  September 28, 2020

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By    _____
/s/ *Gregory F. Hurley*
GREGORY F. HURLEY

Attorneys for DOMINO'S PIZZA LLC

-21-