1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   GREGORY F. HURLEY, Cal. Bar No. 126791
3  ghurley@sheppardmullin.com
   BRADLEY J. LEIMKUHLER, Cal. Bar No. 261024
4  bleimkuhler@sheppardmullin.com
   STACY DOMINGUEZ, Cal. Bar No. 279161
5  sdominguez@sheppardmullin.com
   650 Town Center Drive, 10th Floor
6  Costa Mesa, California 92626-1993
   Telephone:  714.513.5100
7  Facsimile:   714.513.5130

8  Attorneys for Defendant,
   DOMINO'S PIZZA LLC
9

10              UNITED STATES DISTRICT COURT

11         CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

| | |
|---|---|
| 13  GUILLERMO ROBLES, | Case No. 2:16-cv-06599<br>Hon. Jesus G. Bernal |
| 14           Plaintiff, | |
| 15      v. | **DECLARATION OF AARON CANNON IN SUPPORT OF DEFENDANT DOMINO'S PIZZA LLC'S MOTION FOR SUMMARY JUDGMENT** |
| 16  DOMINO'S PIZZA LLC, | |
| 17           Defendant. | |
| 18 | Date:    October 26, 2020<br>Time:   9:00 a.m.<br>Ctrm.:   1 |
| 19 | |
| 20 | |
| 21 | Action Filed:   September 1, 2016<br>Trial Date:     December 8, 2020 |

# DECLARATION OF AARON CANNON

I, Aaron Cannon, declare as follows:

1. I am the co-founder and Chief Accessibility Officer of Accessible360, LLC ("A360) a defendant identified in the Complaint in the above-referenced action. A360 is an independent auditing company, and its employees are experts in the area of digital accessibility. A360 helps organizations navigate their path to digital accessibility using a combination of live disabled-user testing, proprietary technology, training, and ongoing support and monitoring services.

2. I have been an Accessibility Engineer since 2007 and have received certification as a Web Accessibility Specialist by the International Association of Accessibility Professionals. I also work as a web developer, and have been a native screen reader user for more than three decades. I have personally performed or overseen hundreds of live-user audits across many businesses, the majority of which have been within retail and ecommerce sites, but also include financial services, education, brochure/marketing sites, and mobile applications. I am totally blind and have been since birth.

3. I have provided expert testimony regarding website accessibility issues in the matters of *Andrews v. Blick Art Materials, LLC*, Eastern District of New York Case No. 17-cv-00767 and *Thurston v. Omni Hotels Management Corp.*, San Bernardino County Superior Court Case No. CIVDS1620291. I have written several articles concerning digital accessibility and have spoken on website accessibility issues. A copy of my resume, which contains a complete description of my qualifications and experience, is attached hereto as Exhibit A.

4. This declaration is offered in support of Defendant's Motion for Summary Judgment. I am over the age of 18. I have personal knowledge of the facts stated in this declaration. If called as a witness, I could and would testify competently as to its contents.

5. I was retained by counsel for Domino's Pizza, LLC ("Defendant") to provide expert testimony in this case, determine whether a screen reader user could order a pizza using the website www.dominos.com (the, "Website") and Defendant's mobile application that is available for use on Apple-branded devices, and respond to the findings of Plaintiff's retained expert, Rosemary Musachio. Attached as Exhibit B is a true and copy of the expert report that I prepared in this action. Attached as Exhibit C is a true and correct copy of my supplemental expert report that I prepared after reviewing the transcripts from the depositions of Ms. Musachio and Plaintiff.

6. In order for a blind user to be able to access a website, a number of prerequisites have to be met. First, like any other user, the person needs to have access to a computer with internet access. In addition, the computer must be running a reasonably modern operating system and web browser. The user must also have the knowledge or training necessary to know how to use the computer, its software, and websites in general. However, unlike a sighted user, a blind user is also subject to several additional requirements.

7. For instance, a blind user must have an additional piece of software called a screen reader installed on their computer. The purpose of a screen reader is to interface with the web browser to convert the contents of websites that the user visits into speech and/or braille. Because screen reader users are generally not able to use a mouse, the screen reader is also responsible for enabling the user to generate mouse clicks and other actions from the keyboard.

8. Unfortunately, screen readers are rather complex pieces of software, and this poses another barrier to blind users. It generally requires several weeks of training, and often months of frequent practice in order to become a skilled user. A user can probably pick up the basics in a relatively short period, but unfortunately, this is often not enough for such users to be able to navigate the complexities of the modern web.

