# Exhibit C



# Domino's Supplemental Report

After reviewing the Deposition of Guillermo Robles, dated September 21, 2020, and Rosemary Musachio, dated September 17, 2020, I, Aaron Cannon, have the following additional opinions:

I. **Robles's version of JAWS used to access Domino's:**
*From the Robles Deposition:*

Q   Do you recall what version of JAWS you had installed on the MacBook?
A   I don't recall.
Q   Did you update it?
A   Yes.
Q   How frequently did you update the JAWS screen-reader program?
A   Whenever there was an update available.
Q   And did you pay for that update or was that free?
A   No, these were free updates.

**Expert Witness Response:** For at least the past decade, the JAWS screen reader has had a major version published every year. In addition, minor updates are released throughout the year. A user who only installed the free updates would not receive the major releases, because they are paid updates. As a result, such a user would likely start to fall behind the major updates after only a year or so.

II. **Robles equating inaccessibility of a website with a lack of headings:**
*From the Robles Deposition:*

Q   And can you just explain in your own words how you navigate a website as a blind individual?
A   As a blind individual, I rely a lot on headings. For the Internet, I usually would arrow down through the page. I don't use the "read all" command that's built into screen reader just because there is a lot of information and it's just easier to navigate through headings if you know what you -- what you -- what you're looking for. So the "headings" function and the arrows and tab keys are pretty much things that I use on a regular basis.
Q   And then, in general, what would make a website inaccessible to you?





    A       A website doesn't have any headings. When I encounter graphics on hearing code bleeding through or if the graphic just says "graphic," more often than not I will hear "graphic" followed by some numbers and characters that just are totally unintelligible. If I run into some kind of area that -- you know, where the arrows and the tab keys won't let me out of. That's all I can think of at the moment.

**Expert Witness Response:** I strongly disagree that a lack of headings makes a website inaccessible. While headings are certainly a convenience, and do make things easier, they are not required in most scenarios in order for a website to be usable. In fact, I think Robles acknowledges this in his previous answer. On the other hand, it may be that as a non-expert, he simply holds a different definition of inaccessible. For instance, in his testimony, he mentioned that he regularly visits La Opinion website, in spite of it being inaccessible. This would seem to indicate that he may be using the term "inaccessible" to mean a website which is less convenient than it might ideally be.

III.    **Inaccurate understanding of how background images are related by screen readers:**
*From the Robles Deposition:*

    Q       Okay. So from the screen reader user experience, if an image -- background image is properly coded, what would it say to you?
    A       It will say background image.

**Expert Witness Response:** This is not correct. Background images are almost never read by screen readers, regardless of how they are coded.

IV.    **Robles's attempt to use the Domino's site:**
*From the Robles Deposition:*

MR. LEIMKUHLER: What I'll do is I'll ask Mr. Robles to narrate what he's doing.

THE WITNESS: Sure. So now I'm going to attempt to place an order. It's been a while since I've been to this website, so I'm going to explore the site, and I'm doing this by arrowing through the site. So that's where I'm beginning.

Okay. So I've ascertained that there's an online ordering thing going on here, so I'm going to hit "enter" on that. BAnd I'm going to order -- see if I can -- see if there's a heading that will take me straight to the order portion of the screen.





All right. So I'm going to then choose a store through the locator. And I'm going to check -okay. So I'm going to select "delivery," and I'm going to allow Domino's to know my location. So I'm going to tab to the "allow" button and I'm going to hit enter. I don't -- I'm going to type in the street address here. Whoops. And I'm just going to -basically, what I'm doing is down-arrowing, hitting down arrow through the various fields here and going to the next screen, and I'm going to hit the heading to see what I find.

Okay. I see that there's a menu. I'm going to arrow down to see what's contained there.

Okay. So I'm going to go back up because I want to build my own pizza, and I'm going to hit "enter" there. Okay. And I'm going to, again, go by heading.
Okay. So I'm going to choose a size, and I'm going to select medium just for purposes of this. And I'm going to tab -- so I've selected my crust, and I see an edit box, but I'm not sure what it is, so I'm going to get out of this forms field mode that I'm currently in.

So there's -- I don't seem to be -- when I arrow down, I cannot see what that edit button is supposed to be, and it's telling me that there's no edit boxes. And clearly, when I tab, there was an edit box after I chose the crust. I suppose I could hit the close button, but I'm not sure if that's going to take me out of the customization portion of this.

And it said close radio button, and I'm not sure what that radio button was. And, again, to see if there's any edit boxes, it doesn't appear to be anything that's editable.

I don't know where else you want me to go from here, but this is what I've encountered so far when trying to place an order to customize a pizza.

**Expert Witness Response:** From the above testimony, it seems that when he found a disabled edit field, he became stuck and did not know how to proceed. However, there are a couple of problems with this. After exiting forms mode and attempting to find the edit field, he could have simply continued with the order process, but instead, he seems to have opted to just give up. Whether one is sighted or not, doing things on the internet often requires some guess work and trial and error. I suspect Robles understands this, given his regular use of La Opinion, and its many inconveniences which must be worked around.

