# Exhibit C

Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
**MANNING LAW, APC**
20062 S.W. Birch St., Suite 200
Newport Beach, CA 92660
Office: (949) 200-8755
Fax: (866) 843-8308
DisabilityRights@manninglawoffice.com

Eve L. Hill (*pro hac vice*)
ehill@browngold.com
Jessica P. Weber (*pro hac vice*)
jweber@browngold.com
**BROWN, GOLDSTEIN & LEVY, LLP**
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Office: (410) 962-1030
Facsimile: (410) 385-0869

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

GUILLERMO ROBLES, an individual,

Plaintiff,

v.

DOMINO'S PIZZA LLC, a limited liability corporation,

Defendant.

**Case No.:** 2:16-cv-06599 JGB(FFMx).

**PLAINTIFF GUILLERMO ROBLES' INITIAL EXPERT REPORT**

**HON. JESUS G. BERNAL**

Plaintiff Guillermo Robles makes the following disclosure pursuant to Fed. R. Civ. P. 26(a)(2)(A) and (B):

1. Rosemary Musachio, CPACC
   President, REM Creative Communications, LLC
   19407 Preston Road
   Warrensville Hts., Ohio 44128

Ms. Musachio will serve as an expert witness concerning the subjects and opinions addressed in her Initial Expert Report is attached hereto as Exhibit "1" and incorporated here by reference. Ms. Musachio holds the opinions expressed in her report to a reasonable degree of certainty in her profession.

2. Plaintiff reserves the right to call any expert identified by Defendant.
3. Plaintiff reserves the right to supplement its expert witness disclosure pursuant to Fed. R. Civ. P. 26(a)(2)(E) upon receipt of new and/or additional information obtained through discovery or as is appropriate under or necessary to comply with the Federal Rules of Civil Procedure or the Local Rules. Plaintiff also reserves the right to designate other expert witnesses for purposes of rebuttal expert testimony. *See Ross v. Burlington Northern RRCO.*, 136 F.R.D. 638 (M.D. Ill. 1991).

Respectfully submitted,

Dated: July 13, 2020

By: */s/ Joseph R. Manning, Jr., Esq.*
Joseph R. Manning Jr., Esq.
MANNING LAW, APC

Eve L. Hill (*pro hac vice*)
Jessica P. Weber (*pro hac vice*)
BROWN, GOLDSTEIN & LEVY, LLP

# EXHIBIT 1

I am the President of REM Creative Communications, LLC, a consulting firm that provides advice and consultation to businesses for purposes of achieving compliance with the ADA. I have not testified as an expert at trial or deposition in the last 4 years. I charge $50.00 per hour for consulting with Plaintiff's attorneys and $300.00 per hour for providing expert testimony, with a minimum of four hours for testimony, and reasonable travel costs.

I have extensive experience in the information technology industry, most particularly in testing and evaluating the accessibility of internet websites. I qualify as an expert witness in the fields relevant to this action, based upon the education, experience, training, and knowledge I gained as described in my Resume, a true and correct copy of which is attached as Exhibit A, which includes a list of my publications in the previous 10 years. My qualifications include the following:

a. More than 18 years' experience as an IT analyst, including review and analysis of hundreds of internet websites for compliance and access issues which arise under the ADA;
b. Many years of experience using the Level AA Success Criteria under version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"), published by the World Wide Web Consortium ("W3C"), which is the main international standards organization for the World Wide Web, and the more recent WCAG 2.1 guidelines;
c. Certified Professional of Web Accessibility (CPWA), Certified Professional of Accessibility Core Competencies (CPACC)
d. Extensive experience as an educator with the mission of educating others on digital accessibility and mainstream and assistive technology, conducting accessibility assessments of websites, documents and software, and remediation to ensure accessibility to websites for persons with disabilities who utilize screen-reading software or assistive technology (commonly known as "AT");
e. More than 27 years' experience as a writer and researcher for many companies and publications;
f. A Bachelor's degree, Magna Cum Laude, in Communications from Cleveland State University, with an emphasis on communications issues that disabled persons encounter;
g. Multiple engagements as an IT Accessibility Consultant for many companies;
h. Dedicated Author of Columns for Audacity Magazine for two years;
i. Editor of Newsletters for industry and for persons with disabilities; and,
j. Lecturer and Speaker on communication barrier topics at various conferences, as listed on my Resume.

Visually-impaired people access websites using keyboards in conjunction with screen-reading software technology that vocalizes the visual information found on a computer screen. Screen-reading software is currently the only method a blind person can fully and independently access the internet (except for legally blind individuals whose residual vision allows them to use magnification). Blind and visually-impaired users of Windows computers and devices have

several screen-reading software programs available to them. Job Access With Speech ("JAWS") is currently the most popular, separately-purchased screen-reading software program available for Windows. If website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access and navigate the same content on a website that is available to sighted users.

