1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   GREGORY F. HURLEY, Cal. Bar No. 126791
3  ghurley@sheppardmullin.com
   BRADLEY J. LEIMKUHLER, Cal. Bar No. 261024
4  bleimkuhler@sheppardmullin.com
   STACY DOMINGUEZ, Cal. Bar No. 279161
5  sdominguez@sheppardmullin.com
   650 Town Center Drive, 10th Floor
6  Costa Mesa, California 92626-1993
   Telephone:  714.513.5100
7  Facsimile:   714.513.5130

8  Attorneys for Defendant,
   DOMINO'S PIZZA LLC
9

10                UNITED STATES DISTRICT COURT

11        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13  GUILLERMO ROBLES,              Case No. 2:16-cv-06599
                                   Hon. Jesus G. Bernal
14         Plaintiff,
                                   **SUPPLEMENTAL DECLARATION
15      v.                         OF AARON CANNON IN SUPPORT
                                   OF DEFENDANT DOMINO'S
16  DOMINO'S PIZZA LLC,            PIZZA LLC'S OPPOSITION TO
                                   PLAINTIFF'S MOTION FOR
17         Defendant.              SUMMARY JUDGMENT**

18
                                   Date:  October 26, 2020
19                                 Time:  9:00 a.m.
                                   Ctrm.: 1
20

21                                 Action Filed: September 1, 2016
                                   Trial Date:   December 8, 2020
22

23

24

25

26

27

28
                                              Case No. 2:16-cv-06599
   SMRH:4822-8568-4429.1   DECLARATION OF AARON CANNON IN OPPOSITION TO PLAINTIFF'S MOTION FOR
                                                       SUMMARY JUDGMENT

# DECLARATION OF AARON CANNON

I, Aaron Cannon, declare as follows:

1. I am the co-founder and Chief Accessibility Officer of Accessible360, LLC ("A360"). A360 is an independent auditing company, and its employees are experts in the area of digital accessibility. A360 helps organizations navigate their path to digital accessibility using a combination of live disabled-user testing, proprietary technology, training, and ongoing support and monitoring services. This declaration is offered in support of Defendant's Opposition To Plaintiff's Motion for Summary Judgment. I am over the age of 18. I have personal knowledge of the facts stated in this declaration. If called as a witness, I could and would testify competently as to its contents.

2. I was retained by counsel for Domino's Pizza, LLC ("Defendant") to provide expert testimony in this case, determine whether a screen reader user could order a pizza using the website www.dominos.com (the, "Website") and Defendant's mobile application that is available for use on Apple-branded devices ("Mobile App"), and respond to the findings of Plaintiff's retained expert, Rosemary Musachio. This declaration should be read in conjunction with the declaration that I submitted in support of Defendant's Motion for Summary Judgment in this case.

3. I have reviewed the transcripts from the September 21, 2020, deposition of Plaintiff Guillermo Robles ("Plaintiff"), the September 17, 2020 deposition of Rosemary Musachio, and the July 24, 2020 deposition of Rosemary Musachio from the matter of *Castillo v. Ruby's Red Ribbon, Inc.*, Los Angeles Superior Court Case No. 19PSCV00641. Based upon that review, I have the following additional opinions and observations.

4. During his deposition, Plaintiff testified he installs the free updates for the JAWS screen reading software on his computer. For at least the past decade, the JAWS screen reader has a major version published every year. In addition, minor updates are released throughout the year. A user who only installed the free updates

would not receive the major releases, because they are paid updates. As a result, such a user would likely start to fall behind the major updates after only a year or so. This means that his JAWS screen reader may cause him to struggle with the accessibility of websites, including Defendant's Website, that would not be apparent to a user running a more modern version of JAWS.

