UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-6599 JGB (Ex)** | Date | June 23, 2021 |
| Title | *Guillermo Robles v. Domino's Pizza LLC* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING IN PART and DENYING IN PART Plaintiff's Motion for Summary Judgment (Dkt. No. 97); (2) DENYING Defendant's Motion for Summary Judgment (Dkt. No. 101) and (3) VACATING the June 28, 2021 hearing (IN CHAMBERS)

Before the Court are motions for summary judgment filed by Plaintiff Guillermo Robles ("Plaintiff") and Defendant Domino's Pizza, LLC ("Defendant"). ("PMSJ," Dkt. No. 97; "DMSJ," Dkt. No. 101.) The Court finds these matters appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. Upon consideration of the papers filed in support of and in opposition to the Motion, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion, **DENIES** Defendant's Motion, and VACATES the June 28, 2021 hearing.

I. **BACKGROUND**

On September 1, 2016, Plaintiff filed his complaint against Defendant. (Dkt. No. 1.) On March 20, 2017, the Court stayed the case under the primary jurisdiction doctrine. (Dkt. No. 42.) The Ninth Circuit reversed on January 15, 2019. (Dkt. Nos. 49, 50; Robles v. Domino's Pizza, LLC, 913 F.3d 898 (9th Cir.), cert. denied, 140 S. Ct. 122 (2019) ("Robles I").) On June 13, 2019, the Court granted Plaintiff leave to amend his complaint. (Dkt. No. 65.) On June 14, 2019, Plaintiff filed a First Amended Complaint, alleging four causes of action against Defendant: (1) violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("the ADA") (Dominos.com); (2) violation of the ADA (Domino's Mobile App ("the App")); (3) violation of the Unruh Civil Rights Act, Cal. Civ. Code § 51 et seq. ("the Unruh Act") (Dominos.com); and (4) violation of the Unruh Act (the App). ("First Amended Complaint," Dkt. No. 66.)

Plaintiff filed his motion on September 28, 2020 (see PMSJ), along with the following documents:

- Plaintiff's Statement of Undisputed Facts ("PSUF," Dkt. No. 97-2);
- Declaration of Joseph R. Manning ("First J. Manning Decl.," Dkt. No. 97-3);
- Defendant's Further Supplemental Responses to Plaintiff's Request for Admissions (Dkt. No. 97-4);
- Defendant's Initial Expert Disclosure (Dkt. No. 97-5)
- Rough draft of transcript of deposition of Plaintiff Guillermo Robles (Dkt. No. 97-6);
- Declaration of Rosemary Musachio ("Musachio") ("First Musachio Decl.," Dkt. No. 97-7); and
- Declaration of Plaintiff ("First Robles Decl.," Dkt. No. 97-8).

Defendant opposed on October 5, 2020 ("PMSJ Opposition," Dkt. No. 108), and filed the following supporting documents:

- Declaration of Bradley J. Leimkuhler (Dkt. No. 108-1);
- Transcript of deposition of Plaintiff (Dkt. No. 108-2);
- Transcript of deposition of Musachio ("Musachio Deposition Transcript," Dkt. No. 108-3);
- Plaintiff's Initial Expert Report (Dkt. No. 108-4);
- Plaintiff's Response to Requests for Production (Dkt. No. 108-5);
- Plaintiff's Response to Requests for Production, Set Two (Dkt. No. 108-6);
- Transcript of deposition of Musachio in Castillo v. Ruby's Red Ribbon (Dkt. No. 108-7);
- Supplemental Declaration of Aaron Cannon ("Cannon") (Dkt. No. 108-8) and exhibits (Dkt. Nos. 108-9);
- Request for Judicial Notice ("RJN," Dkt. No. 108-10) of September 25, 2018 letter from Assistant Attorney General Stephen Boyd to Rep. Ted Budd;[1]
- Objections to First J. Manning Decl. (Dkt. No. 108-12);
- Objections to First Musachio Decl. ("Musachio Decl. Objections," Dkt. No. 108-13);
- Objections to First Robles Decl. ("Robles Decl. Objections," Dkt. No. 108-14); and
- Defendant's Response to PSUF and Additional Material Facts ("PSUF SGD," Dkt. No. 108-15).