9. What is more, because the screen reader is so deeply intertwined with the web browser and operating system, using an outdated screen reader can also cause significant barriers to accessibility. This happens because the screen reader communicates with the web browser and operating system by means of an application programming interface, and these interfaces tend to change over time. As a result, eventually the old screen reader is not able to communicate with the browser or OS as well, or perhaps even at all.

10. Of course, the final requirement is that the website needs to be coded correctly in order to support the use of screen readers. If this is not done, then the user may be unable to read the content, or interact with the various parts of the user interface.

11. Finally, it is important to draw a distinction between true barriers that prevent a user from moving forward, versus things which are only inconveniences or personal preferences. For example, most accessibility experts would agree that marking up headings properly is pretty important to making a site accessible. Headings allow screen reader users to better understand the organization of content on the page, as well as enabling them to quickly jump to the content they are interested in. However, removing the heading markup from most pages would not make them unusable. It would simply make them less convenient, and perhaps less intuitive. However, a user would likely still be able to find the content that they were interested in. It just might take a little longer for them to do so. Unfortunately, the less experience a user has, the more likely they are to struggle with things like this, or to overestimate their import.

12. I conducted a live user test of the www.dominos.com website on September 8th and 9th, 2020, using the latest production release of the Jaws Screen reader (version 2020.2008.24) and the Google Chrome web browser (version 85.0.4183.102).

13. During this review, I was successfully able to select a pizza type, customize it with toppings, crust type, etc., as well as see its price, add it to an order, select and add sides and drinks, proceed through the checkout process, and place and confirm the order, all without difficulty. I did so independently, using only a screen reader. Because I am totally blind except for a small amount of light perception, I did so entirely without sight, and without any human assistance.

14. As a result of this review, it is my belief that any reasonably competent screen reader user should be able to do the same, provided that they are using a recent version of any well-supported screen reading software, a modern web browser that is up to date, and that the person is sufficiently knowledgeable in the use of their hardware and software.

15. Attached to this declaration as Exhibit D is a true and correct copy of a video that I prepared demonstrating how a screen reader user would order a pizza using the Website.

16. I have also reviewed the report of Rosemary Musachio dated July 13, 2020, who I understand to be the expert retained by Plaintiff Guillermo Robles in this action. I have also reviewed the transcripts of the depositions of Ms. Musachio in this action and the matter of *Castillo v. Ruby's Red Ribbon, Inc.* and the transcript from the deposition of Mr. Robles.

17. As discussed below, I was not able to replicate the issues that were identified by Ms. Musachio in her July 13, 2020 report, or they are not barriers to screen reader users. I will address each claim in turn.

   a. <u>Claim</u>: On the "How Do You Want Your Domino's?" link, blind users encounter excessive "Order Carryout" links that do not contain heading commands to determine which "Order Carryout" link belonged to which listed brick-and-mortar location. When the "More Info" link is activated listed for each location, screen readers do not read the expanded content. <u>Response</u>: I did not find this to be the case. When a list of stores is shown, after choosing Carry Out and

entering a location to search from, the screen reader user hears the store name, followed by the address, and then the controls which will allow them to select that store for pickup or get more details about that location. While it is true that the controls themselves don't directly indicate to which locations they belong, it is quite obvious, given that these controls always immediately follow the locations to which they apply. I also did not encounter any problems reading the content which is revealed when the "More info" link is activated. This information was immediately read upon pushing the down arrow key.

      b.    <u>Claim</u>: Error messages listed on the "Tracker" link are inaccessible to screen-readers. <u>Response</u>: I did not find this to be the case. Upon entering an invalid phone number, for example, and then hitting the submit button, I heard the error message read, and my focus was immediately returned to the field with the error.

      c.    <u>Claim</u>: Plaintiff and other blind or visually-impaired users are unable to build their own pizzas because the crust, size, sauce, and topping options are inaccessible to screen-readers. <u>Response</u>: I did not find this to be the case. My screen reader read the crust, size, sauce, and topping options correctly, and I was able to easily change them.

      d.    <u>Claim</u>: Plaintiff and other blind or visually-impaired users are unable to make an online order because of the additional following barriers. <u>Response</u>: I do not believe this to be the case. See my responses to the following complaints.