In addition, while I was able to reproduce the issue that he encountered with JAWS, I was not able to do so when using NVDA, which strongly suggests that this issue is





caused by a software bug in the JAWS screen reader. This is why screen reader users in particular have to be flexible, and willing to make a concerted effort to get around the inevitable minor setbacks they encounter. As this situation illustrates, even if a website is perfectly coded, issues can and often do arise due to factors which are outside of the control of the owner of the website.

**V.**   **Musachio's testing tools:**

*From the Musachio Deposition:*

Q. On your computer today, are you -- you have the JAWS screen reader installed; is that right?
A. Correct.
Q. Sorry. Excuse me. BAnd what version of JAWS?
A. JAWS Professional, V.18.
…
Q. What device did you use to review Defendant's mobile application?
A. Android Emulator called BlueStacks.
…
Q. Do you know what version of TalkBack you used to review Defendant's mobile application?
A. No, I don't.

**Expert Witness Response:** It is worth noting that JAWS 18 was released back in 2016, putting it at least three major versions behind the current version. I believe that this calls into serious question Musachio's findings on the Domino's website, as it is not possible to know whether the issues she found were due to her outdated software.

Her use of an Android emulator is also troubling. In this context, an emulator is a computer program which attempts to simulate a physical device. Unfortunately, the degree to which a virtual process can accurately simulate something which exists in the physical world is questionable. For this reason, it is common practice for people who engage in testing of mobile software to keep at least a few physical devices on hand to use when testing. Again, I believe that this calls into question her findings, as it is not possible to know whether the issues she encountered were caused by the emulator she used. Further questions are raised by her not knowing the version of TalkBack she used. Given her use of an outdated version of JAWS, it is at least plausible that she may not have been running a modern version of TalkBack either.





**VI. Musachio's questionable technical understanding of accessibility in general:**
*From the Musachio Deposition:*

Q. Do you have an opinion about how a company should accommodate a blind person that is not able to use screen-reading software?

MS. WEBER: Objection.
You can answer it.

THE WITNESS: If a blind person doesn't have a screen reader, then he can't access the computer. But, sir, persons with mobility problems who use speech recognition to access the Internet, the coding has to be the same for them.
…
Q. Are there any differences between using VoiceOver and JAWS?
A. None is except JAWS is for Windows and VoiceOver is for Apple. They both navigate form fields, headings, et cetera.
…
Q. How long do you think it would take Domino's to remediate the website?
A. No idea, but the fixes are simple.

**Expert Witness Response:** There were several comments that Musachio made during her deposition that I think betray a lack of understanding of some core fundamentals regarding accessibility. Her suggestion that coding for screen reader users is the same as that required for screen reader users is inaccurate. While it is true that some coding which benefits screen reader users also benefits users of speech recognition software, there is a great deal more that does not.

In addition, her assertion that the only difference between JAWS and VoiceOver is that one is for Windows, and the other is for Apple is not at all correct. There are numerous differences between the two screen readers, and the way in which screen reader users interact with these two products is very different.

Finally, I also found her assertion that fixes to the website would be simple to be an unsupportable position. Unless one possesses additional information about how the HTML, CSS, JavaScript, and other assets that make up a web site are managed, maintained and prepared for delivery to the user, it is not possible to make a reasonable assumption about how simple any changes would be. There are any number of factors that go into generating the code that ultimately gets delivered to the user.





**VII. Musachio's testing of the Android app:**

*From the Musachio Deposition:*

Q. What device did you use to review Defendant's mobile application?
A. Android Emulator called BlueStacks.

**Expert Witness Response:** From Robles's testimony, it is apparent that he is an iPhone user, and that is what he used to access the Domino's app. Therefore, as noted in my earlier report, I find it surprising that Musachio chose to perform her review on the Android app. These two platforms are fairly different, and it is rare for Android apps to share much if any code with their iOS counterparts.

**VIII. Musachio's and Robles's claim that the Domino's mobile app and website are inaccessible**

**Expert Witness Response:** I conducted a live user test of the Mobile App (version 7.8.0) on September 26, 2020, using the latest production release of the Apple VoiceOver software (from iOS version 14.0). During this review, I was successfully able to select a pizza type, customize it with toppings, crust type, etc., as well as see its price, add it to an order, select and add sides and drinks, proceed through the checkout process, and place and confirm the order, all without difficulty. I did so independently, using only a screen reader.

In addition, I have successfully ordered pizza delivered from Domino's on several previous occasions via dominos.com. These previous orders were placed as an individual consumer, and not as part of any test of the website. These orders were placed on June 22nd, 2019, June 19th, 2019, March 23, 2013, and January 28th, 2013.

**Signed this day by Aaron Cannon, Accessible360, LLC**

Name: Aaron Cannon
Date: 9/28/20
Signature:

*[signature: Aaron Cannon]*

CONFIDENTIAL
rev September 28, 2020

6