There are well-established industry guidelines for designing, constructing and maintaining websites so they are accessible to and provide effective communication for blind and visually-impaired persons who use screen-reading software programs. These guidelines have existed for several years and are successfully followed by large business entities who want to ensure their websites are accessible to all people. The Web Accessibility Initiative, an initiative of the World Wide Web Consortium, developed guidelines on website accessibility. Through Section 508 of the Rehabilitation Act of 1973, the federal government also promulgated website accessibility standards. The Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1 standards (available at https://www.w3.org/TR/WCAG20/ and https://www.w3.org/TR/WCAG21/, respectively), easily found on the Internet, recommend several basic components for making websites accessible, including, but not limited to: adding invisible alternative text ("alt-text") to graphics; ensuring all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible and by adding structured headings so blind and visually-impaired people can navigate websites just as sighted people do. Without these basic components, websites are inaccessible to a blind person using screen-reading software.

Numerous large business entities have used these guidelines, or have otherwise been able to make their websites accessible, including adding alt-text to graphics and ensuring that all functions can be performed using a keyboard.

In addition to being an expert on accessibility and assistive technology, I have cerebral palsy and require assistive technology when accessing the internet. I use the JAWS screen-reading software program, assistive technology, in conjunction with other testing tools such as Accessible Name and Description Inspector (ANDI) and browser developer tools to perform my job functions as the Chief Accessibility Officer for Ruh Global LLC. I use JAWS as the recognized "gold-standard" screen-reading software program to evaluate services, such as websites and screen-reading software programs. JAWS allows me to test and evaluate the accessibility of services such as internet websites. JAWS is the same software reading program which Plaintiff Guillermo Robles used to try to access the Defendant's website.

For blind and visually-impaired users of Apple operating system-enabled computers and devices, the screen-reading software available, pre-installed, and built into all Apple products is the VoiceOver screen reader. Apple's devices, including the iPhone, have the VoiceOver program integrated into their iOS operating system for use by blind and visually-impaired users. Apple offers methods to provide accessible information about views and controls in an application's user interface through the UIAccessibility informal protocol (https://developer.apple.com/documentation/objectivec/nsobject/uiaccessibility), and UIAccessibilityContainer (https://developer.apple.com/documentation/objectivec/nsobject/uiaccessibilitycontainer). The

built-in screen reader by Google integrated into Android devices is the Talkback program. Android also offers methods to integrate accessibility features and services to improve an applications usability for users with disabilities. Accessibility resources for Android applications can be found through Android's development website (https://developer.android.com/guide/topics/ui/accessibility)

To form my opinions about the accessibility of Defendant's website and mobile application, I used my extensive knowledge and experience using the Level AA Success Criteria under WCAG 2.0 and 2.1 and the guidelines themselves, my experience as an IT analyst, including review and analysis of hundreds of internet websites and mobile applications for compliance and access issues which arise under the ADA, and by visiting the dominos.com website and using the Dominos mobile application. Defendant's website, Defendant's mobile application, WCAG 2.0 and 2.1, are exhibits that will be used to summarize or support my opinions.

Upon request from counsel for Plaintiff Guillermo Robles, in September 2016, March 2017, on May 19, 2019, and May 29, 2020. I conducted assessments of webpages on dominos.com and on Defendant's mobile application, to determine its accessibility to those with visual-impairments. In evaluating Defendant's website, I used assistive technology, including JAWS screen-reading software. In evaluating Defendant's mobile application, I used assistive technology, including the TalkBack screen reader.

I found a number of accessibility barriers and deficiencies in Defendant's dominos.com website that prevent visually-impaired and legally blind persons from full and equal enjoyment of the goods and services offered through and in connection with Domino's restaurant locations. Those accessibility barriers for blind or visually-impaired on May 19, 2019, include, but are not limited to, the following:

a. On the "How Do You Want Your Domino's?" link, blind users encounter excessive "Order Carryout" links that do not contain heading commands to determine which "Order Carryout" link belonged to which listed brick-and-mortar location. When the "More Info" link is activated listed for each location, screen readers do not read the expanded content;
b. Error messages listed on the "Tracker" link are inaccessible to screen-readers;
c. Plaintiff and other blind or visually-impaired users are unable to build their own pizzas because the crust, size, sauce, and topping options are inaccessible to screen-readers
d. Plaintiff and other blind or visually-impaired users are unable to make an online order because of the additional following barriers.
e. For example, while trying to order, screen readers read content on the main ordering page, which confuses users into thinking that the content is on the ordering system dialog box that pops out that must be used to make an order.
f. The "Special Instructions "+" links to expand options listed throughout the ordering system only read "plus".
g. The various selectable button options do not activate messages listed on associated list boxes.