5.   Plaintiff's testimony during his deposition suggests that he considers a website that does not have headings to be inaccessible.  I strongly disagree that a lack of headings makes a website inaccessible. While headings are certainly a convenience, and do make things easier, they are not required in most scenarios in order for a website to be usable. In fact, I think Plaintiff acknowledges this in his previous answer. On the other hand, it may be that as a non-expert, he simply holds a different definition of inaccessible. For instance, in his testimony, he mentioned that he regularly visits La Opinion website, in spite of it being inaccessible. This would seem to indicate that he may be using the term "inaccessible" to mean a website which is less convenient than it might ideally be.

6.   Plaintiff testified during his deposition that his screen reader will identify a background image by stating aloud background image.  This is not correct. Background images are almost never read by screen readers, regardless of how they are coded.

7.   During Plaintiff's deposition, he attempted to use Defendant' Website. There is not a record of how Plaintiff's screen reader interacted with the website, so I am relying upon Plaintiff's narration of what he encountered.  From this testimony, it seems that when he found a disabled edit field, he became stuck and did not know how to proceed. However, there are a couple of problems with this. After exiting forms mode and attempting to find the edit field, he could have simply continued with the order process, but instead, he seems to have opted to just give up. Whether one is sighted or not, doing things on the internet often requires some guess work and trial and error. I suspect Robles understands this, given his regular use of La

Opinion, and its many inconveniences which must be worked around. In addition, while I was able to reproduce the issue that he encountered with JAWS, I was not able to do so when using NVDA (which is another commonly used screen reader), which strongly suggests that this issue is caused by a software bug in the JAWS screen reader. This is why screen reader users in particular have to be flexible, and willing to make a concerted effort to get around the inevitable minor setbacks they encounter. As this situation illustrates, even if a website is perfectly coded, issues can and often do arise due to factors which are outside of the control of the owner of the website.

8. Ms. Musachio testified that she tested Defendant's website using JAWS Professional, version 18. JAWS 18 was released back in 2016, putting it at least three major versions behind the current version. I believe that this calls into serious question Musachio's findings on the Domino's website, as it is not possible to know whether the issues she found were due to her outdated software.

9. Ms. Musachio testified that she tested the Android version of Defendant's mobile application using an Android Emulator. Her use of an Android emulator is also troubling. In this context, an emulator is a computer program which attempts to simulate a physical device. Unfortunately, the degree to which a virtual process can accurately simulate something which exists in the physical world is questionable. For this reason, it is common practice for people who engage in testing of mobile software to keep at least a few physical devices on hand to use when testing. Again, I believe that this calls into question her findings, as it is not possible to know whether the issues she encountered were caused by the emulator she used.

10. Ms. Musachio also testified that she did not know what versino of TalkBack she used. Further questions are raised by her not knowing the version of TalkBack she used. Given her use of an outdated version of JAWS, it is at least plausible that she may not have been running a modern version of TalkBack either.

11. Ms. Musachio made several comments during her deposition that that I think betray a lack of understanding of some core fundamentals regarding accessibility. Her suggestion that coding for screen recognition users is the same as that required for screen reader users is inaccurate. While it is true that some coding which benefits screen reader users also benefits users of speech recognition software, there is a great deal more that does not.

12. In addition, her assertion that the only difference between JAWS and VoiceOver is that one is for Windows, and the other is for Apple is not at all correct. There are numerous differences between the two screen readers, and the way in which screen reader users interact with these two products is very different.

13. Finally, I also found her assertion that fixes to the website would be simple to be an unsupportable position. Unless one possesses additional information about how the HTML, CSS, JavaScript, and other assets that make up a web site are managed, maintained and prepared for delivery to the user, it is not possible to make a reasonable assumption about how simple any changes would be. There are any number of factors that go into generating the code that ultimately gets delivered to the user.

14. As far back as 2011, I have been able to independently order pizza from www.dominos.com using screen reading software. Attached to this declaration as Exhibit A are true and correct copies of receipts from various purchases over the years that I made using www.dominos.com independently and using my screen reader.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed October 5, 2020, at Ramsey, Minnesota.

Aaron Cannon