---

[1] "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). An adjudicative fact may be judicially noticed if it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Because Defendant requests notice of a document in the public record, the Court **GRANTS** the RJN and takes notice of the letter attached.

Plaintiff replied in support of his motion on October 12, 2020 ("PMSJ Reply," Dkt. No. 110), and filed the following documents in support:

- Declaration of Joseph R. Manning ("Second J. Manning Decl.," Dkt. No. 110-1);
- Transcript of Deposition of Musachio (Dkt No. 110-2);
- Transcript of Deposition of Plaintiff (Dkt. No. 110-3);
- Defendant's Further Supplemental Responses to Plaintiff's Requests for Production (Dkt. No. 110-4);
- Defendant's Further Supplemental Responses to Plaintiff's Interrogatories (Dkt. No. 110-5);
- Plaintiff's Response to Defendant's Additional Material Facts ("DAMF SGD," Dkt. No. 111); and
- Plaintiff's Reply to Defendant's Statement of Genuine Disputes and Separate Statement of Undisputed Facts ("PSUF SGD Reply," Dkt. No. 112).

Defendant filed its motion on September 28, 2020 (see DMSJ), along with the following documents:

- Declaration of Joseph Deveraux (Dkt. No. 101-2);
- Declaration of Chris Roeser (Dkt. No. 101-3) and exhibit (Dkt. No. 101-4);
- Declaration of Cannon ("Cannon Decl.," Dkt. No. 101-5) and exhibits (Dkt. Nos. 101-6 through 101-9);
- Declaration of Bradley Leimkuhler (Dkt. No. 101-10) and exhibit (Dkt. No. 101-11); and
- Defendant's Statement of Undisputed Facts ("DSUF," Dkt. No. 101-12).

Plaintiff opposed on October 5, 2021 ("DMSJ Opposition," Dkt. No. 104), and filed the following documents:

- Statement of Genuine Disputes of Material Fact ("DSUF SGD," Dkt. No. 104-1);
- Declaration of Musachio ("Second Musachio Decl.," Dkt. No. 104-2);
- Declaration of Plaintiff ("Second Robles Decl.," Dkt. No. 104-3) and exhibit (Dkt. No. 104-4);
- Declaration of Joseph R. Manning ("Third J. Manning Decl.," Dkt. No. 104-5) and exhibits (Dkt. Nos. 104-6 through 104-8);
- Defendant's Further Supplemental Responses to Plaintiff's Requests for Production (Dkt. No. 104-9);
- Defendant's Further Supplemental Responses to Plaintiff's Interrogatories (Dkt. No. 104-10); and
- Transcript of Deposition of Plaintiff (Dkt. No. 104-11).

Defendant replied in support of its motion on October 9, 2021 ("DMSJ Reply," Dkt. No. 109), and filed the following documents:

- Objections to Second Musachio Decl. (Dkt. No. 109-1);
- Objections to Third J. Manning Decl. (Dkt. No. 109-2); and
- Objections to Second Robles Decl. (Dkt. No. 109-3).

Additionally, the parties have engaged in ongoing discovery skirmishes during the pendency of the instant Motions. On November 2, 2020, Magistrate Judge Eick ordered Defendant to make several witnesses available for additional depositions. (Dkt. No. 130.) After conducting this discovery, Plaintiff filed a supplemental memorandum ("PMSJ Supplement," Dkt. No. 133) as well as the Declaration of Michael J. Manning (Dkt. No. 133-1) and exhibits (Dkt. No. 133-2; "Cannon Deposition," Dkt. No. 133-3; Dkt. No. 133-4). The parties each filed status reports on January 13, 2021. ("Pl.'s Status Report I," Dkt. No. 134; "Def.'s Status Report I," Dkt. No. 135.) On February 23, 2021, the Court allowed the parties to move for more discovery before the Magistrate Judge; the Magistrate Judge allowed the parties to conduct additional discovery on March 18, 2021. (Dkt. No. 141; "March 2021 Discovery Order," Dkt. No. 143). The parties filed status reports on April 23, 2021. ("Pl.'s Status Report II," Dkt. No. 145; "Def.'s Status Report II," Dkt. No. 146.) The matter now stands submitted.