      e.    <u>Claim</u>: For example, while trying to order, screen readers read content on the main ordering page, which confuses users into thinking that the content is on the ordering system dialog box that pops out that must be used to make an order. <u>Response</u>: I did not find this to be the case. While screen readers will sometimes read unexpected content when a page refreshes, or after a significant update to the document object model occurs, I was unable to reproduce this behavior

on the Domino's website. Even when I have observed such behavior on other sites, I have found that it is very often due to bugs in the browser or screen reader, rather than a failure to properly code for accessibility. I also observed that the modals were correctly marked up in such a way so that content outside of the modals was not read when the user explored the page content via the arrow or other navigational keys.

      f.     <u>Claim</u>:  The "Special Instructions "+" links to expand options listed throughout the ordering system only read "plus".  <u>Response</u>:  While this is in fact the case, this is unlikely to pose a barrier to screen reader users, since this link immediately follows a heading which reads "SPECIAL INSTRUCTIONS". It only requires that the user intuit that the link containing the addition symbol is what they should activate in order to add the special instructions. I do not believe that this is unreasonable, particularly when sighted users are frequently shown plus symbols in user interfaces, and expected to conclude that they should be clicked in order to perform some sort of add-like action. What is more, this is the only link which appears after this heading, so it is the only likely candidate to perform this action.

      g.     <u>Claim</u>:  The various selectable button options do not activate messages listed on associated list boxes.  <u>Response</u>: It is unclear what this complaint is referring to. When reviewing the site, I did not encounter anything that would seem to match this issue.

      h.     <u>Claim</u>:  Order headings are inaccessible to screen readers.  <u>Response</u>:  I did not find this to be the case. All content, including headings, appeared to be properly read by screen readers.

      i.     <u>Claim</u>:  Button options cannot be accessed with arrow keys after a selection is made.  <u>Response</u>:  I did not find this to be the case. All options were able to be activated via a screen reader, even after a selection was made.

      j.     <u>Claim</u>:  List boxes that indicate quantity do not read in tandem with their associated products.  <u>Response</u>: I did not find this to be the case. All

quantity fields were sufficiently adjacent to the products or toppings to which they applied, so as to make their association clear.

  k. <u>Claim</u>: Various button options containing associated list boxes are inaccessible to screen-reading technology.  <u>Response</u>: While it is not entirely clear what this complaint is referring to, I did not encounter any issues when selecting options which were hidden behind buttons.

  l. <u>Claim</u>: Mislabeled and unlabeled links, buttons, and headings are on Defendant's checkout system.  <u>Response</u>:  I did not find any mislabeled links. In addition, the one unlabeled link that I did find is redundant with the edit link, so the user would not be missing any functionality by not knowing what this control does.

  m. <u>Claim</u>:  The contents in the "Step 1: Confirm Your Selections" section is not accessible for screenreading technology.  <u>Response</u>:  I did not find this to be the case. This content appears to be fully accessible to screen reader users. I was able to review the products I was ordering, view and modify their quantity, see the price, and edit and remove them.

  n. <u>Claim</u>:  Blind and visually-impaired users are unable to select a brick-and-mortar location because of the inaccessible structure on various pages of the Defendant's Website.  <u>Response</u>: I did not find this to be the case. I was able to select a location without issue. See also complaint A, which appears to be somewhat redundant with this complaint.

  o. <u>Claim</u>:  Blind users cannot tab out of the "Deals" banner, preventing them from tabbing anywhere else on the page.  <u>Response</u>:  I did not encounter any deals banner, so was unable to reproduce this issue. However, had I been able to, it is very unlikely that this issue would have a meaningful impact on screen reader users, as such users rarely use the tab key for navigation, unless they are completing a form. It seems improbable that there would be a form within a deals banner.

p. <u>Claim</u>: When users navigate to a radio button (e.g. "Delivery", "Now"), screen readers do not say the heading that is associated with them (i.e. "Service Method" or "Order Timing"). <u>Response</u>: While this complaint is technically correct, this is unlikely to have a meaningful impact on users because it is quite clear based on the context of these radio buttons what they apply to.

q. <u>Claim</u>: Screen reader do not read dynamic error messages. <u>Response</u>: I did not find this to be the case. As noted previously, for example, on the order tracking page, the screen reader reads the error message associated with the phone number field without issue. Error messages are also read in the checkout process.

r. <u>Claim</u>: When users select an item, screen readers do not say it's added to the cart. <u>Response</u>: While this is technically true, it is difficult to see how this would pose a barrier for screen reader users. If a user has just pressed a button to add an item to their cart, it seems unlikely that they would assume that something else happened instead. Even if the user wanted to confirm this, they could easily check to see if the number of items in the cart was what they were expecting, or for even more assurance, they could confirm that the item they just added was, in fact, in their cart.