h. Order headings are inaccessible to screen readers.
i. Button options cannot be accessed with arrow keys after a selection is made.
j. List boxes that indicate quantity do not read in tandem with their associated products.
k. Various button options containing associated list boxes are inaccessible to screen-reading technology,
l. Mislabeled and unlabeled links, buttons, and headings are on Defendant's checkout system.
m. The contents in the "Step 1: Confirm Your Selections" section is not accessible for screen-reading technology;
n. Blind and visually-impaired users are unable to select a brick-and-mortar location because of the inaccessible structure on various pages of the Defendant's Website.
o. Blind users cannot tab out of the "Deals" banner, preventing them from tabbing anywhere else on the page.
p. When users navigate to a radio button (e.g. "Delivery", "Now"), screen readers do not say the heading that is associated with them (i.e. "Service Method" or "Order Timing").
q. Screen reader do not read dynamic error messages.
r. When users select an item, screen readers do not say it's added to the cart.
s. Screen reader do not say "Build Your Own Pizza" when users tab through its options.
t. Although screen readers say "Quantity" for the list boxes, they do not say the product item associated with each form field. This issue also applies to the "Edit" and "Remove" links.
u. Screen readers cannot select a date from the dropdown calendar, and if dropped down with a mouse, screen readers do not say the selection.
v. When users activate the "Checkout" link, screen readers do not read the "You Might Also Enjoy" dialog window.
w. After screen reader users select a side, drink, or desert, screen readers do not say a dialogue window appears. Users also cannot access any of the controls on it.
x. Radio buttons on all of the "Drinks" popup dialogs are unlabeled.
y. In the check-out section of the Website, the "Order Summary" data table is not coded correctly so screen reader users cannot associate column headers with the information.
z. In the check-out section of the Website, although the placeholder for the "Ext." edit box acts as its name, screen readers cannot read it if users delete it.
aa. When users activate the "?" links, screen readers do not say that a tooltip appears or read its contents.
bb. The "Pay at Store" radio button is coded as "Cash". Screen readers also cannot read the note associated with the radio button.
cc. The first options for the "Month" and "Year" list boxes act as temporary labels. When users select other options, the form fields become unlabeled.
dd. When users navigate to the "Confirm Password" edit box, screen readers do not say instructions below the edit field.

ee. Although "Piece of The Pie Rewards", "Easy Order and Recent Order", "Payment and Personal Info" are visual headings, they are not coded as such for users to navigate to them and associate them with content.

I also found significant accessibility barriers and deficiencies in Defendant's mobile application that prevent visually-impaired and legally blind persons from full and equal enjoyment of the goods and services offered through and in connection with Domino's restaurant locations. Those accessibility barriers for blind or visually-impaired on Defendant's mobile application using screen reader technology, on May 19, 2019, and May 29, 2020, include, that the menu button is unlabeled and the application times out after five minutes, and the user has to start over again. The "Send Message" edit box and button are unlabeled. The TalkBack function cannot read dynamic messages that appear after the users type in the edit box, which is an issue because users cannot navigate back to messages. The form fields in the "Delivery" part of the application are unlabeled, as is the "Email Offers" checkbox.

Based on my knowledge and personal experience using assistive technology to access the internet due to my disability, identifying WCAG 2.0 and 2.1 deficiencies, and other access deficiencies, I found that both the dominos.com website and mobile application are not equally accessible to and/or fail to provide effective communication for persons that are blind or have significant vision loss.

The access barriers identified above were of the similar type and severity as those I encountered when assessing the dominos.com and mobile application in September 2016 and March 2017. It is my opinion that Defendant has undertaken minimal to no effort over the last four years to make its website and mobile application accessible to persons who are blind or visually-impaired.

It is my opinion that Dominos could make its website and mobile application accessible to the visually-impaired by implementing well-established industry guidelines for designing, constructing and maintaining websites and mobile applications. Incorporating these basic changes and adding certain elements to the website and mobile application's accessibility would neither fundamentally alter the nature of Dominos' business nor would it result in an undue burden to Dominos.

I have provided opinions to the best of my abilities and understanding in this document based on the information provided to me. However, I do reserve the right to modify at some level based on more analysis of information that has or will be provided to me regarding this action. If there are any further questions or areas of clarification, I can be reached by email at rosemary@ruhglobal.com.

By: *Rosemary E. Musachio*

Rosemary Musachio

# PROOF OF SERVICE

I, the undersigned, am employed in the County of Orange, State of California. I am over the age of eighteen (18) years and not a party to the cause. My business address is 20062 S.W. Birch St., Suite 200, Newport Beach, CA 92660.

On July 13, 2020, I served the true copies of the foregoing document described as **PLAINTIFF'S INITIAL EXPERT REPORT** on the interested parties in this action, addressed as follows:

**Served Via US Mail onto:**

| Attorney | Telephone/ Facsimile/Email | Party |
|---|---|---|
| Gregory F. Hurley, Esq.<br>Michael J. Chilleen, Esq.<br>SHEPPARD, MULLIN, RICHTER & HAMPTON LLP<br>650 Town Center Drive, 10th Floor<br>Costa Mesa, CA 92626 | ghurley@sheppardmullin.com<br>mchilleen@sheppardmullin.com | Attorney for Defendants |

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

☐ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on July 13, 2020, at Newport Beach, California.

Diana Lopez
(Type or print name)

(Signature)