## II.   FACTS

### A.   Evidentiary Objections

#### 1.   First Robles Declaration

Plaintiff contends that he attempted to order a pizza from Defendant's website on July 18, 2015 but was unable to do so, and that similar incidents occurred in July 2016, September 2016, and February 2017. (PSUF ¶¶ 9-10, 14-18.) Plaintiff cites his own declaration in support for these facts. (Id.) Defendant objects to this evidence because Plaintiff did not produce or preserve his iPhone or his browser history. (Robles Decl. Objections at ¶¶ 1, 4, 9, 11.)

The parties have tussled over Plaintiff's iPhone for several years. On March 13, 2017, Plaintiff responded to Defendant's request to produce all devices used to access the App. (Dkt. No. 108-5 at 3.) Plaintiff refused on the grounds that the request was overly broad and violated his privacy rights under the California Constitution. (Id. at 4-5.) Discovery ended on May 29, 2017. (Dkt No. 26.) Defendant apparently did not move to compel production of the iPhone. Two years later, on April 15, 2019, the Court reopened discovery. ("2019 Scheduling Order," Dkt. No. 56.) On December 5, 2019, Plaintiff admitted, in response to additional requests for production, that in December 2018 he replaced the iPhone he used to access the App. (Dkt. No. 108-6 at 4.) Discovery closed on December 23, 2019. (See 2019 Scheduling Order.) On August 31, 2020, Defendant moved for sanctions for Plaintiff's failure to preserve the iPhone. ("Sanctions Motion," Dkt. No. 90.) Plaintiff opposed. (Dkt. No. 94.) On September 25, 2020, Magistrate Judge Eick denied the Sanctions Motion without prejudice, finding that Defendant had not demonstrated that Plaintiff destroyed the phone with the intent to deprive Defendant of its use in litigation. (Dkt. No. 96 at 4.) On October 16, 2020, Defendant filed a motion in limine

seeking to exclude Plaintiff's testimony concerning his experience with Defendant's webpage for spoliation. (Dkt No. 123.)

Defendant contends, in its evidentiary objection, that Plaintiff cannot establish that he interacted with Defendant's website the App without the phone. (Robles Decl. Objections at ¶¶ 1, 4, 9, 11.) This is not the case: Plaintiff has submitted a declaration describing those experiences. (See First Robles Decl.) The iPhone is not necessary to establish Plaintiff's interaction with the website. In the absence of evidence undermining Plaintiff's credibility or contradicting his declaration, the Court takes those facts to be undisputed and **OVERRULES** Defendant's evidentiary objection on this point for the purposes of the instant motions. Similarly, the Court **OVERRULES** Defendant's objections to Plaintiff's failure to preserve his browsing history, which Plaintiff's browser automatically deleted. (DAMF SGD ¶ 134.)

### 2. First Musachio Declaration

Plaintiff relies upon the testimony of expert witness Musachio to establish that Defendant's website is not accessible to patrons using screen readers. (See First Musachio Decl.) Defendant objects to pertinent parts of Musachio's declaration as irrelevant because: (1) she tested the App using an Android, while Plaintiff used an iPhone; (2) she improperly referred to Web Content Accessibility Guidelines ("WCAG"); (3) she raised new barriers in her expert report apart from those identified in the First Amended Complaint and apart from those identified in her deposition; and (4) she used an outdated version of the JAWS software. (Musachio Decl. Objections ¶¶ 1, 2, 10, 11.)

Only relevant evidence, defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," is admissible in federal court. Fed. R. Evid. 401, 402. Certain portions of Musachio's declaration are irrelevant. First, her testimony regarding the way the App functions on Android phones is irrelevant, as Plaintiff contends that the App does not function on iPhones. Second, her testimony concerning how and whether the App and website align with the WCAG is irrelevant, as the Ninth Circuit has already held in this case that the Court may not impose liability based on any failure of Defendant to comply with the WCAG. Robles I, 913 F.3d at 907-908. The Court therefore **SUSTAINS** Defendant's objections as to these two points.