s. <u>Claim</u>: Screen reader do not say "Build Your Own Pizza" when users tab through its options. <u>Response</u>: As mentioned previously, screen reader users rarely tab to navigate, except when completing a form. Regardless, I did not find this to be the case. This control reads properly, even when tabbed to.

t. <u>Claim</u>: Although screen readers say "Quantity" for the list boxes, they do not say the product item associated with each form field. This issue also applies to the "Edit" and "Remove" links. <u>Response</u>: While this is technically correct, what those controls apply to is sufficiently clear based on their context. See also complaint J, which is partially redundant with this complaint.

u.      Claim: Screen readers cannot select a date from the dropdown calendar, and if dropped down with a mouse, screen readers do not say the selection. Response: While I did find this to be the case, this seems unlikely to impact the majority of users of the site. Anecdotally, I cannot recall ever having a need for such a feature. Nevertheless, the current day is automatically selected, so this is only likely to impact someone who wished to place an order for a future date. Placing an order for the same day works just fine, because the time selection field is accessible.

v.      Claim: When users activate the "Checkout" link, screen readers do not read the "You Might Also Enjoy" dialog window.  Response:  I did not find this to be the case. This modal is read without issue by screen readers.

w.      Claim: After screen reader users select a side, drink, or desert, screen readers do not say a dialogue window appears. Users also cannot access any of the controls on it.  Response:  I did not find this to be the case. Screen readers do, in fact, indicate that a dialog has appeared, and all of the controls within that modal dialog appear to be accessible.

x.      Claim: Radio buttons on all of the "Drinks" popup dialogs are unlabeled.  Response:  I did not find this to be the case. Screen readers read the labels for each radio button in conjunction with each control.

y.      Claim: In the check-out section of the Website, the "Order Summary" data table is not coded correctly so screen reader users cannot associate column headers with the information.  Response:  This is technically correct. However, given the simplicity of the table, along with the fact that when read in a linear manner it is perfectly clear, this minor omission is unlikely to have any meaningful impact on users.

z.      Claim: In the check-out section of the Website, although the placeholder for the "Ext." edit box acts as its name, screen readers cannot read it if users delete it. Response:  I did not find this to be the case. Screen readers read the label for this field whether the field contains content or not.

aa. <u>Claim</u>: When users activate the "?" links, screen readers do not say that a tooltip appears or read its contents. <u>Response</u>: I did not find this to be the case. When activated, this control causes a modal to appear, and the content of that modal is properly read by screen reader users.

bb. <u>Claim</u>: The "Pay at Store" radio button is coded as "Cash". Screen readers also cannot read the note associated with the radio button. <u>Response</u>: I did not find this to be the case. It was quite clear what each radio button was for, and the notes associated with each were read immediately following the radio buttons that they apply to.

cc. <u>Claim</u>: The first options for the "Month" and "Year" list boxes act as temporary labels. When users select other options, the form fields become unlabeled. <u>Response</u>: I did not find this to be the case. These controls are labeled, so the first items act more as hints, rather than temporary labels. In addition, given the context in which these fields appear, it seems highly unlikely that users would not understand what information they were being asked to provide.

dd. <u>Claim</u>: When users navigate to the "Confirm Password" edit box, screen readers do not say instructions below the edit field. <u>Response</u>: While this is technically correct, this text can be easily arrowed to and read immediately following the password field.

ee. <u>Claim</u>: Although "Piece of The Pie Rewards", "Easy Order and Recent Order", "Payment and Personal Info" are visual headings, they are not coded as such for users to navigate to them and associate them with content. <u>Response</u>: I did not find this to be the case. These appear to be recognized as headings by screen readers. However, even if they were not recognized as such, these are unlikely to pose anything more than a minor inconvenience to screen reader users.

18. In her report, Musachio said she used an Android device to test the Domino's mobile app. However, it should be noted that the iOS and Android versions of mobile applications are almost always built on entirely separate code

bases. As a result, findings on the Mobile App for one platform are unlikely to be relevant to the other.

19. I conducted a live user test of the Mobile App (version 7.8.0) on September 26, 2020, using the latest production release of the Apple VoiceOver software (from iOS version 14.0). During this review, I was successfully able to select a pizza type, customize it with toppings, crust type, etc., as well as see its price, add it to an order, select and add sides and drinks, proceed through the checkout process, and place and confirm the order, all without difficulty. I did so independently, using only a screen reader.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed September 28, 2020, at Ramsey, Minnesota.

*Aaron Cannon*
_____
Aaron Cannon