Defendant asserts that Musachio improperly identified new barriers in her expert declaration. The Ninth Circuit has held that "for purposes of [Federal] Rule [of Civil Procedure] 8, a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself; a defendant is not deemed to have fair notice of barriers identified elsewhere." Oliver v. Ralphs Grocery Co., 654 F.3d 903, 909 (9th Cir. 2011) (plaintiff could not move for summary judgment on physical barriers in grocery store identified only in his expert report). Oliver is clear on the pleading requirements for ADA suits alleging physical barriers in brick-and-mortar stores: a plaintiff must describe each barrier in his complaint, so that a defendant has an opportunity to correct those barriers.

It is not entirely clear, however, that Oliver requires a plaintiff to describe every way in which a webpage is inaccessible in his complaint. The parties do not cite any case applying Oliver to webpage ADA claims, and the Court could not find one. This is therefore a matter of first impression for the Court. Unlike physical stores, webpages are dynamic – as illustrated by the fact that Defendant admits to having made some 7,600 changes to its webpage and 5,200 changes to the App since the start of litigation. (Def.'s Status Report II at 3.) It would be wildly impractical to require Plaintiff to amend his Complaint every time Defendant updates its website, especially because Defendant withheld the record of its changes from Plaintiff.[2] (March 2021 Discovery Order at 2.) Put another way, Plaintiff's First Amended Complaint was clear: Defendant maintains a continually changing website that cannot be read by a screen reader. The Court therefore **OVERRULES** Defendant's objections to the portions of the First Musachio Decl. identifying new barriers.

Defendant additionally objects to the portions of the First Musachio Decl. concerning her attempts to order a pizza from Defendant's website on September 16, 2020, because Musachio refused to disclose the barriers she faced on that date during her deposition. (Musachio Decl. Objections ¶ 10.) Musachio claims to have been unable to access Defendant's website and/or App in September 2016, March 2017, May 2019 (website), January 2020 (App), May 2020, and September 2020 (website, App). (First Musachio Decl. ¶¶ 20, 22, 23, 25, 26.) In her deposition, she stated that she had produced four expert reports; however, during that deposition, Plaintiff's counsel explained that there "was one [report] that [Plaintiff] submitted to [Defendant]. The other document[s Musachio was] referring to are drafts which are work product." (Musachio Deposition Transcript at 35:22-36:13.) Plaintiff opposes Defendant's objection to this portion of Musachio's testimony because his counsel "advised at Ms. Musachio's deposition that a report Ms. Musachio had referenced [concerning the September 2020 visit] was actually a draft protected by the work product doctrine[.] Plaintiff's counsel never instructed Ms. Musachio not to testify about her September 16, 2020 evaluation of [Defendant's] website." (PSUF SGD Reply ¶ 30.)

Attorney work product is not ordinarily discoverable. Fed. R. Civ. P. 26(b)(3)(A). (Thus, it would have been fruitless for Defendant's counsel to question Musachio on this, which is why they did not pursue this line of questioning during the deposition.) However, parties must disclose expert witness testimony, including "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the

---

[2] Additionally, Defendant objects to Musachio's 2019 findings as "not relevant because they do not bear on the current state of the website." (Musachio Decl. Objections ¶ 10.) Taken together, it seems Defendant contends that Plaintiff should amend his Complaint and prepare a new expert report and allow that expert to be deposed each time that Defendant changes its website or App – which it does approximately seven times a day, according to its cited figures. Such an approach to litigation would obviously be farcical. See Fed. R. Civ. P. 1 (the Court should endeavor to "secure the just, speedy, and inexpensive determination of every action and proceeding") (emphasis added).

witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). While the Ninth Circuit has not ruled conclusively on whether materials considered by an expert in forming her opinion are protected work product, all district courts within the Ninth Circuit and all other courts of appeals to consider the question have concluded that such materials are not covered by the work product doctrine. See S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv., 257 F.R.D. 607, 612 (E.D. Cal. 2009) (collecting cases). This Court agrees; Musachio's report concerning her September 2020 findings could not be both protected by attorney work product and a crucial expert witness report. The Court therefore **SUSTAINS** Defendant's evidentiary objections as to the portions of the First Musachio Decl. concerning her September 2020 findings.

Finally, Defendant objects to Musachio's finding because of the version of the software she used. (Musachio Decl. Objections ¶ 13.) However, this does not render her testimony irrelevant; the question of software barriers is a substantive and relevant legal issue. The Court therefore **OVERRULES** Defendant's evidentiary objections on this point.

**B.    Undisputed Facts**

Except as noted, the following material facts are sufficiently supported by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for purposes of the Motion. See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

Defendant is a limited liability company organized under the laws of the State of Michigan, with its principal place of business in Ann Arbor, Michigan. (DSUF ¶ 1.) Defendant sells pizza. (Id. ¶ 12.)[3] Defendant grants to independently owned and operated franchises the right to operate "Domino's" restaurants. (Id. ¶ 3.)[4] All "Domino's" restaurant locations in California are independently owned and operated by franchisees. Defendant does not own, lease, or operate any franchised locations in California. (Id. ¶ 5.) Defendant does not maintain, control, or have the right to control the day-to-day operations of independent Domino's locations. (Id. ¶ 6.) Defendant owns, operates, controls, and maintains a website and App that customers can use to review menu items, customize and place orders, learn about promotions, track orders, find nearby locations, and more. (PSUF ¶ 3.) Defendant currently maintains a phone number for blind or visually impaired individuals to call to order a pizza. (DSUF ¶ 18.) Plaintiff called this phone number twice, waiting over forty-five minutes each time before giving up and disconnecting the call. (DSUF SGD ¶ 18.)

---

[3] Defendants' references to its pizza sales are littered about its DSUF; however, inexplicably, it disputes Plaintiff's statement that it sells pizza. (PSUF SGD ¶ 2.)

[4] Plaintiff disputes many of Defendant's facts because Defendant did not produce a Rule 30(b)(6) witness for deposition. (See, e.g., DSUF SGD ¶ 3.) The Court cured this defect by allowing Plaintiff to take that deposition. (Dkt. No. 130.) Plaintiff's supplemental briefing submitted after the deposition does not dispute these facts. (See PMSJ Supplement at 5-7.) The Court therefore accepts the facts concerning Defendant's business practices as undisputed and discusses their legal relevance infra.

Plaintiff is blind and uses screen-reader software to access the information presented visually on his computer and smartphone. (PSUF ¶ 5.) Plaintiff's screen reader conveys the information through speech or Braille. (Id. ¶ 6.) Plaintiff uses the Job Access with Speech ("JAWS") screen reader on his laptop and Apple's VoiceOver screen reader on his iPhone. (Id. ¶ 7.) Plaintiff regularly engages in online shopping.[5] (Id. ¶ 11.) He is able to recognize when he personally cannot access a website. (Id. ¶ 13.) He has undergone hundreds of hours of JAWS training. (First Robles Decl. ¶¶ 6-7.)[6]

On July 18, 2015, Plaintiff and a friend decided to order a pizza. (PSUF ¶ 9.) Because Plaintiff's friend's son preferred Defendant's pizza, Plaintiff attempted to order a customized pizza for delivery through Defendant's website from his laptop. (Id. ¶ 10.) However, Plaintiff was unable to order a pizza through Defendant's website on that day because he encountered multiple portions of the website that his screen reader could not read. (Id. ¶¶ 14-17.)

Plaintiff was also unable to order a pizza on Defendant's website in July 2016, September 2016, and February 2017. (Id. ¶ 18.) Plaintiff used the Internet Explorer browser. (DAMF SGD ¶ 161.) Furthermore, Plaintiff was unable to order a pizza through the App on July 25, 2016 and June 19, 2019. (PSUF ¶ 22.) Plaintiff would order pizza from Defendant again if he could do so through the website and/or App. (Id. ¶ 27.)[7]

Musachio, Plaintiff's expert in the field of technology accessibility, found that Defendant's website could not be accessed by blind users with screen reader technology in May 2019. (Id. ¶ 31.) Musachio uses Chrome and Firefox browsers and describes Internet Explorer as "outdated." (Musachio Deposition 28:22, 29:25.)

Defendant's expert Cannon, who is totally blind, was able to order a pizza using a screen reader from Defendant's website on September 8, 2020. (Cannon Decl. ¶¶ 12-13.) He did not test the website using screen reader technology before this date. (Cannon Deposition 97:8-11.) He found that he could not place a future order via the website, but that he could otherwise access it using screen reader technology. (Id. 100:4-14.) Cannon was able to order a pizza using Apple VoiceOver technology on the App on September 26, 2020. (Cannon Decl. ¶ 19.) He did not test the App before this date. (Cannon Deposition 198:13.)

---

[5] Defendant objects to this fact on the grounds that "Plaintiff is a serial litigant who files lawsuits for money." (PSUF SGD ¶ 11.) This "objection" does not dispute the asserted fact and the Court will disregard it.

[6] The parties dispute whether this training confers proficiency on Plaintiff, but Defendant does not dispute that Plaintiff has undergone the training. (PSUF SGD ¶ 20.)

[7] Defendant attempts to dispute this fact because "Plaintiff is a serial litigant who files lawsuits for money," (PSUF SGD ¶ 27), but, once again, the asserted fact is not disputed. See n. 5, supra.

## III.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Id. at 325. Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's case. Id.; In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

If the moving party has sustained its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. Celotex, 477 U.S. at 324. The non-moving party must make an affirmative showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." In re Oracle, 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991). Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the non-moving party based on the record taken as a whole. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV.  DISCUSSION

### A.    First and Second Causes of Action – ADA Violations

Congress passed the ADA, 42 U.S.C. § 12101 et seq., in 1990 "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." § 12101(b)(2). Title III of the ADA prohibits discrimination by public accommodations, providing that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." § 12182(a). To prevail on his Title III claim, a plaintiff must show that "(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007).

The parties do not dispute that Plaintiff is disabled within the meaning of the ADA. Defendant moves for summary judgment on the second Molski prong, arguing that it does not own, lease, or operate a place of public accommodation. (DMSJ at 4-11.) Plaintiff moves for summary judgment on the third prong, arguing that Defendant's website denied him public accommodations because of his disability. (DMSJ at 14-18.) The Court considers each argument in turn.

### 1. A Place of Public Accommodation

Defendant contends that websites and mobile apps are not places of public accommodation. (DMSJ at 5.) As the Ninth Circuit has already affirmed in this case, this argument is correct – as far as it goes. Robles I, 913 F.3d at 905. However, the Ninth Circuit further explained in Robles I that where a "website and app facilitate access to the goods and services of a place of public accommodation," as is the case here, the ADA covers the website and the app. Id.

Defendant now argues that despite this holding, the ADA does not cover its website and App – because Defendant does not own or operate the brick-and-mortar stores where a person may pick up the pizza ordered on its website. (DMSJ at 7-10.) It alleges that the existence of a franchise operation breaks the "nexus" between website and physical store. (Id. at 7 (citing Rios v. New York & Co., Inc., No. 217CV04676ODWAGRX, 2017 WL 5564530, at *3 (C.D. Cal. Nov. 16, 2017)).)

Defendant argues that Neff v. Am. Dairy Queen Corp. bears upon this case. 58 F.3d 1063 (5th Cir. 1995). In Neff, the Fifth Circuit considered whether American Dairy Queen Corporation ("ADQ") "operated" a franchise location such that the parent corporation was responsible for implementing ADA accommodations in the physical store. Id. at 1066. That court held that "the relevant inquiry in a case such as this one is whether ADQ specifically controls the modification of the franchises to improve their accessibility to the disabled." Id. It found that ADQ could not modify the structural barriers and thus did not "operate" the store for the purposes of the ADA. Id. Defendant argues that this case is dispositive in its favor: ADQ was not responsible for its franchises, and so Defendant is not responsible for its franchises. But the logic of Neff cuts the other way. In Neff, the barriers at issue were physical barriers that the parent corporation could not alter. Here, by contrast, the barriers at issue are web-based barriers that only the parent company can control, as Defendant admits. (See Def.'s Status Report II at 2-3 (explaining that customers contact Defendant directly to seek website changes, which Defendant makes).)

Defendant's remaining authorities are inapposite, as none of them concern franchise relationships where the parent company controls the allegedly inaccessible barriers. Rather, in each of Defendant's cited cases, the ADA claim was brought against the physical franchise location. (See DMSJ at 9-10 (collecting district court cases).) Plaintiff contends that there is no controlling law requiring a defendant to own the physical location at issue in an ADA claim and

provides competing caselaw where courts found that ownership of a physical location was not required for an ADA claim against a parent company's website. (DMSJ Opposition at 4-6.) Moreover, Plaintiff argues persuasively that the Ninth Circuit decided this issue in this case when it ruled that "[t]he alleged inaccessibility of Domino's website and app impedes access to the goods and services **of its physical pizza franchises**—which are places of public accommodation." Robles I, 913 F.3d at 905 (emphasis added). The Court agrees with Plaintiff.

Defendant further argues that a deficient website does not violate the ADA because it does not impeded access to a physical location. (DMSJ at 10-11.) The Ninth Circuit already ruled on this issue in this case. Robles I, 913 F.3d at 905. The Court therefore **DENIES** Defendant's Motion for Summary Judgment as to the first cause of action.

   2.   **Denial of Public Accommodations on Account of Disability**

      a.   **Web Browser**

Plaintiff argues that summary judgment is warranted on his ADA claim because Defendant denied him a full and equal opportunity to enjoy its website. (PMSJ at 15.) Plaintiff could not access the website in 2015, 2016 and 2017 using a web browser that his own expert described as "outdated" for the purposes of JAWS software. Additionally, expert users in 2019 and 2020, using different browsers, were able to access the website to varying degrees. No expert, however, found that the website was fully accessible.

Had Defendant's expert determined that its website was fully accessible, the Court would be forced to wade into a sticky question: what level of technological capabilities is required of a blind website user such that the failure of JAWS technology is necessarily the fault of the website owner? However, Defendant's expert, using up-to-date technology, found that the website was not fully accessible. This renders Defendant's contention that Plaintiff could not access its website due to his own technology immaterial; no combination of technology would have allowed Plaintiff to fully access its website.

Defendant contends that its phone line is an acceptable accessibility substitute for its webpage and App. (DMSJ at 19.) This is not true; it is undisputed that Plaintiff waited over forty-five minutes before hanging up on at least two occasions. No person who has ever waited on hold with customer service – or ever been hungry for a pizza – would find this to be an acceptable substitute for ordering from a website.

      b.   **The App**

Plaintiff additionally contends that summary judgment is warranted as to his second ADA claim because Defendant denied him a full and equal opportunity to enjoy the App. (PMSJ at 15.) It is undisputed that Plaintiff could not use the App, but that four years later, Defendant's expert was able to use the App to order a pizza. Defendant provides no evidence to counter Plaintiff's claim that the app was inaccessible in 2016. That belated finding does not change the fact that

Plaintiff could not order a pizza, nor does it suggest that the App was accessible when Plaintiff used it, such that the barriers he faced were due to user error.

### 3. Standing

Defendant additionally contends that Plaintiff's ADA claims are moot. (DMSJ at 14; PMSJ Opposition at 18.) The ADA offers private plaintiffs only injunctive relief. 42 U.S.C. § 12188(a). To qualify for that injunctive relief, an ADA plaintiff must show that the barriers to accessibility currently deter him or will in the future deter him from accessing the facility. Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1138 (9th Cir. 2002). Defendant argues that because the current accessibility of its website and App are disputed, Plaintiff cannot show that injunctive relief is warranted, and therefore that his claims are moot.

The Ninth Circuit has worded this as an issue of standing, not of mootness, holding that a plaintiff must demonstrate that injunctive relief is warranted to establish standing. Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 950 (9th Cir. 2011). Regardless of which jurisdictional doctrine is applied, the question remains the same: do the current statuses of the website and the App preclude judgment in favor of Plaintiff?

It is undisputed that no person has found the website to be fully accessible. Plaintiff therefore clearly warrants injunctive relief as to the website. (The scope of injunctive relief is discussed below.) Consequently, the Court **GRANTS** Plaintiff's Motion for Summary Judgment as to his first cause of action as to website accessibility.

However, it is not clear that the franchises' goods and services are inaccessible through the App. The most recent tester, defense expert Cannon – who found the website not fully accessible – found the App accessible. The current accessibility of the App is therefore a disputed issue of fact. Consequently, the Court **DENIES** Plaintiff's Motion for Summary Judgment as to his second cause of action.

### B. UCRA Violation

Defendant urges the Court not to exercise supplemental jurisdiction over Plaintiff's Unruh Act claims. (DMSJ at 16.) A district court may decline to exercise supplemental jurisdiction over a state-law claim if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.A. § 1367(c). The Court finds, however, that none of these scenarios exist. Plaintiff's claim does not raise a novel or complex issue of State law; rather, because "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 . . . shall also constitute a violation of" the Unruh Act, this claim is straightforward. Cal. Civ. Code § 51(f). Additionally, Plaintiff's Unruh Act claims do not predominate; the Court has already expended considerable resources over five years adjudicating the ADA claims. The Court has not dismissed the ADA claims. Finally, there are no exceptional circumstances at play; the coupling of ADA and Unruh Act claims is routine. The Court therefore exercises supplemental jurisdiction over Plaintiff's Unruh Act claims.

Because Defendant's website violated the ADA, Defendant's website violates the Unruh Act. The Court therefore **GRANTS** Plaintiff's Motion for Summary Judgment as to Plaintiff's third cause of action.

Absent an ADA violation, "a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act." Munson v. Del Taco, Inc., 46 Cal. 4th 661, 668 (2009). Defendant alleges that Plaintiff has not made such a showing; Plaintiff avers that the fact that Defendant has failed correct its website in the five years of litigation demonstrates intentional discrimination. (DMSJ Opposition at 11.) The undisputed facts do not support such a conclusion. However, because Plaintiff may be able to prove either that the App violated the ADA or that Defendant intentionally discriminated against Plaintiff in the maintenance of the App, the Court finds a genuine issue of material fact to exist as to the fourth cause of action. The Court therefore **DENIES** both Motions for Summary Judgment as to Plaintiff's fourth cause of action.

C.     Relief

Having prevailed on its first cause of action, Plaintiff seeks an injunction ordering Defendant to conform its website to the WCAG guidelines. (PSMJ at 19.) The Ninth Circuit previously indicated that this would be an appropriate remedy in this case if the Court found Defendant's website to violate the ADA. Robles I at 970 ("we agree [] that the district court can order compliance with WCAG 2.0 as an equitable remedy if, after discovery, the website and app fail to satisfy the ADA").

Plaintiff further alleges that he is due $4000 in statutory damages under the Unruh Act for each of his visits to Defendant's website, because "[e]ach visit occurred under different circumstances and constitutes a separate . . . violation." (PMSJ at 21.) The Court agrees that Plaintiff is due statutory penalties, but disagrees that each visit constitutes a separate violation of the Unruh Act. The Court found above that Plaintiff's expert could classify portions of Defendant's website as inaccessible, even if not identified in the First Amended Complaint, because Plaintiff alleged a single overarching violation: Defendant maintained a website that screen readers cannot read. For this same reason, each of Plaintiff's individual visits to the website encountered the same barrier and therefore the same violation. The Court therefore finds that Plaintiff is due $4000 in Unruh Act penalties.

## V.   CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Motion for Summary Judgment, and **ORDERS** Defendant to bring its website into compliance with the WCAG 2.0 guidelines and to pay to Plaintiff $4000.  The June 28, 2021 hearing is VACATED.

**IT IS SO ORDERED.**